**ORAL ARGUMENT REQUESTED**

Case No. 22-1074 (and consolidated cases)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE D.C. CIRCUIT

SINCLAIR WYOMING REFINING COMPANY LLC, et al.
*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
*Respondent.*

ON PETITIONS FOR REVIEW FROM U.S. ENVIRONMENTAL
PROTECTION AGENCY

**PUBLIC APPENDIX—SEALED MATERIAL IN SEPARATE**
**SUPPLEMENT—DEFERRED JOINT APPENDIX**
**Vol. 2 of 4**

Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street N.W.
Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

*Counsel for Sinclair Wyoming*
*Refining Company LLC*

*Additional counsel listed on inside cover*

Seth P. Waxman
David M. Lehn
Michael Moorin Wilmer
CUTLER PICKERING
  HALE AND DORR LLP 2100
Pennsylvania Ave. NW
Washington, DC 20037
(202) 663-6000

*Counsel for Growth Energy*

Thomas E Lauria
Samuel P. Hershey
Andrew K. Gershenfeld
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-2699 (telephone)
tlauria@whitecase.com
sam.hershey@whitecase.com
agershenfeld@whitecase.com

*Counsel for Wynnewood Refining Company, LLC*

Eric D. McArthur
Peter C. Whitfield
Daniel J. Feith
Christopher S. Ross
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
emcarthur@sidley.com

*Attorneys for HF Sinclair Refining & Marketing LLC, HF Sinclair Cheyenne Refining LLC, HF Sinclair Woods Cross Refining LLC, Island Energy Services, LLC, Cenovus Energy Inc., and Delek US Holdings, Inc.*

Jonathan G. Hardin
Michael R. Huston
LeAnn Johnson Koch
Alexandra Magill Bromer
Karl J. Worsham
PERKINS COIE LLP
700 13th Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-6200
JHardin@perkinscoie.com

*Attorneys for American Refining Group, Inc., Calumet Montana Refining, LLC, Calumet Shreveport Refining, LLC, Ergon Refining, Inc., Countrymark Refining and Logistics, LLC, Hunt Refining Company, Par Hawaii Refining, LLC, U.S. Oil & Refining Company, Wyoming Refining Company, Placid Refining Company LLC, San Joaquin Refining Co., Inc., and The San Antonio Refinery LLC*

Ian S. Shelton
EVERSHEDS SUTHERLAND (US) LLP

Robert J. Meyers
Elizabeth B. Dawson

500 Capitol Mall, Suite 1750
Sacramento, California 95814
(916) 245-7427
ianshelton@eversheds-sutherland.com

*Attorney for Kern Oil & Refining Co.*

Robert A. Long, Jr.
Kevin King
Thomas Brugato
Daniel G. Randolph
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
rlong@cov.com

*Attorneys for American Petroleum Institute*

Of counsel
Meredith G. Miller
U.S. Environmental Protection Agency
Office of General Counsel
Washington, D.C.

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(202) 624-2967
rmeyers@crowell.com

Richard S. Moskowitz
Tyler Kubik
AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS
1800 M Street, NW
Suite 900 North
Washington, DC 20036
(202) 844-5474
rmoskowitz@afpm.org

*Attorneys for American Fuel & Petrochemical Manufacturers*

Todd Kim
Assistant Attorney General
Benjamin Grillot
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
202.305.0303
benjamin.grillot@usdoj.gov

# TABLE OF CONTENTS

**Page**

## VOLUME 1

| | |
|---|---|
| EPA, April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries (EPA-HQ-OAR-2021-0566-0107), April 7 2022, R-1. | **JA000001** |
| EPA, April 2022 Denial of Petitions for RFS Small Refinery Exemptions (EPA-HQ-OAR-2021-0566-0106), April 7, 2022, R-2. | **JA000025** |
| Memorandum, Decision on 2018 Small Refinery Exemption Petitions, August 9, 2019 ("Idsal Memo"), R-3. | **JA000100** |
| U.S. Department of Energy, Office of Policy and International Affairs, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship (EPA-HQ-OAR-2021-0566-0002), Mar. 2011, R-4. | **JA000102** |
| Notice, April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries under the RFS Program, 87 Fed. Reg. 24,294 (Apr. 25, 2022) (EPA-HQ-OAR-2021-0566-0109), R-9. | **JA000202** |
| Notice, April 2022 Denial of Petitions for RFS Small Refinery Exemptions under the RFS Program, 87 Fed. Reg. 24,300 (Apr. 25, 2022) (EPA-HQ-OAR-2021-0566-0085), R-10. | **JA000204** |
| Email from Jeff Holmstead, Bracewell LLP, on behalf of Sinclair, to Joseph Goffman, EPA, Mar. 10, 2021, R-12. | **JA000206** |
| April 2022 Denial of Petitions for RFS Small Refinery Exemptions: Appendices (EPA-HQ-OAR-2021-0566-0108), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1014EI7.pdf, R-20. | **JA000209** |
| June 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries, June 8, 2022 (EPA-HQ-OAR-2021-0566-0119), R-21. | **JA000358** |

| | |
|---|---|
| June 2022 Denial of Petitions for RFS Small Refinery Exemptions, June 8, 2022 (EPA-HQ-OAR-2021-0566-0117), R-22. | JA000386 |
| June 2022 Denial of Petitions for RFS Small Refinery Exemptions: Appendices, (EPA-HQ-OAR-2021-0566-0118) https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P10156FE.pdf, R-23. | JA000462 |
| Notice, June 2022 Denial of Petitions for RFS Small Refinery Exemptions, 87 Fed. Reg. 34,873 (June 8, 2022) (EPA-HQ-OAR-2021-0566-0113), R-24. | JA000624 |
| Notice, June 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries, 87 Fed. Reg. 34,872 (June 8, 2022) (EPA-HQ-OAR-2021-0566-0114), R-25. | JA000624 |
| Sinclair Wyoming Petition 2018 Petition Denial, Aug. 9, 2019, R-29. | JA000628 |
| Wynnewood Refining Company, LLC 2018 Petition Grant, Aug. 9, 2019, R-30. | JA000629 |
| Memorandum, Decision on the Small Refinery Exemption Petitions from the Sinclair Wyoming Refinery for 2018 and 2019 and the Sinclair Casper Refinery for 2019, Jan. 14, 2021 ("Wheeler Memo"), R-31. | JA000630 |
| Email from Jeff Holmstead, Bracewell LLP, on behalf of Sinclair, to Joseph Goffman, EPA, Feb. 5, 2021, R-32. | JA000633 |

## VOLUME 2 (WYNNEWOOD)[1]

| | |
|---|---|
| Wynnewood Refining, Petition for Hardship Relief Under EPA's Renewable Fuel Standard, Sept. 18, 2018. | JA000636 |
| Wynnewood Refining, Petition for Hardship Relief Under EPA's Renewable Fuel Standard, Sept. 20, 2019. | JA000637 |
| Petition for Review, Wynnewood Refin. Co., LLC v. EPA, No. 19-9589 (10th Cir. Oct. 22, 2019). | JA000638 |

---

[1] Documents in Joint Appendix Volume 2 are not part of the administrative record but are provided for the convenience of the Court.

| | |
|---|---|
| Opening Brief, Wynnewood Refin. Co., LLC v. EPA, No. 20-1099 (D.C. Cir. Dec. 7, 2020). | **JA000658** |
| Order, Wynnewood Refin. Co., LLC v. EPA, No. 20-1099 (D.C. Cir. Dec. 8, 2020). | **JA000716** |

## **VOLUME 3 (SINCLAIR)[2]**

| | |
|---|---|
| U.S. Department of Energy, Application of the Small Refinery Scoring Matrix for the Sinclair Wyoming Refinery for Exemption as an Obligated Party under the Renewable Fuel Standard (no date). | **JA000719** |
| U.S. Department of Energy, Application of the Small Refinery Scoring Matrix for the Sinclair Wyoming Refinery for Exemption as an Obligated Party under the Renewable Fuel Standard (no date). | **JA000728** |
| Petitioners' Preliminary Opening Brief, Sinclair Wyo. Refin. Co. v. EPA, No. 19-1196 (D.C. Cir. Dec. 7, 2020).[3] | **JA000737** |
| EPA Mot. for Vacatur and Voluntary Remand, Sinclair Wyo. Refin. Co. v. EPA, No. 21-9528 (10th Cir. Apr. 30, 2021). | **JA000759** |
| EPA Mot. for Voluntary Remand Without Vacatur, Sinclair Wyo. Refin. Co. v. EPA, No. 19-1196 (D.C. Cir. Aug. 25, 2021). | **JA000779** |
| Spreadsheet, Rawlins Gasoline & Diesel Destinations (no date). | **JA000804** |

---

[2] Documents in Joint Appendix Volume 3 are not part of the administrative record but are provided for the convenience of the Court.

[3] This document contains confidential business information of a non-party and is governed by the protective order in *Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196 (D.C. Cir. 2020). The parties in this case agree that confidential non-party information may be redacted in both the sealed and public versions of the Joint Appendix.

## **VOLUME 4 (GROWTH ENERGY AND INTERVENORS)[4]**

| | |
|---|---|
| Renewable Fuel Standard Program: Standards for 2014, 2015, and 2016 and Biomass-Based Diesel Volume for 2017, 80 Fed. Reg. 77,420 (Dec. 14, 2015). | **JA000805** |
| EPA, Memorandum re Financial and Other Information to Be Submitted with 2016 RFS Small Refinery Hardship Exemption Requests (Dec. 6, 2016). | **JA000807** |
| Notice of Opportunity To Comment on Proposed Denial of Petitions for Small Refinery Exemptions, 86 Fed. Reg. 70,999 (Dec. 14, 2021). | **JA000809** |
| Renewable Fuel Standard (RFS) Program: RFS Annual Rules, 86 Fed. Reg. 72,436 (Dec. 21, 2021). | **JA000811** |
| EPA, Proposed RFS Small Refinery Exemption Decision (Dec. 2021) (EPA-420-D-21-001), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1013KMM.pdf. | **JA000813** |
| Renewable Fuel Standard (RFS) Program: Extension of Compliance and Attest Engagement Reporting Deadlines, 87 Fed. Reg. 5,696 (Feb. 2, 2022). | **JA000879** |
| Renewable Fuel Standard (RFS) Program: RFS Annual Rules, 87 Fed. Reg. 39,600 (July 1, 2022). | **JA000881** |
| Renewable Fuel Standard (RFS) Program: Alternative RIN Retirement Schedule for Small Refineries, 87 Fed. Reg. 54,158 (Sept. 2, 2022). | **JA000895** |
| EPA, Draft Regulatory Impact Analysis: RFS Standards for 2023–2025 and Other Changes (Nov. 2022). | **JA000898** |
| U.S. Government Accountability Office, Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program, GAO-23-104273 (Nov. 2022). | **JA000900** |

---

[4] Documents in Joint Appendix Volume 4 are not part of the administrative record but are provided for the convenience of the Court.

| | |
|---|---|
| Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes, 87 Fed. Reg. 80,582 (Dec. 30, 2022). | **JA000978** |
| Growth Energy, Comments on EPA's Renewable Fuel Standard (RFS) Program: RFS Annual Rules (Feb. 4, 2022), EPA-HQ-OAR-2021-0324-0521. | **JA000980** |
| Growth Energy, Comments on EPA's Renewable Fuel Standard (RFS) Program: Standards for 2023–2025 and Other changes (Feb. 10, 2023), EPA-HQ-OAR-2021-0427-0796. | **JA000995** |
| EPA, Renewable Fuel Standard (RFS) Program: RFS Annual Rules, Regulatory Impact Analysis (June 2022). | **JA000998** |
| EPA, Renewable Fuel Standard (RFS) Program: Standards for 2023–2025 and Other Changes, Regulatory Impact Analysis (June 2023). | **JA001005** |

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d), I hereby certify that I have this day caused the foregoing Deferred Joint Appendix to be delivered electronically through CM/ECF on all ECF registered counsel of record.

 Date: August 21, 2023                    Respectfully submitted,

                                          */s/ Brittany M. Pemberton*
                                          Brittany M. Pemberton

Material Under Seal Deleted

# Joint Appendix Volume 2
# Document 1

This Document 1 corresponds to pages JA000636 to JA000668 of
the Sealed Supplement to the Deferred Joint Appendix

Material Under Seal Deleted

# Joint Appendix Volume 2
# Document 2

This Document 2 corresponds to pages JA000669 to JA000690 of the Sealed Supplement to the Deferred Joint Appendix

**FILED UNDER SEAL**

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| Wynnewood Refining Company, LLC, | Case No.: _____ |
| Petitioner, | |
| v. | |
| United States Environmental Protection Agency, | |
| Respondent. | |

## PETITION FOR REVIEW

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2); Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1); Rule 15(a) of the Federal Rules of Appellate Procedure; and Rule 15 of the Local Rules of the Tenth Circuit, Wynnewood Refining Company, LLC, petitions the United States Court of Appeals for the Tenth Circuit for review of a final action of the Administrator of the United States Environmental Protection Agency: EPA decision on 2018 small refinery RFS exemption petition - Wynnewood Refining (attached as Exhibit A).

This agency action was signed on August 9, 2019, but was not published in the Federal Register, and therefore became a final agency action on August 23, 2019. *See* 40 C.F.R. § 23.3 (Timing of Administrator's Action under Clean Air Act); 50 Fed. Reg. 7268, 7269 (Feb. 21, 1985).

JA000638

The Corporate Disclosure Statement required by Rule 26.1 of the Federal Rules of Appellate Procedure is attached as Exhibit B.  The List of Respondents required by Tenth Circuit Local Rule 15.2 is attached as Exhibit C.  The Certificate of Service required by Rule 25(d) of the Federal Rules of Appellate Procedure and Local Rule 25.4 is attached as Exhibit D.

DATED:  October 22, 2019

Respectfully submitted,

*/s/ Jonathan G. Hardin*
Jonathan G. Hardin
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.9983
Email: jhardin@perkinscoie.com

Attorney for Wynnewood Refining Company, LLC

Appellate Case: 19-9589     Document: 010110263067     Date Filed: 10/29/2019     Page: 1

# Exhibit A

# Redacted -- Public Version

JA000640

# Material Under Seal Deleted

| | |
|---|---|
| **From:** | Bunker, Byron |
| **To:** | mmbuhrig@cvrenergy.com |
| **Cc:** | Johnson Koch, LeAnn M. (WDC) |
| **Subject:** | EPA decision on 2018 small refinery RFS exemption petition (CONTAINS CONFIDENTIAL BUSINESS INFORMATION) – Wynnewood Refining |
| **Date:** | Friday, August 9, 2019 6:04:14 PM |

The purpose of this email is to notify you that EPA has evaluated your petition for a one-year extension for 2018 of the small refinery exemption from the requirements of the renewable fuel standard (RFS) program for the Wynnewood Refining refinery. ████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Byron Bunker
Director Compliance Division
Office of Transportation and Air Quality
Environmental Protection Agency
2000 Traverwood Drive
Ann Arbor, MI 48105
Bunker.Byron@epa.gov
Phone: (734) 214-4155
Mobile: (734) 353-9623
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JA000641

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

MEMORANDUM

OFFICE OF
AIR AND RADIATION

SUBJECT:    Decision on 2018 Small Refinery Exemption Petitions

FROM:      Anne Idsal, Acting Assistant Administrator
           Office of Air and Radiation

TO:        Sarah Dunham, Director
           Office of Transportation and Air Quality

Section 211(*o*)(9)(B) of the Clean Air Act (CAA or the Act) authorizes the Administrator to temporarily exempt small refineries from their renewable fuel volume obligations under the RFS program "for the reason of disproportionate economic hardship" (DEH). The Act instructs EPA, in consultation with the Department of Energy (DOE), to consider the DOE Small Refinery Study[1] and "other economic factors" in evaluating small refinery exemption (SRE) petitions. The statute does not define "disproportionate economic hardship," leaving for EPA's discretion how it implements this exemption provision.[2]

As part of EPA's process for evaluating SRE petitions, EPA asks DOE to evaluate all the information EPA receives from each petitioner. DOE's expertise in evaluating economic conditions at U.S. refineries is fundamental to the process both DOE and EPA use to identify whether DEH exists for petitioning small refineries in the context of the RFS program. After evaluating the information submitted by the petitioner, DOE provides a recommendation to EPA on whether a small refinery merits an exemption from its RFS obligations. As described in the DOE Small Refinery Study, DOE assesses the potential for DEH at a small refinery based on two sets of metrics. One set of metrics assesses structural and economic conditions that could disproportionately impact the refinery (collectively described as "disproportionate impacts" when referencing Section 1 and Section 2 of DOE's scoring matrix). The other set of metrics assesses the financial conditions that could cause viability concerns at the refinery (described as "viability impairment" when referencing Section 3 of DOE's scoring matrix). DOE's recommendation informs EPA's decision about whether to grant or deny an SRE petition for a small refinery.

Previously, DOE and EPA considered that DEH exists only when a small refinery experiences *both* disproportionate impacts *and* viability impairment. In response to concerns that the two agencies' threshold for establishing DEH was too stringent, Congress clarified to DOE that DEH can exist if DOE finds that a small refinery is experiencing *either* disproportionate impacts *or* viability impairment. If so, Congress directed DOE to recommend a 50 percent exemption from the RFS. This was relayed in language included in an explanatory statement accompanying the

---

[1] "Small Refinery Exemption Study, An Investigation into Disproportionate Economic Hardship," Office of Policy and International Affairs, U.S. Department of Energy, March 2011 (DOE Small Refinery Study).
[2] *Hermes v. Consol., LLC v. EPA*, 787 F.3d 568, 575 (D.C. Cir. 2015).

1

JA000642

2016 Appropriations Act that stated: "If the Secretary finds that either of these two components exists, the Secretary is directed to recommend to the EPA Administrator a 50 percent waiver of RFS requirements for the petitioner."[3] Congress subsequently directed EPA to follow DOE's recommendation, and to report to Congress if it did not.[4]

Based on DOE's recommendations for the 2018 petitions, I am today granting full exemptions for those 2018 small refinery petitions where DOE recommended 100 percent relief because these refineries will face a DEH. I am denying exemptions for those 2018 small refinery petitions where DOE recommended no relief because they will not face a DEH.

I am also granting full exemptions for those 2018 small refinery petitions where DOE recommended 50 percent relief. This decision is appropriate under the Act and is consistent with the case law recognizing EPA's independent authority in deciding whether to grant or deny RFS small refinery petitions.[5] DOE's recommendations recognize an economic impact on these small refineries, and I conclude these small refineries will face a DEH meriting relief. I have concluded that the best interpretation of Section 211($o$)(9)(B) is that EPA shall either grant or deny petitions for small refinery hardship relief in full, and not grant partial relief. The exemption available under Section 211($o$)(9)(B) is explicitly described as an "extension of the exemption under subparagraph (A)." In turn, subparagraph (A) provides that the requirements of the RFS program "shall not apply to small refineries until calendar year 2011." It is evident that the original exemption under subparagraph (A) was a full exemption, and therefore I conclude that when Congress authorized the Administrator to provide an "extension" of that exemption for the reason of DEH, Congress intended that extension to be a full, and not partial, exemption. This approach is also consistent with congressional direction since enactment of the provision, which states: "The Agency is reminded that, regardless of the Department of Energy's recommendation, additional relief may be granted if the Agency believes it is warranted."[6]

Dated: 8/9/2019

Anne Idsal
Acting Assistant Administrator
Office of Air and Radiation

---

[3] Consolidated Appropriations Act, 2016, Pub. L. No. 114-113 (2015). The Explanatory Statement is available at: https://rules.house.gov/bill/114/hr-2029-sa.

[4] Senate Report 114-281 ("When making decisions about small refinery exemptions under the RFS program, the Agency is directed to follow DOE's recommendations which are to be based on the original 2011 Small Refinery Exemption Study prepared for Congress and the conference report to division D of the Consolidated Appropriations Act of 2016. Should the Administrator disagree with a waiver recommendation from the Secretary of Energy, either to approve or deny, the Agency shall provide a report to the Committee on Appropriations and to the Secretary of Energy that explains the Agency position. Such report shall be provided 10 days prior to issuing a decision on a waiver petition.").

[5] *Sinclair Wyoming Refining Co. v. EPA*, 874 F.3d 1159, 1166 (10th Cir. 2017); *See also Hermes Consol.* 787 F.3d at 574-575; *Lion Oil Co. v. EPA*, 792 F.3d 978, 982-983 (8th Cir. 2015).

[6] Consolidated Appropriations Act, 2019, Pub. L. No. 116-6 (2019), *see* H.Rept. 116-9 at 741 (February 13, 2019).

2

Appellate Case: 19-9589    Document: 010472363067    Date Filed: 10/29/2019    Page: 5

Material Under Seal Deleted

**Pages 5 through 14 of Exhibit A**

**Filed Under Seal on October 22, 2019,**

**in accordance with the**

**Court's Order of November 5, 2019**

JA000644

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2019, I caused the foregoing
document to be filed on ECF and served via the CM/ECF system on all counsel of
record.

Date:  November 19, 2019                    */s/ Jonathan G. Hardin*
                                      Jonathan G. Hardin

JA000645

**Exhibit B**

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

Wynnewood Refining Company,
LLC,

                         Petitioner,

       v.

United States Environmental
Protection Agency,

                        Respondent.

Case No.: _____

# CORPORATE DISCLOSURE STATEMENT

Wynnewood Refining Company, LLC is a wholly owned subsidiary of CVR Refining, LLC, a Delaware limited liability company.  CVR Refining, LLC is a wholly owned subsidiary of CVR Refining, LP, which is an indirect wholly owned subsidiary of CVR Energy, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the symbol "CVI."

JA000647

DATED:  October 22, 2019

/s/ Jonathan G. Hardin
Jonathan G. Hardin
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.9983
Email: jhardin@perkinscoie.com

Attorney for Wynnewood Refining
Company, LLC

2

JA000648

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2019, I caused the foregoing document to be filed on ECF and served via the CM/ECF system on all counsel of record.

Date:  November 19, 2019

*/s/ Jonathan G. Hardin*
Jonathan G. Hardin

JA000649

Appellate Case: 19-9589      Document: 010110263068      Date Filed: 12/29/2019      Page: 1

# Exhibit C

# LIST OF RESPONDENTS

Attn: Andrew Wheeler
Administrator
U.S. Environmental Protection Agency Headquarters
1200 Pennsylvania Avenue, N.W.
*Mail Code:* 1101A
Washington, D.C. 20460

Attn: Matthew Z. Leopold
Acting General Counsel
U.S. Environmental Protection Agency Headquarters
1200 Pennsylvania Avenue, N.W.
*Mail Code*: 2310A
Washington, D.C. 20460

The Honorable William Barr
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

JA000651

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2019, I caused the foregoing

document to be filed on ECF and served via the CM/ECF system on all counsel of

record.


Date:  November 19, 2019                    */s/ Jonathan G. Hardin*

Jonathan G. Hardin

JA000652

**Exhibit D**

JA000653

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2019, a copy of the foregoing Petition

for Review and attached exhibits was served via certified U.S. Mail, return receipt

requested, on the following:

Attn: Andrew Wheeler
Administrator
U.S. Environmental Protection Agency Headquarters
1200 Pennsylvania Avenue, N.W.
*Mail Code:* 1101A
Washington, D.C. 20460

Attn: Matthew Z. Leopold
General Counsel
U.S. Environmental Protection Agency Headquarters
1200 Pennsylvania Avenue, N.W.
*Mail Code*: 2310A
Washington, D.C. 20460

The Honorable William Barr
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Date:  October 22, 2019            */s/ Jonathan G. Hardin*
                                   Jonathan G. Hardin

JA000654

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2019, I caused the foregoing

document to be filed on ECF and served via the CM/ECF system on all counsel of

record.

Date:  November 19, 2019                    */s/ Jonathan G. Hardin*
                                            Jonathan G. Hardin

JA000655

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

October 22, 2019

Chris Wolpert
Chief Deputy Clerk

Mr. Jonathan G. Hardin
Perkins Coie
700 Thirteenth Street, NW, Suite 600
Washington, DC 20005-3960

RE: **19-9589, Wynnewood Refining Company v. EPA**
Dist/Ag docket: N/A

Dear Counsel:

The court has received and docketed your petition for review. Please note your case number above. Copies of the Tenth Circuit Rules, effective January 1, 2019, and the Federal Rules of Appellate Procedure, effective December 1, 2018, may be obtained by contacting this office or visiting our website at http://www.ca10.uscourts.gov. In addition, please note all counsel are required to file pleadings via the court's Electronic Case Filing (ECF) system. *See* 10th Cir. R. 25.3. You will find information regarding registering for and using ECF on the court's website. We invite you to contact us with any questions you may have about our operating procedures. Please note that all court forms are now available on the court's web site.

We have served the petition for review on the respondent agency via electronic notice using the court's ECF system. Petitioner must serve a copy of the petition for review on all parties, other than the respondent(s), who participated in the proceedings before the agency. *See* Fed. R. App. P. 15(c).

Attorneys must complete and file an entry of appearance form within 14 days of the date of this letter. *See* 10th Cir. R. 46.1(A). Pro se parties must complete and file the form within thirty days of the date of this letter. An attorney who fails to enter an appearance within that time frame will be removed from the service list for this case, and there may be other ramifications under the rules. If a respondent does not wish to participate in the appeal, a notice of non-participation should be filed via ECF as soon as possible. The notice should also indicate whether counsel wishes to continue receiving notice or service of orders issued in the case.

JA000656

In addition, petitioner must complete and file a docketing statement within 14 days of the date of this letter. *See* 10th Cir. R. 15.1.

The respondent agency shall file the record, or a certified list in lieu of the record, within 40 days after service of the petition for review. *See* Fed. R. App. P. 17. If a certified list is filed, the entire record, or the parts the parties may designate, must be filed on or before the deadline set for filing the respondent's brief. *See* 10th Cir. R. 17.1.

Petitioner's opening brief must be filed within 40 days of the date on which the certified list or record is filed. *See* 10th Cir. R. 31.1(B). Subsequent briefs must be filed as required by Fed. R. App. P. 31(a). Motions for extension of time to file briefs must comply with 10th Cir. R. 27.1 and 27.5. These motions are not favored.

Briefs must satisfy all requirements of the Federal Rules of Appellate Procedure and Tenth Circuit Rules with respect to form and content. *See* specifically Fed. R. App. P. 28 and 32 and 10th Cir. R. 28.1, 28.2 and 32, as well as 31.3 when applicable. Seven hard copies of briefs must be provided to the court within two days of filing via the court's Electronic Case Filing system. See 10th Cir. R. 31.5 and the court's CM/ECF User's Manual. Counsel are encouraged to utilize the court's Briefing & Appendix checklist when compiling their briefs.

This matter will be heard on a record that the agency provides. *See* Fed. R. App. P. 17(a) and 10th Cir. R. 17.3. As a result, the parties need not file an appendix. If, however, any party wishes to file a separate appendix it should file a motion seeking that relief.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     William P. Barr
        Matthew Z. Leopold
        Andrew Wheeler

EAS/at

Public Copy — Sealed Material Deleted

**NOT YET SCHEDULED FOR ORAL ARGUMENT**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

### No. 20-1099

WYNNEWOOD REFINING COMPANY, LLC,

*Petitioner,*

v.

ENVIRONMENTAL PROTECTION AGENCY,

*Respondent,*

PRODUCERS OF RENEWABLES UNITED FOR INTEGRITY TRUTH
AND TRANSPARENCY,

*Intervenor for Respondent.*

*On Appeal from the Environmental Protection Agency*

## OPENING BRIEF OF WYNNEWOOD REFINING COMPANY, LLC

Jonathan G. Hardin
PERKINS COIE LLP
700 13th Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-6200
JHardin@perkinscoie.com

*Attorney for Petitioner*

JA000658

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a), the following is a statement of the parties, amici, rulings under review, and related cases:

## I.    Parties and Amici

Petitioner: Wynnewood Refining Company, LLC ("Wynnewood").

Respondent: The United States Environmental Protection Agency ("EPA").

Intervenor: Producers of Renewables United for Integrity Truth and Transparency has intervened on behalf of Respondent EPA.

Amici: None.

## II.    Rulings Under Review

The agency action under review is EPA's final action, entitled "EPA decision on 2018 small refinery RFS exemption petition – Wynnewood Refining." This agency action was issued on August 9, 2019, but was not published in the Federal Register; therefore, it became a final agency action on August 23, 2019. *See* 40 C.F.R. § 23.3; 50 Fed. Reg. 7268, 7269 (Feb. 21, 1985).

## III.    Related Cases

Petitioner originally filed its Petition for Review in this case in the Tenth Circuit on October 22, 2019, No. 19-9589. On March 26, 2020, the Tenth Circuit ordered this case transferred to the D.C. Circuit, and the

D.C. Circuit filed and docketed the Petition for Review as the above-captioned matter.

This case is related to *Kern Oil & Refining Co. v. EPA*, No. 19-1216; *Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196, *consolidated with Big West Oil LLC v. EPA*, No. 19-1197; and *Renewable Fuels Ass'n, et al. v. EPA*, No. 19-1220, all pending before this Court. The Court will hear oral argument on the same day before the same panel. Doc. No. 1855582.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Wynnewood Refining Company, LLC is a wholly owned subsidiary of CVR Refining, LLC, a Delaware limited liability company. CVR Refining, LLC is a wholly owned subsidiary of CVR Refining, LP, which is an indirect wholly owned subsidiary of CVR Energy, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the symbol "CVI."

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ...................................................................................i

CORPORATE DISCLOSURE STATEMENT ...............................iii

TABLE OF CONTENTS .............................................................iii

TABLE OF AUTHORITIES ........................................................iii

GLOSSARY ............................................................................xxiii

STATEMENT OF JURISDICTION ............................................ 1

STATEMENT OF ISSUES........................................................ 1

STATUTES AND REGULATIONS ........................................... 2

STATEMENT OF THE CASE .................................................. 2

I.    Statement of Facts ....................................................... 2

    A.    The RFS program.................................................. 2

    B.    Renewable Identification Numbers (RINs) ........... 4

    C.    The small refinery exemption ............................... 6

II.    Proceedings Below........................................................ 8

    A.    Wynnewood's 2018 petition and EPA's violation of the statutory 90-day timeline........................................ 8

    B.    EPA's refusal to replace or otherwise credit Wynnewood and other small refineries for expired or devalued RINs ..................................................... 10

SUMMARY OF ARGUMENT ................................................. 14

STANDING ........................................................................... 17

STANDARD OF REVIEW...................................................... 17

ARGUMENT ......................................................................... 18

- iv -

JA000662

## TABLE OF CONTENTS
(continued)

Page

I.  This Court should set aside EPA's decision merely to return expired and substantially devalued RINs to Wynnewood and order it to replace those with current-vintage RINs. ................... 18

A.  EPA's decision to refund expired and nearly worthless RINs to Wynnewood is arbitrary and capricious because it ignores important aspects of the problem. ......... 18

B.  EPA violated procedures prescribed by law to Wynnewood's detriment. ........................................ 21

C.  EPA's refusal to issue Wynnewood new RINs is arbitrary and capricious because EPA treated similarly situated entities differently. ................................................ 27

D.  EPA's refusal to provide Wynnewood new RINs is contrary to the small refinery exemption statute. .............. 30

1.  The plain text requires EPA to provide a full "exemption" to a refinery that EPA determines would suffer disproportionate economic hardship from compliance. ......................................... 30

2.  EPA's refusal to provide Wynnewood replacement RINs is not permissible under any level of deference. .................................................... 34

a.  EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 is not persuasive under the *Skidmore* standard. ................................... 34

b.  EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 is impermissible under *Chevron*. .............. 36

- v -

JA000663

# TABLE OF CONTENTS
(continued)

**Page**

E.    This Court should order EPA to issue new vintage
        RINs within the 90-day statutory timeline. ........................ 40

CONCLUSION ........................................................................................ 42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

(Page 38 of Total)                                                                                    JA000664

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ace Motor Freight, Inc. v. ICC,*
557 F.2d 859 (D.C. Cir. 1977) ............................................................. 27

*Am. Gas Ass'n v. FERC,*
888 F.2d 136 (D.C. Cir. 1989) ............................................................. 41

*Am. Sch. of Magnetic Healing v. McAnnulty,*
187 U.S. 94 (1902)........................................................................ 18, 23

*Am. Wild Horse Pres. Campaign v. Perdue,*
873 F.3d 914 (D.C. Cir. 2017) ............................................................. 19

*Americans for Clean Energy v. EPA,*
No. 16-1005 (D.C. Cir. Nov. 23, 2020) ........................................... 40, 41

*Barnhart v. Walton,*
535 U.S. 212 (2002)............................................................................ 34

*Benten v. Kessler,*
799 F. Supp. 281 (E.D.N.Y. 1992) ....................................................... 23

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.,*
403 F.3d 771 (D.C. Cir. 2005) .................................................. 27, 28, 29

*Cal–Almond, Inc. v. Yeutter,*
756 F. Supp. 1351 (E.D. Cal. 1991) ..................................................... 24

*Chevron U.S.A. Inc. v. Natural Resources Defense Council,*
*Inc.*, 467 U.S. 837 (1984)......................................................... 30, 34, 36

*Consolidated Freightways v. NLRB,*
892 F.2d 1052 (D.C. Cir. 1989) ........................................................... 40

*Cont'l Air Lines, Inc. v. Dep't of Transp.,*
843 F.2d 1444 (D.C. Cir. 1988) ...................................................... 37, 39

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Dayton Tire v. Sec'y of Labor*,
    671 F.3d 1249 (D.C. Cir. 2012) ..................................................... 21, 22

*Dilley v. Alexander*,
    603 F.2d 914 (D.C. Cir. 1979), *decision clarified*, 627 F.2d
    407 (D.C. Cir. 1980) ......................................................................... 22

*Dodson v. Nat'l Transp. Safety Bd.*,
    644 F.2d 647 (7th Cir. 1981) (per curiam) ........................................ 22

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) .................................................................... 36, 37

*Fed. Election Comm'n v. Democratic Senatorial Campaign
Comm.*, 454 U.S. 27 (1981) ................................................................ 37

*Ford Motor Co. v. NLRB*,
    305 U.S. 364 (1939) .......................................................................... 23

*Fox v. Clinton*,
    684 F.3d 67 (D.C. Cir. 2012) .................................................. 34, 35, 38

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) .................................................................... 18, 23

*French's Estate v. FERC*,
    603 F.2d 1158 (5th Cir. 1979) ........................................................... 25

*Getty v. Fed. Savs. & Loan Ins. Corp.*,
    805 F.2d 1050 (D.C. Cir. 1986) .................................................. 19, 28

*Gonzales v. Oregon*,
    546 U.S. 243 (2006) .......................................................................... 35

*Gresham v. Azar*,
    950 F.3d 93 (D.C. Cir. 2020) ................................ 18, 19, 20, 21, 27, 28

(Page 40 of Total)

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Grynberg v. FERC,*
No. 93-1221, 1994 WL 527209 (D.C. Cir. Aug. 5, 1994)................... 41

*HollyFrontier Refining v. EPA,*
Case No. 16-9564 (10th Cir. Jan 5, 2018) ........................................ 12

*Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials
Safety Admin.,* 741 F.3d 1309 (D.C. Cir. 2014)..................... 27, 28, 29

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)........................................................................ 17

*McCarthy v. Bronson,*
500 U.S. 136 (1991)........................................................................ 31

*Merck & Co., Inc. v. U.S. Dep't of Health & Human Servs.,*
962 F.3d 531 (D.C. Cir. 2020) .................................................. 30, 31

*Michigan v. EPA,*
576 U.S. 743 (2015)........................................................................ 36

*Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm
Mut. Ins. Co.,* 463 U.S. 29 (1983)................................... 14, 18, 36, 38

*N.Y. Stock Exch. LLC v. SEC,*
962 F.3d 541 (D.C. Cir. 2020) .................................................. 31, 36

*NAACP v. Sec'y of Hous. & Urban Dev.,*
817 F.2d 149 (1st Cir. 1987) .......................................................... 24

*Panhandle Co-op. Ass'n v. EPA,*
771 F.2d 1149 (8th Cir. 1985)......................................................... 22

*Petroleum Commc'ns, Inc. v. FCC,*
22 F.3d 1164 (D.C. Cir. 1994) ....................................................... 27

- ix -

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Producers of Renewables United for Integrity Truth &*
*Transparency v. EPA,*
778 F. App'x 1 (D.C. Cir. 2019) ........................................................ 13, 14

*Pub. Citizen Health Rsch. Grp. v. Brock,*
823 F.2d 626 (D.C. Cir. 1987) ......................................................... 23, 41

*Renewable Fuels Ass'n v. EPA,*
948 F.3d 1206 (10th Cir. 2020) .............................................................. 39

*Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.,*
720 F.2d 1319 (D.C. Cir. 1983) ............................................................. 41

*Rural Cellular Ass'n v. FCC,*
588 F.3d 1095 (D.C. Cir. 2009) ............................................................. 19

*Sierra Club v. EPA,*
292 F.3d 895 (D.C. Cir. 2002) ............................................................... 17

*Sierra Club v. Van Antwerp,*
560 F. Supp. 2d 21 (D.D.C. 2008) ......................................................... 41

*Sinclair Wyoming Refin. Co. v. EPA,*
887 F.3d 986 (10th Cir. 2017) ..................................... 12, 14, 29, 34, 35

*Skidmore v. Swift & Co.,*
323 U.S. 134 (1944) ................................................................. 30, 34, 35

*Smiley v. Citibank (S. Dakota), N.A.,*
517 U.S. 735 (1996) .............................................................................. 36

*Solenex LLC v. Bernhardt,*
962 F.3d 520 (D.C. Cir. 2020) ............................................................... 22

*State of Minn. by Levine v. Heckler,*
779 F.2d 1335 (8th Cir. 1985) ......................................................... 22, 23

- x -

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Telecomms. Rsch. & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ................................................................ 24

*United Gas Improvement Co. v. Callery Properties, Inc.,*
    382 U.S. 223 (1965) ............................................................................ 23

*Verizon Commc'ns Inc. v. FCC,*
    535 U.S. 467 (2002) ..................................................................... 36, 38

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ..................................................................... 18, 23

*Willis Shaw Frozen Express, Inc. v. ICC,*
    587 F.2d 1333 (D.C. Cir. 1978) .......................................................... 27

*Woodruff Cmty. Hosp. v. Sullivan,*
    No. CV 91-2927 AWT, 1992 WL 133087 (C.D. Cal. Feb. 27,
    1992) ................................................................................................ 22

STATUTES

5 U.S.C. § 706 ....................................................................... 2, 17, 21, 36

42 U.S.C. § 7545 ................ 2, 3, 7, 9, 10, 11, 14, 20, 31, 32, 33, 35, 39, 41

42 U.S.C. § 7607 ..................................................................................... 1

Energy Policy Act of 2005. Pub. L. No. 109-58, § 1501(a), 119
    Stat. 594, 1067–074 (2005) .................................................................. 2

Energy Independence and Security Act of 2007, Pub. L. No.
    110-140, § 202, 121 Stat. 1492, 1521–28 (2007) .................................. 2

REGULATIONS

40 C.F.R. § 23.3 ..................................................................................... 1

40 C.F.R. § 80.1406 ............................................................................... 3

- xi -

JA000669

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

40 C.F.R. § 80.1407 ................................................................ 3

40 C.F.R. § 80.1427 ................................................................ 4

40 C.F.R. § 80.1441 ....................................................... 2, 7, 41

50 Fed. Reg. 7268 (Feb. 21, 1985) ....................................... 1

72 Fed. Reg. 23,900 (May 1, 2007) (to be codified at 40 C.F.R.
    pt. 80) ............................................................ 4, 5, 26

75 Fed. Reg. 14,670 (Mar. 26, 2010) ..................................... 4

Renewable Fuel Standard Program: Standards for 2014,
    2015, and 2016 and Biomass-Based Diesel Volume for
    2017, 80 Fed. Reg. 77,420, 77,513 (Dec. 14, 2015) (to be
    codified at 40 C.F.R. pt. 80) ........................... 5, 8, 20, 24, 26

### OTHER AUTHORITIES

D.C. Cir. R. 28 .................................................................... 17

Toni M. Fine, *Agency Requests for "Voluntary" Remand: A
    Proposal for the Development of Judicial Standards*, 28
    Ariz. St. L.J. 1079 (1996) ................................................. 40

\* Authorities on which we chiefly rely are marked with an
    asterisk.

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| DOE | Department of Energy |
| EPA | Environmental Protection Agency |
| RFS | Renewable Fuel Standard |
| RIN | Renewable Identification Number |
| SRE | Small Refinery Exemption |
| RVO | Renewable Volume Obligation |

(Page 45 of Total)

JA000671

Material Under Seal Deleted

## STATEMENT OF JURISDICTION

EPA granted Wynnewood Refining Company, LLC's ("Wynne-wood") petition for a small refinery exemption ("SRE") from the Renewable Fuel Standard ("RFS") for the 2018 compliance year on August 9, 2019, and that decision became a final agency action on August 23, 2019. 40 C.F.R. § 23.3; *see also* 50 Fed. Reg. 7268, 7269 (Feb. 21, 1985). Wynne-wood filed a petition for review in the Tenth Circuit on October 22, 2019. On March 26, 2020, the Tenth Circuit ordered this case transferred to the D.C. Circuit, and the D.C. Circuit filed and docketed the Petition for Review as the above-captioned matter. This Court has jurisdiction under 42 U.S.C. § 7607(b)(1).

## STATEMENT OF ISSUES

EPA failed to decide Wynnewood's SRE petition by the 90-day man-datory statutory deadline and delayed its decision until months after the annual deadline for RFS compliance. Thus, when EPA granted Wynne-wood's petition, it returned Renewable Identification Numbers ("RINs") to Wynnewood that had expired or declined substantially in value during the delay, a loss totaling ██████, thereby depriving Wynnewood of the exemption from RFS compliance to which EPA determined Wynne-wood was entitled. In contrast, EPA has previously issued new RINs to at least two small refineries when theirs expired during a similar delay. Wynnewood raises the following issue in this appeal:

JA000672

Is EPA's refusal to replace or otherwise credit Wynnewood for expired or substantially devalued RINs following EPA's unlawful delay, *see* 42 U.S.C. § 7545(o)(9)(B); 40 C.F.R. § 80.1441(e)(2)(ii), arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or without observance of procedure required by law, *see* 5 U.S.C. § 706(2)(A), (D), because it effectively deprives Wynnewood of the exemption to which EPA determined that Wynnewood was entitled and because EPA has previously afforded such relief to similarly situated petitioners?

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are included in the Addendum.

## STATEMENT OF THE CASE

### I.    Statement of Facts

### A.    The RFS program

Congress created the RFS Program—codified at Section 211(o) of the Clean Air Act, 42 U.S.C. § 7545(o)—as part of the Energy Policy Act of 2005. Pub. L. No. 109-58, § 1501(a), 119 Stat. 594, 1067–074 (2005). The RFS Program requires renewable fuels, such as ethanol and biodiesel, to be blended into petroleum-based transportation fuels (gasoline and diesel) sold in the United States. In the Energy Independence and Security Act of 2007, Congress increased the annual renewable fuel volume requirements and extended the RFS Program through 2022. Pub. L. No. 110-140, § 202, 121 Stat. 1492, 1521–28 (2007).

- 2 -

Congress directed EPA to promulgate regulations "to ensure that transportation fuel sold or introduced into commerce in the United States . . . on an annual average basis, contains at least the applicable volume of renewable fuel" set by statute. 42 U.S.C. § 7545(o)(2)(A)(i). Each year, the Energy Information Administration—a division of the U.S. Department of Energy ("DOE")—calculates the total volume of transportation fuel projected to be sold in the United States. *Id.* § 7545(o)(3)(A). Based on that estimate, EPA sets a "renewable fuel obligation" expressed as a "volume percentage of transportation fuel sold or introduced into commerce" for four categories of renewable fuel. *Id*. § 7545(o)(3)(B)(ii).

"Obligated parties" are responsible for ensuring that the volume targets are met each year. *Id*. § 7545(o)(3)(B)(ii)(I); 40 C.F.R. §§ 80.1406, 80.1407. An obligated party must meet its Renewable Volume Obligation ("RVO"). 40 C.F.R. § 80.1406(b). To calculate its RVO, an obligated party multiplies EPA's volume percentage by the amount of transportation fuel the company produced or imported. While the statute defines "obligated parties" to include "refineries, blenders, distributors, and importers," *see* 42 U.S.C. §§ 7545(o)(2)(A)(iii)(I), 7545(o)(3)(B)(ii)(I), EPA has imposed compliance obligations only on "refiner[s]" and "importer[s]," *see* 40 C.F.R. § 80.1406(a)(1). "Refiners," like Wynnewood, produce petroleum-based fuels and other products from crude oil.

### B.    Renewable Identification Numbers (RINs)

Obligated parties demonstrate RFS compliance by securing blending credits called RINs. 40 C.F.R. § 80.1427. A RIN is created when a renewable fuel producer makes renewable fuel—such as ethanol. *Id*. § 80.1426. Until the renewable fuel is blended into petroleum-based transportation fuel, the RIN remains "assigned" to the physical volume of renewable fuel. *Id*. § 80.1428. The RIN is "separated" when the renewable fuel is blended with transportation fuel. *Id*. § 80.1429. Obligated parties use separated RINs to demonstrate RFS compliance. *Id*. § 80.1427.

An obligated party that cannot separate enough RINs on its own to meet its RVO must buy RINs from others. RINs can be traded on a spot market or bought and sold through private contracts. *See* 75 Fed. Reg. 14,670, 14,722 (Mar. 26, 2010).

RINs expire after two years. RINs can be used for compliance in the calendar year in which they are generated, or the following calendar year. 72 Fed. Reg. 23,900, 23,909 (May 1, 2007) (to be codified at 40 C.F.R. pt. 80). For example, RINs created in 2017 must be used for RFS compliance in 2017 or 2018. RINs generally decrease in value as their expiration date approaches, and expired RINs are valueless. The deadline to demonstrate RFS compliance for 2018 was March 31, 2019. *See* Renewable Fuel Standard Program: Standards for 2014, 2015, and 2016 and Biomass-Based Diesel Volume for 2017, 80 Fed. Reg. 77,420, 77,513 (Dec. 14, 2015) (to be codified at 40 C.F.R. pt. 80) ("For the 2016 and subsequent

- 4 -

compliance years, the . . . annual compliance demonstration reports [will be] due March 31.").

The market for RINs is necessary because "[m]any obligated parties"—particularly small refineries like Wynnewood—"do not have access to renewable fuels or the ability to blend them, and so must use credits to comply." 72 Fed. Reg. at 23,904. In other words, purchasing RINs from others is the only way for small refineries like Wynnewood to comply with the RFS Program. Conversely, large, vertically integrated refiners with their own blending operations—and parties with no RFS obligations at all, like renewable fuel blenders—produce excess RINs and can sell them for "windfall profit[s]." JA__ [GD-10 at 35]. Obligated parties, including Wynnewood and other small refineries, retired RINs by the March 31, 2019 deadline for 2018 compliance. JA___ [Idsal Letter at 1 (Dec. 19, 2019)]; *see also* 80 Fed. Reg. at 77,513.

An obligated party can carry over a deficit to the next compliance year if it cannot generate or buy enough RINs, 72 Fed. Reg. at 23,904, 23,909, 23,935, but must then make up that deficit and meet its new annual obligation the following year. *Id.* at 23,909. An obligated party cannot carry a deficit two years in a row. *Id.* at 23,914, 23,935; Regulation of Fuels and Fuel Additives: Changes to Renewable Fuel Standard Program, 74 Fed. Reg. 24,904, 24,961 (proposed May 26, 2009) (to be codified at 40 C.F.R. pt. 80). Thus, for example, if an obligated party carried a deficit for the 2017 compliance year, it would be required to retire enough

- 5 -

RINs by March 31, 2019, to demonstrate compliance for both the 2017 and 2018 compliance years—it would not be permitted to carry a deficit for 2018.

### C.  The small refinery exemption

When Congress created the RFS Program, it recognized that small refineries like Wynnewood would face disproportionate economic harm due to the competitive distortion in favor of large blending refineries and exempt (non-refining) blenders. JA__ [GD-10 at 1–2, B-5]. Building facilities for blending renewable fuels into petroleum products is capital-intensive and not feasible for most small refineries, meaning they are forced to buy RINs from larger refiners or non-obligated parties that operate blending facilities. JA__ [*Id.* at 34]. Small refineries often sell to limited geographic markets, where acceptance of renewable fuel blends is low. Unlike large, vertically integrated refiners that can transport their fuels to different markets, small refineries must limit the extent of their own renewable fuel blending to match what their local markets will accept. *Id*. The upshot is that small refineries are more reliant on purchasing RINs to comply with the RFS Program. When RIN prices exceed the cost of buying and blending renewable fuel, then RFS compliance advantages large refiners and disadvantages small refineries. JA__ [*Id.* at 2–3].

Congress did not intend to permanently disadvantage small refineries, so it took steps to protect them from the disproportionate costs of

- 6 -

complying with the RFS Program. First, Congress exempted all small refineries from RFS compliance through 2011. 42 U.S.C. § 7545(o)(9)(A)(i). Refineries with output below 75,000 barrels a day are considered "small refiner[ies]," so Wynnewood easily qualifies. *See id.* § 7545(o)(1)(K).

Next, Congress required DOE to study whether compliance with the RFS Program would impose "disproportionate economic hardship on small refineries." *Id.* § 7545(o)(9)(A)(ii)(I). If DOE concluded that any small refineries would experience disproportionate hardship, Congress directed EPA to exempt them from RFS compliance for at least two more years. *Id.* § 7545(o)(9)(A)(ii)(II).

Finally, Congress allowed small refineries "at any time" to petition EPA for an extension of the statutory exemption from RFS compliance "for the reason of disproportionate economic hardship." *Id.* § 7545(o)(9)(B)(i). Congress directed EPA, "in consultation with the Secretary of Energy," to consider the findings of the DOE Study (JA__ [GD-10]) and "other economic factors" when evaluating small refinery hardship petitions. *Id.* § 7545(o)(9)(B)(ii).

Section 7545(o)(9)(B)(iii) sets a 90-day deadline for the Administrator to act on a hardship petition. "The Administrator *shall act* on any petition submitted by a small refinery for a hardship exemption not later than 90 days after the date of receipt of the petition." *Id.* § 7545(o)(9)(B)(iii) (emphasis added). EPA's implementing regulations say the same. *See* 40 C.F.R. § 80.1441(e)(2)(ii) ("The Administrator shall act

- 7 -

on such a petition not later than 90 days after the date of receipt of the petition."). Before the 2018 compliance year at issue, EPA had consistently issued SRE decisions on or before the March 31st annual compliance deadline. As EPA recognized in the rulemaking establishing the final volumes for 2014 through 2016, obligated parties need time to plan for compliance. 80 Fed. Reg. at 77,426. That is why, when the 2014 and 2015 volumes were finalized later than the statutory deadline(s), EPA extended the 2013–15 compliance deadlines "to afford obligated parties additional time to engage in transactions to acquire RINs they need for compliance." *Id.*

## II. Proceedings Below

### A. Wynnewood's 2018 petition and EPA's violation of the statutory 90-day timeline

Wynnewood submitted its SRE petition for compliance year 2018 on September 18, 2018. JA__ [AH-1, 2]. The next day, EPA acknowledged receipt and forwarded the petition to DOE. JA__ [AH-3, 4]. The statutory deadline for EPA to act on the petition was December 17, 2018: 90 days from September 18. The deadline for refineries to demonstrate compliance for 2018 was March 31, 2019. 80 Fed. Reg. at 77,513.

EPA did not decide Wynnewood's petition by the statutory deadline, nor did EPA issue its decision by the annual RFS compliance deadline. EPA did not even make contact with Wynnewood until March 4, 2019, when Karen Nelson of EPA's compliance division e-mailed Wynnewood

- 8 -

and said that "EPA and DOE [we]re evaluating [the] petition for" hardship relief. She asked Wynnewood to provide "a brief explanation of the actual financial value of the 2017 [hardship] exemption" that Wynnewood had received, as well as some financial statements. JA__ [AH-5]. Two weeks later, Wynnewood sent the requested financial statements and explanation of the value of the 2017 hardship exemption. JA__ [AH-7, 8]. EPA sent follow up questions on March 20, 2019, JA__ [AH-9], to which Wynnewood responded on March 22, JA__ [AH-12-14]. At no point before March 31, 2019, the 2018 compliance deadline, did EPA advise Wynnewood to consider carrying forward a deficit in light of the agency's delay in issuing its decision up until that point. After some minor back-and-forth, all was resolved by April 3, 2019. JA__ [AH-24]. On April 26, 2019, DOE recommended in confidential correspondence to EPA that it grant Wynnewood's hardship petition. JA__ [AH-25, 26]. This recommendation was not shared with Wynnewood.

On August 9, 2019, almost six months after the statutory deadline and more than four months after the deadline for Wynnewood to demonstrate compliance for 2018, EPA notified Wynnewood that EPA granted its 2018 hardship petition. JA__ [AH-27]. That same day, EPA issued decisions on 2018 SRE petitions for 34 other small refineries. In a memorandum accompanying those 2018 hardship decisions, EPA recognized that "the original [small refinery] exemption under subparagraph (A) [of 42 U.S.C. § 7545(o)(9)] was a full exemption, and therefore . . . when

- 9 -

Material Under Seal Deleted

Congress authorized the Administrator to provide an 'extension' of that exemption for the reason of DEH [disproportionate economic hardship], Congress intended that extension to be a full, and not partial, exemption." JA__ [GD-14 at 2]. Therefore, "EPA shall either grant or deny petitions for small refinery hardship relief in full, and not grant partial relief." *Id.*

After ostensibly granting Wynnewood a "full, not partial, exemption," *id.*, EPA returned in August 2019 the RINs that Wynnewood had retired to comply with its RFS requirements for 2018. Some of those RINs were 2017-vintage RINs that had already expired. Those RINs lost ▮▮▮ ▮▮▮ in value between EPA's 90-day compliance deadline of December 17, 2018, and the day EPA returned them. JA__ [financial documents from Wynnewood]. The remainder were 2018-vintage RINs that had decreased in value by ▮▮▮▮ between December 17, 2018 and August of 2019. JA__ [financial documents from Wynnewood]. In sum, Wynnewood's returned RINs lost ▮▮▮▮ of their value between the compliance deadline and August of 2019. JA__ [financial documents from Wynnewood].

**B.    EPA's refusal to replace or otherwise credit Wynnewood and other small refineries for expired or devalued RINs**

On August 13, 2019, Wynnewood's Executive Vice President, General Counsel, and Secretary e-mailed an EPA employee "request[ing] that its 2017 and 2018 RINs be reinstated as 2019 RINs" "because the 2017

- 10 -

RINs expired and are valueless and the 2018 RINs have lost most of their value due to EPA's failure to issue its decisions on 2018 hardship waivers within the deadline required by law." JA___ [e-mail from M. Buhrig to J. Kim dated Aug. 13, 2019]. Wynnewood sent a second e-mail to EPA on August 22, 2019, referencing the August 13 e-mail and "continu[ing] to demand that its 2017 and 2018 RINs used towards its 2018 compliance be replaced with 2019 RINs." JA___ [e-mail from M. Buhrig to J. Kim dated Aug. 22, 2019]. EPA did not address Wynnewood's request and merely confirmed that it was returning the 2017 and 2018 RINs. JA___ [e-mail from J. Kim to M. Buhrig dated Aug. 23, 2019].

Also on August 13, 2019, counsel for multiple other small refineries that received decisions on August 9, 2020 wrote to EPA "to request that EPA take steps to avoid causing harm to small refineries due to the delay in the issuance of the 2018 decisions." JA__ [L. Johnson Koch Letter (Aug. 13, 2019) at 1]. The delay meant that refineries' 2017 RINs used to demonstrate compliance in 2018 had expired and could not be used to comply in 2019, and refineries' 2018 RINs used to demonstrate compliance in 2018 had "declined in value by more than 70%." *Id.* Like Wynnewood, counsel requested that EPA "issue 2019 replacement RINs for the small refineries' 2017 and 2018 RINs, in the same manner that EPA had previously issued replacement RINs for" two small refineries, HollyFrontier and Sinclair, whose RINs had expired while litigation on their hardship petitions was pending. *Id.*

- 11 -

EPA issued replacement RINs for HollyFrontier and Sinclair to "ensure that" their small refinery exemptions for compliance years 2014 and 2015, "delay[ed]" by litigation, would still be "meaningful." Respondent EPA's Brief at 8, *Producers of Renewables United for Integrity Truth and Transparency v. EPA*, No. 18-1202 (D.C. Cir. Mar. 4, 2019), Doc. No. 1775897 ("EPA Brief"). EPA denied small refinery exemptions for compliance years 2014 and 2015 for HollyFrontier and Sinclair. Both appealed to the Tenth Circuit. In *Sinclair Wyoming Refin. Co. v. EPA*, 887 F.3d 986, 992 (10th Cir. 2017), the Tenth Circuit vacated and remanded EPA's two prior denials of Sinclair's hardship petitions for its two Wyoming refineries in 2014. *Id.* at 999. Based on that decision, the Tenth Circuit granted voluntary remand and vacatur of Sinclair's two 2015 petitions and HollyFrontier's 2015 petition. Order, *Sinclair Wyoming Refining Co. v. EPA*, Case No. 16-9561 (10th Cir. Dec. 14, 2017); Order, *HollyFrontier Refining v. EPA*, Case No. 16-9564 (10th Cir. Jan 5, 2018).

On remand, EPA "changed its prior decisions to now grant the five exemption petitions" and "took action to ensure that the five exemptions would be meaningful [given] the delay caused by litigation." EPA Brief at 8. "The RINs previously retired by" Sinclair and HollyFrontier to comply with years 2014 and 2015 "had expired while the litigation was pending, so those RINs no longer had any value." *Id.* "For that reason, EPA allowed Sinclair and HollyFrontier to generate RINs to replace those they had long-ago retired to comply with their 2014 and 2015 RFS

- 12 -

requirements." *Id.*; *see also Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 778 F. App'x 1, 2–3 (D.C. Cir. 2019) ("EPA thus decided that, in order to provide the refineries 'meaningful relief' from their since-excused compliance, it would 'replac[e]' the retired, expired RINs with an equal number of newly minted 2018 RINs.").

But EPA has declined to issue unexpired RINs to Wynnewood and other small refineries to which EPA returned expired or otherwise valueless RINs because of *EPA's own delay* in issuing the 2018 SRE decisions. EPA did not issue new RINs to Wynnewood when Wynnewood asked for them in August 2019, JA___ [e-mails between M. Buhrig and J. Kim], and in December 2019, EPA denied other small refineries' requests for new RINs. JA__ [Idsal Letter at 2 (Dec. 19, 2019)]. EPA said that "[n]either the [Clean Air Act] nor the regulations suggest that EPA must or should provide relief beyond an exemption from the obligation to comply with the RFS requirements." *Id.* EPA argued that small refineries did not have to "retire RINs to demonstrate compliance with their 2018 RFS obligations"—they "could have carried forward a RIN deficit for the 2018 compliance year while waiting for EPA's decision." *Id.* EPA asserted that "revers[ing] RIN retirement transactions . . . when the RINs . . . are not needed to demonstrate compliance" is the "only remedy EPA has ever considered appropriate to provide to exempted small refineries in the context of granting small refinery exemptions." *Id.*

- 13 -

EPA said it would not issue new RINs as it had for Sinclair and HollyFrontier because the delay was not due to the time needed for litigation. EPA argued that the remedy it provided Sinclair and HollyFrontier was due to "extenuating circumstances"—the "time needed for the" Tenth Circuit "to resolve the petition for review." JA__ [*Id.* at 3]. "EPA continues to believe that the extraordinary remedy of RIN replacement should be limited to the circumstances presented by the remand in *Sinclair.*" *Id.*

## SUMMARY OF ARGUMENT

This Court should set aside EPA's arbitrary and capricious decision to return Wynnewood's expired 2017 RINs and substantially devalued 2018 RINs and order EPA to issue Wynnewood new or otherwise unexpired RINs to ensure that EPA treats similarly situated entities consistently and complies with the plain language and purpose of the SRE statute.

EPA's decision to return Wynnewood's expired and substantially devalued RINs is arbitrary and capricious because it ignores an important aspect of the problem. *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). Congress' principal objective in creating the small refinery exemption was to cure the disproportionate economic hardship to small refineries from compliance with the RFS. *See* JA__ [GD-10 at 1–2]; 42 U.S.C. § 7545(o)(9)(B)(i). EPA's granting of an "exemption" that, due to EPA's own delay, still effectively

- 14 -

Material Under Seal Deleted

imposes more than half of the compliance costs on a small refinery experiencing disproportionate economic hardship, as here, ignores that most important aspect.

In addition, EPA's decision to return Wynnewood's expired and substantially devalued RINs was contrary to procedures prescribed by law and prejudiced Wynnewood. EPA did not decide Wynnewood's 2018 petition within 90 days, as Congress requires, and that delay harmed Wynnewood. EPA took 325 days to act on Wynnewood's hardship petition, well exceeding the 90-day deadline. During the extra 235 days, on the March 31, 2019 compliance deadline, Wynnewood retired 2017-vintage RINs and 2018-vintage RINs to demonstrate RFS compliance for 2018. By the time EPA granted Wynnewood's SRE petition on August 9, 2019, and returned the RINs Wynnewood had used to demonstrate compliance, the 2017-vintage RINs had expired, losing ▮▮▮▮▮ in value, and the 2018-vintage RINs had lost ▮▮▮▮▮ in value, costing Wynnewood ▮▮▮▮▮ for RFS compliance even though EPA determined Wynnewood was "exempt". JA__ [financial documents from Wynnewood].

EPA was aware that its delay would prejudice Wynnewood. EPA knew that Wynnewood would have to retire RINs if EPA did not issue a decision by the compliance deadline for 2018. Still, EPA delayed so long that the deadline for compliance and four more months passed. Courts frequently hold agencies accountable in these circumstances, either

through the Administrative Procedure Act ("APA") or the exercise of their equitable powers.

This Court should order EPA to issue Wynnewood new or otherwise unexpired RINs to ensure that EPA treats similarly situated entities consistently. An agency acts arbitrarily and capriciously when it treats similarly situated entities differently without an adequate explanation. And a difference in procedural posture alone cannot justify disparate treatment. Here, Sinclair, HollyFrontier, and Wynnewood were all harmed by a delay in granting their petitions for hardship relief because the RINs they used for compliance had expired by the time EPA granted their SRE petitions. EPA, however, issued new RINs to Sinclair and HollyFrontier, but not Wynnewood. EPA's "belie[f]" that the "extraordinary remedy" of RIN replacement should be used when only *litigation* causes the delay, JA__ [Idsal Letter at 3], is insufficient and makes no sense. This Court has held that differences in procedural posture cannot justify an agency's disparate treatment of similarly situated entities. Just as with Sinclair and HollyFrontier, RIN replacement is necessary for EPA's grant of Wynnewood's small refinery exemption to be "meaningful." *See* EPA Brief at 8. And RIN replacement is even more justified when *EPA's own delay*, not litigation, caused the problem.

Also, EPA must issue new or otherwise unexpired RINs to Wynnewood to comply with the RFS statute. The plain language clearly requires EPA to provide a full "exemption" to a small refinery experiencing

- 16 -

Material Under Seal Deleted

disproportionate economic hardship, like Wynnewood. Given the manda-
tory statutory timeline, this Court should order EPA to provide replace-
ment RINs within 90 days.

### STANDING

Wynnewood has standing to seek review of this administrative ac-
tion. *See Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); D.C. Cir.
R. 28. "[T]he complainant," Wynnewood, "is 'an object of the action (or
forgone action) at issue'" in an "adjudication," and EPA's "'action or inac-
tion has caused [Wynnewood] injury, and that a judgment preventing or
requiring the action will redress it.'" *Id.* at 900 (quoting *Lujan v. Defs. of
Wildlife*, 504 U.S. 555, 561–62 (1992)). Specifically, EPA's delay in adju-
dicating Wynnewood's 2018 hardship petition and EPA's refusal to issue
Wynnewood new RINs when EPA finally granted Wynnewood's petition
based on disproportionate economic hardship caused the RINs returned
to Wynnewood to decrease in value by ████████. A judgment from this
Court ordering EPA to provide replacement RINs to Wynnewood will re-
dress that injury.

### STANDARD OF REVIEW

Under the APA, "[t]he reviewing court shall . . . hold unlawful and
set aside agency action, findings, and conclusions found to be . . . arbi-
trary, capricious, an abuse of discretion, or otherwise not in accordance
with law" or "without observance of procedure required by law." 5 U.S.C.

- 17 -

                                      JA000688

§ 706(2)(A), (D). "In making the foregoing determinations, . . . due account shall be taken of the rule of prejudicial error." *Id.* § 706. An agency "shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* § 555(b).

If relief is unavailable under the APA, this Court may use its equitable powers to enjoin violations of law by agencies when a party is irreparably injured and other legal remedies are inadequate. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). "The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citations omitted); *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010) (addressing injury that can be remedied by a court).

## ARGUMENT

**I. This Court should set aside EPA's decision merely to return expired and substantially devalued RINs to Wynnewood and order it to replace those with current-vintage RINs.**

### A. EPA's decision to refund Wynnewood's old RINs is arbitrary and capricious because it ignores important aspects of the problem.

An agency decision is arbitrary and capricious if the agency failed to consider an important aspect of the problem. *State Farm*, 463 U.S. at 43; *Gresham v. Azar*, 950 F.3d 93, 99 (D.C. Cir. 2020), *cert. granted sub nom. Azar v. Gresham*, Nos. 20-37, 20-38, 2020 WL 7086046 (Dec. 4,

- 18 -

2020).[1] Important aspects of the problem include Congress's "principal objective[s]" in creating the program and related "concerns" raised by interested parties. *Azar*, 950 F.3d at 102–03; *see Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1101–03 (D.C. Cir. 2009). It is arbitrary and capricious for an agency to "disregard[ ] [a] statutory purpose" in its analysis and "dismiss [ ] in a conclusory manner" the related "concerns of others." *Azar*, 950 F.3d at 103–04 (citing *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 932 (D.C. Cir. 2017); *Getty v. Fed. Savs. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986)).

Here, EPA failed to consider the most important aspect of the problem when it concluded that Wynnewood was entitled to an "exemption" from compliance with the RFS program due to disproportionate economic hardship but then effectively forced Wynnewood to comply with the RFS program due to EPA's unlawful delay. After Wynnewood submitted its petition, EPA determined that Wynnewood would suffer disproportionate economic hardship if forced to comply with the RFS program in 2018. EPA's unlawful delay in issuing its decision forced Wynnewood to comply with the RFS program for 2018 while Wynnewood waited. EPA knew that

---

[1] The Question Presented in the Supreme Court does not implicate the proposition in *Azar* upon which Wynnewood relies: agency action that disregards Congress's principal objective in the statute is arbitrary and capricious and subject to reversal. *See* Question Presented, Nos. 20-37, 20-38 (U.S.), U.S. Sup. Ct., https://www.supremecourt.gov/docket/docket-files/html/qp/20-00037qp.pdf (emphasis added).

- 19 -

small refineries needed time to plan for compliance. *See* 80 Fed. Reg. at 77,426. And by the time EPA granted Wynnewood's petition in August of 2019, EPA knew that Wynnewood had retired RINs to demonstrate compliance for 2018 and that some of those RINs had expired and the rest had substantially declined in value due to EPA's delay. Yet EPA merely returned those expired and depreciated RINs to Wynnewood, a small refinery it had just concluded would suffer disproportionate economic hardship from RFS compliance. Then, in response to inquiries from Wynnewood and other small refineries to fashion meaningful relief to mitigate the problem EPA caused, EPA refused.

EPA's actions undermined the very purpose of the exemption to which it determined Wynnewood was entitled and imposed the very economic hardship Congress intended the small refinery exemption to alleviate. *See Azar*, 950 F.3d at 102, 104. Wynnewood had to comply in large part with the RFS program in 2018. Just as "a principal objective of Medicaid" is "coverage," *id.* at 102, Congress's principal objective in creating the small refinery "exemption" is protecting small refineries from the disproportionate costs of complying with the RFS Program, *see* JA__ [GD-10 at 1–2]; 42 U.S.C. § 7545(o)(9)(B)(i). An agency action that imposes ██ ██████ of compliance costs on a small refinery despite concluding that compliance would cause the refinery to suffer disproportionate economic hardship *and* that the refinery should be *exempt* from compliance ignores an important aspect of the problem.

- 20 -

Moreover, Wynnewood and other small refineries voiced their concerns and alerted EPA to the problem, *see Azar*, 950 F.3d at 102: that EPA's remedy of returning expired and substantially depreciated RINs after an unlawful delay did not alleviate the economic hardship that Congress enacted the exemption to address. JA___ [e-mails between M. Buhrig and J. Kim]; JA__ [L. Johnson Koch Letter]. The refineries also pointed out that EPA had previously agreed that returning expired and substantially depreciated RINs did not alleviate the economic hardship that Congress enacted the exemption to address. *Id.* at 1 (citing EPA Brief). EPA's justification for disagreeing in this instance was only that "EPA continues to believe that the extraordinary remedy of RIN replacement should be limited to the circumstances presented by the remand in Sinclair" but gave no substantive reason why. JA__ [Idsal Letter at 3]. In other words, EPA merely "note[d] the [small refineries'] concerns" and "dismiss[ed] them in a conclusory manner," which is "not a hallmark of reasoned decisionmaking." *See Azar*, 950 F.3d at 103.

## B.  EPA violated procedures prescribed by law to Wynnewood's detriment.

A "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). Under the APA, this Court is "empowered to set aside [agency action] on the basis of delay" when the complaining party is prejudiced. *Dayton Tire v. Sec'y of*

- 21 -

*Labor*, 671 F.3d 1249, 1253 (D.C. Cir. 2012). The Court will set aside delayed agency action if the "consequences of the [agency's] delay . . . dictate" that "corrective action is needed." *Solenex LLC v. Bernhardt*, 962 F.3d 520, 527 (D.C. Cir. 2020) (quoting *Dayton Tire*, 671 F.3d at 1253). "What matters for the arbitrary-and-capricious analysis are the identified consequences or harms that flow from the agency delay" that "were not reasonably taken into account by the agency." *Id.* at 527–28; *see Panhandle Co-op. Ass'n v. EPA*, 771 F.2d 1149, 1153 (8th Cir. 1985); *Dodson v. Nat'l Transp. Safety Bd.*, 644 F.2d 647, 652 (7th Cir. 1981) (per curiam).

An agency delays when it violates a prescribed statutory deadline. *See, e.g.*, *State of Minn. by Levine v. Heckler*, 779 F.2d 1335, 1337 (8th Cir. 1985). "It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979), *decision clarified*, 627 F.2d 407 (D.C. Cir. 1980); *see also Woodruff Cmty. Hosp. v. Sullivan*, No. CV 91-2927 AWT, 1992 WL 133087, at *1 (C.D. Cal. Feb. 27, 1992) ("Because the delay violated both the Secretary's regulations and relevant provisions of the Administrative Procedure Act, Woodruff is entitled to relief to the extent that it has been prejudiced by the delay."). "The logic of these cases derives from the self-evident proposition that the Government must obey its own laws." *Dilley*, 603 F.2d at 920.

- 22 -

A court has declined to set delayed aside agency action when the agency recognized and cured the prejudice from the delay itself. *Heckler*, 779 F.2d at 1337. In *Heckler*, for example, the Secretary of Health and Human Services missed the 90-day deadline to approve Minnesota's proposed amendments to its Medicaid plan and eventually denied them. But "[i]n her final decision, the Secretary recognized that her failure to act in a timely manner placed the state 'in limbo' regarding the implementation of the policies." *Id.* So the Secretary cured the prejudice. She "determined that" Minnesota could keep any federal funds received "between the end of the ninety day period and her final disapproval in 1981." *Id.* As a result, the Eighth Circuit did not set aside her action. "An agency, like a court, can undo what is wrongfully done by virtue of its order." *United Gas Improvement Co. v. Callery Properties, Inc.*, 382 U.S. 223, 229 (1965).

If relief is unavailable under the APA, this Court uses its equitable powers to enjoin violations of law by agencies. *Magnetic Healing*, 187 U.S. at 110–11; *Weinberger*, 456 U.S. at 311–12; *see Free Enterprise Fund*, 561 U.S. 477. "In cases where administrative misuse of procedure has delayed relief, the courts have the equitable power to order relief tailored to the situation, not mere remand for agency use of its discretion." *Benten v. Kessler*, 799 F. Supp. 281, 283 (E.D.N.Y. 1992) (citing *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939) ("the court . . . may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action"); *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d

- 23 -

Material Under Seal Deleted

626 (D.C. Cir. 1987) (OHSA's delay in promulgating safety rule allows court to set deadline for agency); *NAACP v. Sec'y of Hous. & Urban Dev.*, 817 F.2d 149, 160 (1st Cir. 1987) ("A court, where it finds unlawful agency behavior, may tailor its remedy to the occasion."); *Cal–Almond, Inc. v. Yeutter*, 756 F. Supp. 1351, 1356 (E.D. Cal. 1991)); *see generally Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) (analyzing six factors to determine whether agency's "unreasonable delay," in absence of a mandatory statutory deadline, necessitated the exercise of court's equitable powers).

Here, EPA's unlawful delay prejudiced Wynnewood. EPA took 325 days to act on Wynnewood's hardship petition, grossly exceeding the 90-day deadline. When EPA finally granted Wynnewood's 2018 petition in August of 2019, it returned 2017 RINs that had already expired and 2018 RINs that had substantially declined in value due to EPA's delay. Indeed, the value of the 2017 RINs decreased by ████████ and the 2018 RINs by ████████ between the 90-day deadline and August 2019. Thus, Wynnewood received ████████ less in hardship relief than it was entitled.

EPA was aware that its unlawful delay would render its belated grant of Wynnewood's hardship petition meaningless. EPA knew that small refineries need time to plan for compliance. *See* 80 Fed. Reg. at 77,426. The agency was also on notice that, absent a decision on its 2018 SRE petition, Wynnewood would have to retire RINs on March 31, 2019,

- 24 -

to demonstrate compliance for 2018. Nevertheless, EPA did not grant Wynnewood's petition until August 9, 2019, 235 days late and more than four months after the annual compliance deadline.

That Wynnewood could have "carried forward a RIN deficit for the 2018 RFS compliance year" instead of using 2017 and 2018 RINs to comply, JA__ [Idsal Letter at 2], does not relieve EPA of its statutory obligation to decide the petition within 90 days. *See French's Estate v. FERC*, 603 F.2d 1158, 1168 (5th Cir. 1979). In *French's Estate*, the Fifth Circuit held that FERC's "delay" in deciding the estate's "application for special relief" "prejudiced the Estate, subjecting it to an additional liability of $14,200 in the form of accrued interest." *Id.* at 1167. FERC had asserted that such petitions "will be disposed of as promptly as possible." *Id.* at 1168. FERC argued that the estate had the option to put the funds in escrow and avoid the interest obligation. *Id.* at 1161, 1168. Even so, the court held that "the Estate certainly had a right to expect a decision within a reasonable time." *Id.* at 1168. "It would violate even the most fundamental notions of equity to allow the Commission to assess interest caused by its own delay, such as that encountered here, and we decline to countenance it." *Id.* The court "set aside that portion of the Commission's order which imposed the accumulation of interest from and after" the date the estate submitted its petition. *Id.*

Given the 90-day statutory deadline, Wynnewood "certainly had a right to expect a decision" within that timeframe. *See id.* at 1168.

- 25 -

Wynnewood was not obligated to guard against the possibility that EPA would violate a Congressional mandate and delay so long that an eventual grant would be the near-functional equivalent of a denial. And EPA had publicly stated that it was aware that obligated parties needed time to plan for compliance. *See* 80 Fed. Reg. at 77,426. Moreover, the deficit carry-over option is for circumstances where a small refinery *cannot* generate or buy enough RINs, 72 Fed. Reg. at 23,904, 23,909, 23,935; it was not intended to alleviate circumstances *caused by EPA*. Because deficits cannot be carried in consecutive years, that option is not even available to all small refineries waiting for overdue EPA action. And even for small refineries that are eligible to carry a deficit, those that choose to carry a deficit due to EPA's unlawful delay are potentially foregoing the ability to carry a deficit during the next compliance year even if circumstances warrant it.[2] Thus, it "would violate [ ] the most fundamental notions of equity" to allow EPA to delay so long that a favorable action on its face—a grant—fails to provide meaningful hardship relief.

---

[2] A refinery that chose to carry a deficit for compliance year 2018 due to EPA's unlawful delay could not have done the same to protect against EPA's delay for compliance year 2019. Indeed, EPA has not yet issued decisions on 2019 petitions.

## C. EPA's refusal to issue Wynnewood new RINs is arbitrary and capricious because EPA treated similarly situated entities differently.

Generally, "an agency cannot treat similarly situated entities differently unless it 'support[s] th[e] disparate treatment with a reasoned explanation and substantial evidence in the record.'" *Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1313 (D.C. Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)) (alterations in original); *Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994). Otherwise, the action is arbitrary and capricious and cannot be upheld. *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005) (citing *Willis Shaw Frozen Express, Inc. v. ICC*, 587 F.2d 1333, 1336 (D.C. Cir. 1978); *Ace Motor Freight, Inc. v. ICC*, 557 F.2d 859, 862 (D.C. Cir. 1977)).

This Court does not accept at face value the agency's explanation of the disparate treatment; the explanation must make logical sense and be supported by the evidence. *See Azar*, 950 F.3d at 103 ("Nodding to concerns raised by commenters only to dismiss them in a conclusory manner is not a hallmark of reasoned decisionmaking."); *Lilliputian Sys.*, 741 F.3d at 1313–14. In *Lilliputian*, for example, the Transportation Safety Administration prohibited "flammable-gas fuel cell cartridges . . . from airline checked baggage" but allowed "medicinal and toilet articles containing flammable gas." *Id.* at 1313. TSA said that it banned the fuel cell

- 27 -

cartridges because of the "'cumulative risk' of permitting [them] in checked baggage alongside medicinal and toilet articles containing flammable gas" but said "nothing about *how* it evaluated the cumulative risk or *why* its evaluation led to the prohibition of one category of similarly-situated articles and not the other." *Id.*; *see also Azar*, 950 F.3d at 103 (describing *Getty v. Fed. Savs. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986), as a case "analyzing whether an agency actually considered a concern rather than merely stating that it considered the concern"). As a result, its action was arbitrary and capricious.

As relevant here, differences in the "procedural postures of the parties" in front of the agency "cannot alone substantiate the [agency]'s disparate treatment of the parties." *Burlington*, 403 F.3d at 777. There must be a substantive difference to justify disparate treatment. In *Burlington*, the Surface Transportation Board treated shippers and carriers differently. Shippers were granted vacatur of a rate prescription upon request, without a showing of material error, new evidence, or changed circumstances, while carriers had to show a change in circumstances calling into question the prior rate analysis. *Id.* The Board argued that a shipper should not be "held captive to a rate prescription it initially sought" because "economic and regulatory conditions . . . can change significantly." *Id.* at 778. But the Board did not explain "why a carrier, who also may be adversely impacted by changes in economic and regulatory conditions,

should not be afforded similar consideration." *Id.* As a result, the Board's action was arbitrary and capricious.

Here, EPA issued new RINs to Sinclair and HollyFrontier but did not do the same for Wynnewood and failed to provide a "reasoned explanation." *See Lilliputian Sys.*, 741 F.3d at 1313. When delay due to pending litigation caused Sinclair's and HollyFrontier's RINs to expire, EPA issued new RINs so that the grants of their hardship petitions after litigation would be "meaningful." Here, EPA's delay caused Wynnewood's RINs to expire, but EPA did not issue new RINs to Wynnewood. EPA's only explanation for the disparate treatment is that "EPA continues to believe that the extraordinary remedy of RIN replacement should be limited to the circumstances presented by the remand in *Sinclair.*" JA__ [Id-sal Letter at 3]. But as this Court held in *Burlington*, mere differences in procedural posture alone cannot justify disparate treatment. 403 F.3d at 777. EPA must have a rational *substantive* reason, supported by evidence, for treating similarly situated entities differently. *See Lilliputian Sys.*, 741 F.3d at 1313–14. There is no substantive difference here. There can be no rational reason for treating Wynnewood differently than Sinclair and HollyFrontier, especially when *EPA's own delay at the agency level*, and not the delay of judicial review in a federal appellate court, is what caused the expiration of Wynnewood's RINs.

- 29 -

### D.  EPA's refusal to provide Wynnewood new RINs is contrary to the small refinery exemption statute.

EPA's decision to grant less than a complete "exemption" to Wynnewood by returning expired and substantially devalued RINs is contrary to the SRE statute and EPA's own interpretation of that statute. The plain language requires EPA to provide a full exemption from the RFS program to a small refinery experiencing disproportionate economic hardship, like Wynnewood. Even if the statute were ambiguous, EPA's refusal to provide Wynnewood new RINs is entitled only to *Skidmore*[3] deference and is not persuasive. Finally, EPA's refusal is unreasonable and impermissible even under the *Chevron*[4] standard.

### 1.  The plain text requires EPA to provide a full "exemption" to a refinery that EPA determines would suffer disproportionate economic hardship from compliance.

This Court begins statutory interpretation with the plain language of the statute. *Merck & Co., Inc. v. U.S. Dep't of Health & Human Servs.*, 962 F.3d 531, 537 & n.3 (D.C. Cir. 2020). Words and phrases are given their statutory definition. If no statutory definition exists, this Court turns to dictionaries to determine the ordinary meaning of those words. *See id.* (citing Black's Law Dictionary, Webster's New International Dictionary, and the Oxford English Dictionary). "In ascertaining the plain

---

[3] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

[4] *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (internal quotation marks and citation omitted). "If the statute [is clear], that is the end of the matter. We enforce the statute as Congress directs." *Merck*, 962 F.3d at 535-36; *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 552 (D.C. Cir. 2020).

Here, the statutory definition and the ordinary meaning of the word "exemption" indicate that a refinery receives a complete exemption from RFS compliance regardless of when the exemption is granted.

The SRE statute states that "[a] small refinery may at any time petition the Administrator for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). The "exemption under subparagraph (A)" is undisputedly a complete exemption from the RFS program. *Id.* § 7545(o)(9)(A) (all requirements of the RFS program "shall not apply to small refineries"); *see* JA__ [GD-14]. As a result, an "extension" of that "exemption" means complete relief from the RFS program.

That statutory definition is consistent with the ordinary meaning of the word "exemption": freedom from an obligation or liability. The Oxford English Dictionary defines "exemption" as "[t]he process of freeing

or state of being free from an obligation or liability imposed on others."[5] The Meriam-Webster dictionary defines "exemption" as "the act of exempting or state of being exempt; immunity,"[6] with "exempt" defined as "free or released from some liability or requirement to which others are subject."[7]

Indeed, EPA itself interpreted the SRE statute as requiring the agency to grant a "full, not partial, exemption" to any small refinery that it determined would experience disproportionate economic hardship from RFS compliance. In a memorandum accompanying EPA's decision on Wynnewood's 2018 petition, Anne Idsal, Acting Assistant EPA Administrator, stated that "the original [small refinery] exemption under subparagraph (A) [of 42 U.S.C. § 7545(o)(9)] was a full exemption, and therefore . . . when Congress authorized the Administrator to provide an 'extension' of that exemption for the reason of DEH [disproportionate economic hardship], Congress intended that extension to be a full, and not partial, exemption." JA__ [GD-14 at 2]. Therefore, "EPA shall either grant or deny petitions for small refinery hardship relief in full, and not grant partial relief." *Id.* This is the best reading of the statute.

---

[5] https://www.lexico.com/en/definition/exemption (last visited Dec. 7, 2020).

[6] https://www.merriam-webster.com/dictionary/exemption (last visited Dec. 7, 2020).

[7] https://www.merriam-webster.com/dictionary/exempt#h1 (last visited Dec. 7, 2020).

- 32 -

In addition, the statute allows a refinery to petition for relief "at any time," indicating that a refinery should receive a full exemption no matter the timing of the agency's decision. *Id.* § 7545(o)(9)(B)(i). If EPA had granted an exemption before Wynnewood demonstrated compliance by retiring RINs, then Wynnewood is immune from that obligation and need not incur any compliance costs. However, if EPA grants an exemption after Wynnewood has demonstrated compliance (whether due to the timing of Wynnewood's application or, as here, EPA's delay on that application), then the only way for EPA to provide an "exemption" is to issue a RIN-replacement order that refunds and/or replaces RINs sufficient to offset Wynnewood's compliance costs. In EPA's own words, an "exemption" issued "too [long]" after the compliance deadline is not "meaningful" "because by then the RINs had expired." In order for the exemption to be "meaningful," EPA must "provide replacement RINs." EPA Brief at 8, *supra*.

Here, EPA's decision to provide only partial relief from Wynnewood's compliance costs is contrary to the plain text and EPA's own interpretation of the statute. The statute is clear: if EPA determines that compliance would cause a small refinery disproportionate economic hardship, it must give it a complete exemption from the RFS program for that year. EPA did not do so here.

- 33 -

## 2. EPA's refusal to provide Wynnewood replacement RINs is not permissible under any level of deference.

If the statute is ambiguous, an agency's action might be due some deference. The degree of deference depends on a multifactor balancing test involving, among other things, the "'interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, . . . and the careful consideration the Agency has given the question over a long period of time.'" *Fox v. Clinton*, 684 F.3d 67, 77 (D.C. Cir. 2012) (quoting *Barnhart v. Walton*, 535 U.S. 212, 222 (2002), and mentioning *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

EPA's decisions on small refineries' hardship petitions do not warrant *Chevron* deference. Such decisions are informal adjudications, *Sinclair*, 887 F.3d at 992, and this Court has held that similar "informal" agency "adjudication[s]" do not warrant *Chevron* deference. *Fox*, 684 F.3d at 76, 78. Indeed, the Tenth Circuit has held that EPA's decisions on small refinery hardship petitions are subject to "*Skidmore* deference." *Sinclair*, 887 F.3d at 992–93.

### a. EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 is not persuasive under the *Skidmore* standard.

"[A]n agency action that is not entitled to *Chevron* deference "is 'entitled to respect' only to the extent it has the 'power to persuade.'" *Fox*,

- 34 -

684 F.3d at 76 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

EPA's refusal to fully and actually exempt Wynnewood by providing replacement RINs, despite deciding that Wynnewood was entitled to a full exemption, is unpersuasive. An agency's decision is unpersuasive when it contradicts the plain language of the statute. *See Fox*, 684 F.3d at 79 ("The Department's statutory argument that Appellant was obliged to obtain citizenship in Israel 'by naturalisation' and not 'by return' is perplexing given the INA's express, expansive definition of "naturalization" noted above."); *see also Sinclair*, 887 F.3d at 992 ("Since our textual and contextual analyses demonstrate that the EPA's interpretation of § 7545(o)(9)(B) is contrary to the meaning and purpose of the statute, the EPA has failed to persuade us here."). As discussed above, EPA's decision to impose compliance costs on a refinery "exempt[ ]" from all requirements of the RFS program, *see* 42 U.S.C. § 7545(o)(9)(A) & (B)(i), due to disproportionate economic hardship that EPA itself found, is contrary to the plain text of the SRE statute. EPA's decision also contradicts EPA's own interpretation of the statute at the time it decided Wynnewood's petition as permitting only full, not partial, exemptions. In addition, EPA's refusal to provide replacement RINs, as it has provided to other similarly situated small refineries, based solely on procedural differences, is unpersuasive. As a result, EPA "can claim no deference." *See Fox*, 684 F.3d at 80.

- 35 -

**b.** **EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 is impermissible under *Chevron*.**

If an agency action is entitled to *Chevron* deference, this Court asks whether "[it] 'is based on a permissible construction of the statute.'" *N.Y. Stock Exch.*, 962 F.3d at 552 (quoting *Chevron*, 467 U.S. at 843). "[A]gencies must operate within the bounds of reasonable interpretation." *Michigan v. EPA*, 576 U.S. 743, 751 (2015) (internal quotation marks and citation omitted).

EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 is impermissible even if the agency qualified for *Chevron* deference. Under *Chevron*, an agency operates outside "the bounds of reasonable interpretation" when it reverses position and (1) fails to account for serious legitimate reliance interests engendered by the prior policy or (2) rests upon factual findings that contradict those which underlay its prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009); *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996) (citing 5 U.S.C. § 706(2)(A)). "[A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox Television*, 556 U.S. at 515–16. "It would be arbitrary or capricious to ignore such matters." *Id.*; *see also State Farm*, 463 U.S. at 42–43; *Verizon Commc'ns Inc. v. FCC*, 535 U.S. 467, 502, n.20 (2002).

- 36 -

JA000707

Also, an agency's interpretation is unreasonable when it "actually frustrate[s] the policies that Congress was seeking to effectuate" or is "inconsistent with the statutory mandate." *Cont'l Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1453 (D.C. Cir. 1988) (citing *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)).

Here, EPA's failure to provide relief that actually exempts Wynnewood from compliance for 2018 contradicts its interpretation of the statute and fails to account for serious, legitimate reliance interests engendered by that interpretation and rests upon factual findings that contradict those which underlay its interpretation of the statute. *See Fox Television*, 556 U.S. at 515–16.

EPA stated that it interpreted the SRE statute to require full exemptions from the RFS program for refineries that would experience disproportionate economic hardship from compliance. JA__ [GD-14]. In addition, in prior situations where delay caused retired RINs to expire (with HollyFrontier and Sinclair), EPA replaced those RINs to provide a full, meaningful "exemption." *See* EPA Brief, *supra*. But, in Wynnewood's case, EPA changed its position and failed to account for serious legitimate reliance interests engendered by its prior policy. Wynnewood retired RINs instead of carrying forward a deficit in part based on EPA's position that issuing replacement RINs was necessary to provide a meaningful, full exemption when delay caused expiration of those RINs. EPA failed

- 37 -

to account for those serious, legitimate reliance interests when it refused to issue new RINs to Wynnewood or do anything else to make the exemption "meaningful." In addition, EPA's failure to provide Wynnewood relief equivalent to a full exemption rests upon contradictory factual findings. *See Fox*, 556 U.S. at 515–16; *see State Farm*, 463 U.S. at 42–43. As an initial matter, EPA found that complying with the RFS program would impose disproportionate economic hardship on Wynnewood and determined that Wynnewood should be fully exempt from all requirements of the RFS program. The memorandum accompanying EPA's decision on Wynnewood's petition stated that the statute mandated full, complete exemptions from the RFS program. But EPA's refusal to provide replacement RINs effectively determined that EPA could still impose RFS compliance on Wynnewood. By contrast, in HollyFrontier's and Sinclair's cases, EPA concluded that it must issue new vintage RINs to provide a full exemption, as the statue required, because the RINs they retired to comply had expired by the time EPA issued a decision. Here, Wynnewood's RINs expired while it waited for EPA's decision, but EPA concluded that *not issuing* replacement RINs was necessary to comply with the SRE statute. These decisions are arbitrary and capricious. *See State Farm*, 463 U.S. at 42–43; *Verizon*, 535 U.S. at 502, n.20.

Moreover, EPA's failure to provide relief that fully and actually exempts Wynnewood from compliance for 2018 despite finding that compliance would subject Wynnewood to disproportionate economic hardship

Material Under Seal Deleted

"actually frustrate[s] the policies that Congress was seeking to effectu-ate" and is "inconsistent with the statutory mandate." *See Cont'l Air Lines*, 843 F.2d 1453. Congress intended that the RFS program reduce greenhouse gas emissions from transportation fuels and promote Ameri-can energy independence. *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206, 1217–19 (10th Cir. 2020). EPA's new interpretation "actually frustrates" Congress's goal of promoting American energy independence. *See Cont'l Air Lines*, 843 F.2d at 1453. Congress recognized that preserving small refineries is an important component of American energy independence. *See* 42 U.S.C. § 7545(o)(9). Both Congress and the DOE Study (JA__ [GD-10]) recognized that the RFS program would inherently impose substan-tial economic hardship on small refineries, and such hardship would be so significant that they would become bankrupt or shut down absent a complete exemption. *See* 42 U.S.C. § 7545(o)(9)(A). If small American re-fineries shut down, less transportation fuel will be produced here. That is why Congress created the blanket exemption for small refineries based on disproportionate economic hardship and then mandated that EPA ex-tend that exemption to refineries where DOE found disproportionate eco-nomic hardship in future years.

EPA's decision to impose ███████ in compliance costs—due to its unlawful delay—on a small refinery that, by EPA's own determina-tion, deserved a full "exemption" from the RFS program for the 2018 com-pliance year due to disproportionate economic hardship, conflicts with

- 39 -

JA000710

the express language, EPA's own interpretation, and purpose of the statute.

### E.    This Court should order EPA to issue new vintage RINs within the 90-day statutory timeline.

Absent direction from this Court, there is a high risk that EPA will delay again, harming Wynnewood. "Agency action on remand may result in inordinate delay between the time agency action takes effect and the time aggrieved parties gain access to court review on the merits." Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1095–96 (1996). "Unless the court in its remand order prescribes the time by which agency action on remand must take place, the agency is generally at liberty to proceed without time constraints." *Id.*

For example, EPA has yet to act three and a half years after this Court vacated a decision and remanded with instructions. *See* Motion of Renewable-Fuels Petitioners to Enforce the Mandate, *Americans for Clean Energy v. EPA*, No. 16-1005 (D.C. Cir. Nov. 23, 2020), Doc. #1872659. "One study found that '[r]emands almost always occasion significant delay,' that agency post-remand procedures 'took about seventeen months to complete on average,' and that 'one in ten was still pending almost five years after the court remanded to the agency.'" *Id.* at 1096 & n.69 (citing *Consolidated Freightways v. NLRB*, 892 F.2d 1052, 1059 (D.C. Cir. 1989) (six years between court remand and issuance of agency

- 40 -

order on remand); *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626, 628 (D.C. Cir. 1987) ("OSHA's EtO regulations, first proposed in 1982, are not final in 1987, despite repeated orders and exhortations from this court."); *Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.*, 720 F.2d 1319 (D.C. Cir. 1983)).

As a result, this Court should order EPA to act within 90 days, consistent with the statutory timeframe. *See Grynberg v. FERC*, No. 93-1221, 1994 WL 527209, at *1 (D.C. Cir. Aug. 5, 1994) ("The court expects respondent to act expeditiously and, if the case is not resolved within 90 days of the date of this order, respondent shall file a status report with the court."). As discussed above, EPA was required to rule upon Wynnewood's original SRE petition within 90 days and failed to do so. *See* 42 U.S.C. § 7545(o)(9)(B)(iii); 40 C.F.R. § 80.1441(e)(2)(ii). That 90-day timeframe is more than sufficient for EPA to act here.

In addition, EPA's history of delay justifies further conditions on remand: (1) the remand should be "record only," *Am. Gas Ass'n v. FERC*, 888 F.2d 136, 153 (D.C. Cir. 1989); (2) this panel should retain jurisdiction of the appeal during remand, *id.*; (3) the appeal should be stayed instead of dismissed, *see Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 26 (D.D.C. 2008); and (4) the remand should be limited to the discrete issue of the RIN-replacement order and not extend to EPA's grant of Wynnewood's exemption.

Material Under Seal Deleted

## CONCLUSION

For the foregoing reasons, this Court should grant Wynnewood's petition for review, set aside EPA's decision to return Wynnewood's expired 2017 and substantially devalued 2018 RINs (but not the grant of Wynnewood's exemption), which cost Wynnewood ███████, and remand to the agency with instructions to replace the 2017 and 2018 RINs within 90 days.

December 7, 2020                    Respectfully submitted,

                                   */s/ Jonathan G. Hardin*
                                   Jonathan G. Hardin
                                   PERKINS COIE LLP
                                   700 13th Street, N.W., Suite 800
                                   Washington, D.C. 20005
                                   Phone: 202-654-6200
                                   JHardin@perkinscoie.com

                                   **Attorney for Wynnewood**

- 42 -

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. As measured by the word-processing system used to prepare this brief, the brief contains 9,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and complies with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a 14 point proportionally spaced roman-style typeface (Century Schoolbook).

Date:  December 7, 2020          */s/ Jonathan G. Hardin*
                                Jonathan G. Hardin

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 7, 2020          */s/ Jonathan G. Hardin*
                                Jonathan G. Hardin

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## No. 19-1196

## September Term, 2021

**EPA-08/09/2019 Decision**

**Filed On: December 8, 2021**

Sinclair Wyoming Refining Company,

> Petitioner

> v.

Environmental Protection Agency,

> Respondent

------------------------------

Consolidated with 19-1197

_____

## No. 19-1216

Kern Oil & Refining Co.,

> Petitioner

> v.

Environmental Protection Agency,

> Respondent

------------------------------

Producers of Renewables United for Integrity
Truth and Transparency,
> Intervenor

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 19-1196**                              **September Term, 2021**

_____

**No. 19-1220**

Renewable Fuels Association, et al.,

       Petitioners

    v.

Environmental Protection Agency,

       Respondent

------------------------------

Alon Refining Krotz Springs, Inc., et al.,
       Intervenors

_____

**No. 20-1099**

Wynnewood Refining Company, LLC,

       Petitioner

    v.

Environmental Protection Agency,

       Respondent

------------------------------

Producers of Renewables United for Integrity
Truth and Transparency,
       Intervenor

Page 2

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 19-1196**                         **September Term, 2021**

**BEFORE:**    Millett, Wilkins, and Jackson, Circuit Judges

### O R D E R

Upon consideration of EPA's motion for voluntary remand without vacatur, the responses thereto, and the reply, it is

**ORDERED** that the motion for voluntary remand without vacatur be granted and that EPA issue new decisions concerning the matters at issue in these cases within 90 days of the date of this order or within 90 days of EPA's receipt of any additional information needed to issue such decisions, but in any event no more than 120 days from the date of this order. Regardless of whether the Tenth Circuit's alternative holdings in Renewable Fuels Association v. United States EPA, 948 F.3d 1206 (10th Cir. 2020), survive following the Supreme Court's decision in HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Association, 141 S. Ct. 2172 (2021), remand is warranted so that EPA may reconsider its positions in light of the principles behind those holdings and consider providing a more robust explanation for the decisions that remain undisturbed after reconsideration. See, e.g., Utility Solid Waste Activities Group v. EPA, 901 F.3d 414, 436 (D.C. Cir. 2018) (per curiam); Ethyl Corp. v. Browner, 989 F.2d 522, 534 (D.C. Cir. 1993). Vacatur is not warranted because it would be unduly disruptive and EPA may be able to explain its rationale on remand. See Allied-Signal, Inc. v. United States Nuclear Regulatory Commission, 988 F.2d 146, 150-51 (D.C. Cir. 1993). However, a time limit is warranted in light of the 90-day statutory deadline and EPA's delay. See 42 U.S.C. § 7545(o)(9)(B)(iii); Kern Oil & Refining Co. v. United States EPA, 840 Fed. Appx. 188, 188 (9th Cir. 2021); Clean Wisconsin v. EPA, 964 F.3d 1145, 1175-76 (D.C. Cir. 2020) (per curiam).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandates in these cases until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

       JA000718