ORAL ARGUMENT NOT YET SCHEDULED

No. 22-1074 (and consolidated cases)

U.S. COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

Sinclair Wyoming Refining Company LLC, et al.,
*Petitioners*,

v.

United States Environmental Protection Agency,
*Respondent*.

_____

On Petition for Review from the U.S. Environmental Protection Agency

_____

**EPA's Answering Brief**

_____

Todd Kim
Assistant Attorney General

Benjamin Grillot
U.S. Department of Justice
Environment & Natural Resources Div.
*Of counsel*                          Environmental Defense Section
Meredith G. Miller                    P.O. Box 7611
U.S. Environmental Protection         Washington, D.C. 20044
Agency                                202.305.0303
Office of General Counsel             benjamin.grillot@usdoj.gov
Washington, D.C.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

As required by D.C. Circuit Rule 28(a)(1), the Environmental Protection Agency ("EPA") certifies:

### A. Parties and amici

All parties appearing here are listed in petitioners opening briefs.

### B. Rulings under review

Under review are the following EPA final actions (collectively, the "Compliance Actions"):

- *April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries*, EPA-420-R-22-006, 87 Fed. Reg. 24294 (Apr. 25, 2022) ("April 2022 Compliance Action").

- *June 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries*, EPA-420-R-22-012, 87 Fed. Reg. 34872 (June 8, 2022) ("June 2022 Compliance Action").

### C. Related cases

This petition is related to challenges to the same EPA Compliance Actions in the Fifth Circuit in *Wynnewood Refining Company, LLC v. EPA*, No. 22-60357 (consol. with 22-60424). This petition is also related to Sinclair's challenge to alleged EPA agency action in the Tenth Circuit in *Sinclair Wyoming Refining Company LLC v. EPA*, No. 22-9530.

This petition is also related to challenges to other related EPA actions in this Court, namely *Sinclair Wyoming Refining Company LLC v. EPA* (No. 22-1073 and consolidated cases). This Court has ordered that oral argument for those consolidated cases challenging EPA's April and June 2022 Denial Actions— companion actions to the Compliance Actions challenged here—and this case shall be held on the same day before the same panel. Order, *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1073, Doc. #1996878 (Apr. 27, 2023).

This petition is related to challenges to other related EPA actions in other Courts of Appeals, namely *Hunt Refin. Co. v. EPA*, Nos. 22-1167 (consol.) (11th Cir.), and *Calumet Shreveport Refin. et al. v. EPA*, No. 22-60266 (consol.) (5th Cir.).

*/s/ Benjamin Grillot*
Benjamin Grillot
Counsel for EPA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... vii

GLOSSARY ..........................................................................................xiv

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION........................................................3

ISSUES PRESENTED ............................................................................5

STATUTES AND REGULATIONS.......................................................5

STATEMENT OF THE CASE................................................................6

I.      STATUTORY AND REGULATORY BACKGROUND ..............................6

     A.    The Renewable Fuel Standard ("RFS") Program ..................6

     B.    Renewable Identification Numbers ("RINs") ......................7

     C.    The Temporary Exemption for Small Refineries.................9

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................10

     A.    2018 RFS Obligations and the Initial 2018 Decision .........10

     B.    Sinclair's Briefly Held a Small Refinery Exemption in 2021 ...........13

     C.    The *HollyFrontier* Decision in the Supreme Court and Remand of Sinclair's and Wynnewood's 2018 Small Refinery Petitions ........16

     D.    EPA's New Approach to Evaluating Small Refinery Exemption Petitions and the Resulting April 2022 and June 2022 Small Refinery Exemption Denial Actions ....................................17

     E.    April 2022 Compliance Action ...........................................19

     F.    June 2022 Compliance Action ............................................21

iv

G.    Ongoing Challenges to the Denial Actions and Compliance Actions...................................................................................22

STANDARD OF REVIEW .............................................................24

SUMMARY OF ARGUMENT .........................................................26

ARGUMENT ............................................................................ 28

I.    EPA has statutory authority to manage the RFS program, including by granting reasonable compliance relief as it did in the Compliance Actions. 28

A.    Congress must implement the RFS program and may do so through adjudication. .......................................................................30

B.    EPA's alternative compliance demonstration approach is reasonable because it preserves RFS program integrity.........................................33

C.    Growth Energy's arguments that EPA exceeded its authority do not survive scrutiny. ................................................................39

1. The Denial Actions are not retroactive, and the Compliance Actions are not intended to relieve retroactive effects. ...................................39

2. EPA reasonably considered relevant RFS caselaw when crafting the Compliance Actions. .................................................................41

3. Even if the relief from the Compliance Actions applies retroactively, such relief is permissible because it is grounded in equitable considerations. ....................................................................43

4. The Compliance Actions are not designed to allow EPA to "avoid correcting legal errors."......................................................46

5. The Compliance Actions are limited to unique circumstances that are unlikely to recur.........................................................47

6. The Compliance Actions protect the integrity of the RFS program and are reasonable. ...........................................................49

II.    Wynnewood and Sinclair are not entitled to further relief under the April 2022 Compliance Action. .................................................................53

    A.    The April 2022 Compliance Action's targeted relief was reasonable in view of the ramifications of the April 2022 Denial Action. ...............55

    B.    Wynnewood is not entitled to additional compliance relief. ..............58

    C.    Sinclair is not entitled to any compliance relief..................................59

    D.    EPA considered all important aspects of the problem when issuing the April 2022 Compliance Action. ..........................................................63

    E.    Wynnewood and Sinclair's reliance on *PRUITT* and *Kern Oil* is misplaced. ...........................................................................................65

III.   If this Court finds the Compliance Actions are arbitrary and capricious, the proper remedy is an ordinary remand............................................................68

CONCLUSION ....................................................................................................68

## TABLE OF AUTHORITIES

*Allied Local & Reg'l Mfrs. Caucus v. EPA*,
    215 F.3d 61 (D.C. Cir. 2000)...............................................................24

*\*Ams. for Clean Energy v. EPA*,
    864 F.3d 691 (D.C. Cir. 2017)..................................................... 41, 42

*Bluewater Network v. EPA*,
    370 F.3d 1 (D.C. Cir. 2004)................................................................25

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ...........................................................................43

*\*Cassell v. FCC*,
    154 F.3d 478 (D.C. Cir. 1998)..................................................... 27, 43

*Catawba Cnty. v. EPA*,
    571 F.3d 20 (D.C. Cir. 2009)..............................................................25

*Chevron U.S.A, Inc.. v. NRDC*,
    467 U.S. 837 (1984) ...........................................................................25

*\*Clark-Cowlitz Joint Operating Agency v. FERC*,
    826 F.2d 1074 (D.C. Cir. 1987)..........................................................43

*Conference Grp., LLC v. FCC*,
    720 F.3d 957 (D.C. Cir. 2013).............................................................32

*Council for Urological Interests v. Burwell*,
    790 F.3d 212 (D.C. Cir. 2015).............................................................32

*Dalton Trucking, Inc. v. EPA*,
    808 F.3d 875 (D.C. Cir. 2015)...............................................................4

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
    141 S. Ct. 2172 (2021) .................................................................. vi, 16

*Authorities upon which we chiefly rely are marked with asterisks.

vii

*INS v. Ventura*,
    537 U.S. 12 (2002) ...............................................................68

*Kern Oil & Refin. Co. v. EPA*,
    No. 21-71246, 2022 WL 3369528 (9th Cir. Aug. 16, 2022).................. 66, 67, 68

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ..............................................................39

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ..............................................................24

*Midwest Ozone Grp. v. EPA*,
    61 F.4th 187 (D.C. Cir. 2023) .................................................... 24, 49

*Miss. Comm'n on Env't Quality v. EPA*,
    790 F.3d 138 (D.C. Cir. 2015)....................................................24

*Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*,
    498 U.S. 211 (1991) ..............................................................56

*\*Monroe Energy, LLC v. EPA*,
    750 F.3d 909 (D.C. Cir. 2014).................................................... 40, 41

*Motion Picture Ass'n of Am. Inc. v. 571*,
    309 F.3d 796 (D.C. Cir. 2002)....................................................25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................24

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*,
    891 F.3d 1041 (D.C. Cir. 2018)....................................................4

*Nat'l Petrochemical & Refiners Ass'n v. EPA*,
    630 F.3d 145 (D.C. Cir. 2010).................................................... 39, 41

*Neustar, Inc. v. FCC*,
    857 F.3d 886 (D.C. Cir. 2017)....................................................32

*Niagara Mohawk Power Corp. v. Fed. Power Comm'n*,
    379 F.2d 153 (D.C. Cir. 1967)...................................................................32

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974) ..................................................................................32

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969) ..................................................................................32

*POM Wonderful, LLC v. FTC*,
    777 F.3d 478 (D.C. Cir. 2015)...................................................................32

*Producers of Renewables United for Integrity Truth & Transparency v. EPA*
    *("PRUITT")*,
    No. 19-9532, 2022 WL 538185 (10th Cir. Feb. 23, 2022)...................65

*Renewable Fuels Ass'n v. EPA*,
    948 F.3d 1206 (10th Cir. 2020) ............................................... vii, 11, 12

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87 (1995) ....................................................................................31

*Shays v. FEC*,
    528 F.3d 914 (D.C. Cir. 2008)...................................................................31

*Sinclair Wyo. Refin. Co. v. EPA*,
    887 F.3d 986 (10th Cir. 2017) ..................................................................65

*Taylor v. FAA*,
    895 F.3d 56 (D.C. Cir. 2018).....................................................................56

**Statutes**

42 U.S.C. § 7545(*o*) ...........................................................................................6

42 U.S.C. § 7545(*o*)(1)(k)...................................................................................9

42 U.S.C. § 7545(*o*)(2)(A)...............................................................................30

42 U.S.C. § 7545(*o*)(2)(A)(i) ............................................................ 6, 30, 38

42 U.S.C. § 7545(*o*)(2)(A)(iii) ....................................................................6

42 U.S.C. § 7545(*o*)(2)(A)(iii)(I) ...............................................................30

42 U.S.C. § 7545(*o*)(2)(B) ...........................................................................6

42 U.S.C. § 7545(*o*)(2)(B)(ii) ......................................................................6

42 U.S.C. § 7545(*o*)(2)(B)(i)(I)-(IV) ...........................................................6

42 U.S.C. § 7545(*o*)(3)(B)(i) .......................................................................6

42 U.S.C. § 7545(*o*)(3)(B)(ii)(I) .................................................................40

42 U.S.C. § 7545(*o*)(5) ...........................................................................8, 30

42 U.S.C. § 7545(*o*)(5)(D) .......................................................................7, 8

42 U.S.C. § 7545(*o*)(7) ................................................................................6

42 U.S.C. § 7545(*o*)(7)(A) ..........................................................................6

42 U.S.C. § 7545(*o*)(7)(D)-(F) ....................................................................6

42 U.S.C. § 7545(*o*)(9) ................................................................................9

42 U.S.C. § 7545(*o*)(9)(A)(i) .......................................................................9

42 U.S.C. § 7545(*o*)(9)(A)(ii)(I) ..................................................................9

42 U.S.C. § 7545(*o*)(9)(A)(ii)(II) .................................................................9

42 U.S.C. § 7545(*o*)(9)(B) .....................................................................12, 17

42 U.S.C. § 7545(*o*)(9)(B)(i) ..................................................................9, 12

42 U.S.C. § 7545(*o*)(9)(B)(ii) ......................................................................9

42 U.S.C. § 7607(b)(1)........................................................................3, 4

42 U.S.C. § 7607(d)(9)(A) ................................................................ 24, 25

Energy Policy Act of 2005,
  Pub. L. No. 109-58, 119 Stat. 594 ................................................6

Energy Independence and Security Act of 2007,
  Pub. L. No. 110-140, 121 Stat. 1492 ................................................6

**Rules**

Fed. R. App. P. 32(a)(5) & (6) ......................................................69

Fed. R. App. P. 32(a)(7)(B) ......................................................69

**Code of Federal Regulations**

40 C.F.R. part 80, subpart M ......................................................30

40 C.F.R. § 80.1163 ......................................................37

40 C.F.R. § 80.1405 ......................................................20

40 C.F.R. § 80.1406 ...................................................... 6, 40

40 C.F.R. § 80.1425-80.1429......................................................7

40 C.F.R. § 80.1426(a) ......................................................7

40 C.F.R. § 80.1426(e) ......................................................7

40 C.F.R. § 80.1427(a)(1) ......................................................7, 8

40 C.F.R. § 80.1427(a)(5) ......................................................8

40 C.F.R. § 80.1427(a)(6) ......................................................7

40 C.F.R. § 80.1427(b) ...................................................... 8, 34

40 C.F.R. § 80.1428(c)..................................................................7, 8

40 C.F.R. § 80.1429(b) .....................................................................7

40 C.F.R. § 80.1431 ........................................................................31

40 C.F.R. § 80.1431(a) ....................................................................7

40 C.F.R. § 80.1434 ........................................................................31

40 C.F.R. § 80.1434(a)(11) .............................................................34

40 C.F.R. § 80.1435 ........................................................................31

40 C.F.R. § 80.1451 ........................................................................20

40 C.F.R. § 80.1451(f)(1)(i)..............................................................7

40 C.F.R. § 80.1451(f)(1)(i)(A)(1) ...................................................7

**Federal Registers**

72 Fed. Reg. 23900 (May 1, 2007) ...................................................8

75 Fed. Reg. 14670 (Mar. 26, 2010) ................................................8

83 Fed. Reg. 63,704 (Dec. 11, 2018) ...............................................8

86 Fed. Reg. 70999 (Dec. 14, 2021) .......................................... vii, 17

86 Fed. Reg. 72436 (Dec. 21, 2021) ...............................................64

87 Fed. Reg. 5696 (Feb. 2, 2022) .............................................. 33, 52

87 Fed. Reg. 24294 (Apr. 25, 2022) ...................................... ii, vi, 4, 5

87 Fed. Reg. 24300 (Apr. 25, 2022) ................................................. vi

87 Fed. Reg. 34872 (June 8, 2022) ................................................................ ii, vii, 4

87 Fed. Reg. 34873 (June 8, 2022) ........................................................................ vii

87 Fed. Reg. 39600 (July 1, 2022) ............................................................. 31, 47, 50

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| 2021 Decision Memorandum | 2021 Small Refinery Exemption Decision Memorandum signed by then-EPA Administrator Andrew Wheeler |
| APA | Administrative Procedure Act |
| April 2022 Compliance Action | *April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries*, 87 Fed. Reg. 24294 (Apr. 25, 2022) |
| April 2022 Denial Action | *April 2022 Denial of Petitions for RFS Small Refinery Exemptions*, 87 Fed. Reg. 24300 (Apr. 25, 2022) |
| CAA | Clean Air Act |
| Compliance Actions | April 2022 Compliance Action and June 2022 Compliance Action (collectively) |
| Denial Actions | April 2022 Denial Action and June 2022 Denial Action (collectively) |
| DOE | U.S. Department of Energy |
| EPA or "the Agency" | Respondent U.S. Environmental Protection Agency |
| Exemption | Small Refinery Exemption |
| Growth Energy | Petitioner Growth Energy |
| *HollyFrontier* | *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n,* 141 S. Ct. 2172 (2021) |

| | |
|---|---|
| Initial 2018 Decision | "Decision on 2018 Small Refinery Exemption Petitions," Anne Idsal, Acting Assistant Administrator, Office of Air and Radiation, August 9, 2019 |
| JA | Petitioners' Joint Appendix |
| June 2022 Compliance Action | *June 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries*, 87 Fed. Reg. 34872 (June 8, 2022) |
| June 2022 Denial Action | *June 2022 Denial of Petitions for RFS Small Refinery Exemptions*, 87 Fed. Reg. 34873 (June 8, 2022) |
| Proposed SRE Denial | *Proposed RFS Small Refinery Exemption Decision,* EPA-420-D-21-00; 86 Fed. Reg. 70999 (Dec. 14, 2021) |
| *RFA* | *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206 (10th Cir. 2020) |
| RFS | Renewable Fuel Standard |
| RINs | Renewable Identification Numbers |
| Sinclair | Petitioner Sinclair Wyoming Refining Company, LLC |
| Wynnewood | Petitioner Wynnewood Refining Company, LLC |

## INTRODUCTION

The United States Environmental Protection Agency ("EPA") administers the Clean Air Act's Renewable Fuel Standard ("RFS") program.  Under this program, "obligated parties," *e.g.*, refiners and importers of transportation fuel, must ensure that adequate quantities of certain renewable fuels are introduced into the U.S. transportation-fuel market.  A small refinery may petition EPA for an exemption from its RFS obligation for a particular RFS compliance year for the reason of disproportionate economic hardship.

On April 7, 2022, EPA took two separate agency actions related to the 2018 RFS compliance year: an action denying 36 small refinery exemption petitions ("April 2022 Denial Action"), and a companion action providing prospective compliance relief—based on unique and extenuating circumstances—to 31 of those 36 refineries ("April 2022 Compliance Action").  Similarly, on June 3, 2022, EPA denied, among others, three small refinery exemption petitions submitted by three refineries for the 2016 and 2017 RFS compliance years ("June 2022 Denial Action") and, in a companion action, granted prospective compliance relief to the three refineries for those years ("June 2022 Compliance Action").  These suits seek review of the April 2022 Compliance Action and the June 2022 Compliance Action (collectively, "the Compliance Actions").

In taking the Compliance Actions, EPA reasonably addressed a unique and complex problem in a way that allowed EPA to fulfill its Congressional mandate to ensure the continuing function of the RFS program. This problem arose from a set of unusual circumstances. Each of the small refineries to which the Compliance Actions apply was initially granted the exemptions it had requested for 2016, 2017, and 2018, but then, years later, those exemption grants were remanded to EPA following litigation and a set of related intervening court decisions clarifying the appropriate legal standards under the CAA and the RFS small refinery exemption programs. Ultimately, EPA denied 39 small refinery exemptions for 2016–2018 with the Denial Actions. However, by that time in 2022, limited available compliance credits ("RINs") made it impossible for those refineries with outstanding compliance obligations for 2016–2018 to meet them, at least without undermining the stability of the entire RFS program. EPA's RFS implementing regulations understandably do not cover this peculiar situation; therefore, in a reasonable exercise of its adjudicatory authority, EPA preserved the integrity of the RFS program by providing limited, prospective relief to the affected small refineries.

Two sets of petitioners contest the Compliance Actions. Growth Energy, a trade association that represents the biofuels production industry, claims the April and June 2022 Compliance Actions exceed EPA's authority and are not well-

reasoned.  Wynnewood and Sinclair, two small refineries that were denied exemptions by the April 2022 Denial Action, support the Compliance Actions generally but contend the relief provided does not go far enough.  Both sets of challenges lack merit.

First, EPA acted well within its authority to provide an alternative compliance option to small refineries—allowing them to demonstrate compliance with their reinstated 2016–2018 RFS obligations without retiring additional RINs—where its regulations do not specifically anticipate or address the peculiar circumstances presented.  Second, the two Petitioner refineries identify no defect with the April 2022 Compliance Action as a companion to the April 2022 Denial Action.  Moreover, the small refinery Petitioners' arguments reveal that their real complaint is with the April 2022 Denial Action, which they are challenging in parallel litigation, but the merits of that action are beyond the scope of this case.

For these reasons, all three petitions for review should be denied.

## STATEMENT OF JURISDICTION

Under the Clean Air Act, federal courts of appeals have jurisdiction to review "final action" taken by the EPA Administrator if a petition for review is filed within 60 days of notice of the action appearing in the Federal Register.  42 U.S.C. § 7607(b)(1).

The parties here timely filed their petitions for review of the *April 2022 Alternative Compliance Demonstration Approach for Certain Small Refineries*, EPA-420-R-22-006; 87 Fed. Reg. 24294 (Apr. 25, 2022) ("April 2022 Compliance Action"), and the *June 2022 Alternative Compliance Demonstration Approach for Certain Small Refineries*, EPA-420-R-22-012, 87 Fed. Reg. 34872 (June 8, 2022) ("June 2022 Compliance Action") (collectively, the "Compliance Actions").

Venue is proper in this Court because the Compliance Actions are "nationally applicable" or, in the alternative, locally or regionally applicable but based on a determination of "nationwide scope or effect" made and published by EPA. 42 U.S.C. § 7607(b)(1). *See also Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 877 (D.C. Cir. 2015).

The April 2022 Compliance Action, which establishes a uniform compliance approach for "31 small refineries across the country and applies to small refineries located within 16 states in 7 of the 10 EPA regions and in 7 different Federal judicial circuits," is "nationally applicable." April 2022 Compliance Action at 18; 87 Fed. Reg. at 24294–95; JA.VI __. *See also Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 891 F.3d 1041, 1054 (D.C. Cir. 2018) (Silberman, J., concurring) ("the [EPA] Administrator, as the national regulator, is in a much better position than a regional circuit court to evaluate the nationwide impact of her action."). Even if considered "locally or regionally applicable," the Administrator made and

-4-

published a finding that the April 2022 Compliance Action is based on a

determination of "nationwide scope or effect," because compliance flexibility was

necessary to ensure the RIN bank remained functional, so as to maintain the

integrity of the nationwide RFS program.  *See* April 2022 Compliance Action at

13–15, 18; JA.VI __, 87 Fed. Reg. 24294 (Apr. 25, 2022).

## ISSUES PRESENTED

1.  Whether EPA's provision of prospective compliance relief to certain small

    refineries for the 2016–2018 RFS compliance years due to unique and

    extenuating circumstances and concerns about the viability of the RFS

    program as a whole was both within EPA's authority and reasonable.

2.  Whether EPA's decision to provide no *additional* compliance relief or

    compensation to Wynnewood or Sinclair for the 2018 RFS compliance year

    was reasonable, where EPA in a companion action denied those small

    refineries' petitions for exemption from their 2018 RFS compliance

    obligations.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are in the addendum to this brief.

# STATEMENT OF THE CASE

## III.    STATUTORY AND REGULATORY BACKGROUND

### A.    The Renewable Fuel Standard ("RFS") Program

In 2005 and 2007, Congress amended the CAA to establish the RFS program, now codified at 42 U.S.C. § 7545(*o*), seeking, among other purposes, to "increase the production of clean renewable fuels." Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492; *see also* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594.  The statute requires increasing annual "applicable volumes" of four categories of renewable fuel for the transportation sector.  42 U.S.C. § 7545(*o*)(2)(B)(i)(I)–(IV).  Congress prescribed specified applicable volumes for certain renewable fuels through 2022; EPA sets annual volume requirements after that.  *Id.* § 7545(*o*)(2)(B)(ii), (*o*)(7).

Congress also directed EPA to establish a compliance program and annual percentage standards to ensure that the applicable volumes are sold each year.  *Id.* § 7545(*o*)(2)(A)(i), (iii), (2)(B), (3)(B)(i), (7)(A), (7)(D)–(F).  EPA's implementing regulations identify refineries and importers of gasoline and diesel fuel as obligated parties.  40 C.F.R. § 80.1406.  Obligated parties apply the percentage standards to their annual production or importation of gasoline and diesel to calculate their individual renewable volume obligation for each renewable fuel.

EPA's regulations also set the RFS annual compliance date.  *See id.* § 80.1451(f)(1)(i).  The compliance dates have always fallen after the calendar year covered by the applicable annual rule.  *See id.* § 80.1451(f)(1)(i)(A)(1).

### B.    Renewable Identification Numbers ("RINs")

To implement Congress's requirement for a credit-trading program, EPA established a system of Renewable Identification Numbers ("RINs").  Producers and importers of renewable fuels generate RINs for each gallon of renewable fuel they produce or import for use in the United States.  *Id.* § 80.1426(a).  The producers and importers "assign" the RINs to batches of renewable fuel.  *Id.* § 80.1426(e).  RINs may be "separated" from those batches only by an obligated party or an entity that blends the renewable fuel into conventional fuel.  *Id.* § 80.1429(b).  Once separated, RINs may be kept for compliance or sold.  *Id.* §§ 80.1425–80.1429.

A RIN may be used for compliance only for the calendar year in which it was generated or the following calendar year.  *Id.* §§ 80.1427(a)(6), 80.1428(c), 80.1431(a).  Obligated parties meet their renewable volume obligations by "retiring" RINs in annual compliance demonstrations.  *Id.* § 80.1427(a)(1).  Parties that cannot comply may carry forward a compliance deficit to the next year.  42 U.S.C. § 7545(*o*)(5)(D).  The RIN system gives obligated parties flexibility in demonstrating compliance by allowing them to acquire RINs in several different

ways, including by purchasing and blending renewable fuels to generate RINs themselves or by purchasing RINs reflecting renewable fuel volumes blended by other entities.  72 Fed. Reg. 23900, 23942 (May 1, 2007); *see also* 75 Fed. Reg. 14670, 14722–23 (Mar. 26, 2010).

Obligated parties may carry a compliance deficit forward to the next year, which must then be satisfied together with the next year's compliance obligation. 42 U.S.C. § 7545(*o*)(5)(D); 40 C.F.R. § 80.1427(b).  Parties that acquire excess RINs in one year may sell those RINs, or they can "carry over" the RINs and use them to meet up to 20% of their compliance obligations the following year.  42 U.S.C. § 7545(*o*)(5); 40 C.F.R. §§ 80.1427(a)(1), (a)(5) & 80.1428(c).  The sum of all RINs carried over from a prior year and held by obligated parties is known as the carryover RIN "bank."  EPA has long regarded carryover RINs to be extremely important to provide obligated parties with compliance flexibility in the face of substantial uncertainties in the transportation fuel marketplace, and to ensure the liquid and well-functioning RIN market upon which the success of the RFS compliance program depends.  *See generally*, 83 Fed. Reg. 63704, 708–10 (Dec. 11, 2018) (noting the role that carryover RINs play in facilitating compliance and the function of the RFS program).

### C.    The Temporary Exemption for Small Refineries

Congress created a three-tiered, temporary exemption from the RFS program for certain obligated parties that qualify as "small refineries."  42 U.S.C. § 7545(*o*)(9); *see also id.* § 7545(*o*)(1)(k).  First, Congress granted all small refineries a blanket exemption from the requirements of the RFS program until 2011.  *Id.* § 7545(*o*)(9)(A)(i).

Second, Congress directed the U.S. Department of Energy ("DOE") to study "whether compliance with the requirements of [the RFS program] would impose a disproportionate economic hardship on small refineries."  *Id.* § 7545(*o*)(9)(A)(ii)(I).  For any small refinery that DOE determined "would be subject to disproportionate economic hardship if required to comply," Congress directed EPA to extend the exemption for two additional years.  *Id.* § 7545(*o*)(9)(A)(ii)(II).

Third, Congress provided that a small refinery "may at any time petition [EPA] for an extension [beyond 2011] of the exemption under subparagraph (A) for the reason of disproportionate economic hardship."  *Id.* § 7545(*o*)(9)(B)(i).  In evaluating such a petition, EPA, "in consultation with" DOE, "shall consider the findings of [DOE's study] and other economic factors."  *Id.* § 7545(*o*)(9)(B)(ii).

## IV.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    2018 RFS Obligations and the Initial 2018 Decision

Many small refineries located across the United States, including Wynnewood and Sinclair, petitioned EPA for an exemption from their individual 2018 RFS obligations.  Wynnewood submitted its 2018 small refinery exemption petition in September 2018, and Sinclair submitted its petition in December 2018. Subsequently—before EPA had acted on the petitions—both Wynnewood and Sinclair retired RINs by the end of March 2019 to comply with their 2018 RFS obligations.[1]

On August 9, 2019, EPA took action on 36 RFS exemption petitions for the 2018 RFS compliance year in a two-page decision, granting 31 of the petitions and denying five ("Initial 2018 Decision"[2]).  JA.V1__.  Wynnewood's exemption petition was granted, while Sinclair's was denied.  After EPA issued the Initial 2018 Decision, it then worked with the 31 small refineries given grants to unretire and return to them any unexpired RINs they had previously retired to demonstrate

---

[1] In lieu of retiring RINs to satisfy their RFS obligations while their small refinery exemption petitions were still pending, Wynnewood and Sinclair could have instead carried forward deficits to demonstrate compliance with their individual RFS obligations.  However, each made the business decision to retire the RINs without knowing whether an exemption was forthcoming.

[2] EPA calls this action "initial" because it was later remanded to EPA for reconsideration, as discussed *infra* in this section.

-10-

compliance with their 2018 RFS obligations.  EPA did not return to any of these

small refineries 2017 RINs they had used for compliance with the 2018 standards

because those RINs were expired.  Nor did EPA return any RINs to Sinclair after

denying its 2018 small refinery exemption petition.

Numerous petitions for review were filed challenging EPA's Initial 2018

Decision.  Among these, renewable fuel producers filed a petition for review in this

Court challenging the 31 exemptions that were granted.  *See Renewable Fuels*

*Ass'n. v. EPA*, No. 19-1220 (D.C. Cir. Oct. 22, 2019); Non-binding Statement of

Issues, *id.*, Doc. 1856933 (D.C. Cir. Aug. 17, 2020).  Wynnewood and Sinclair

also were among numerous small refinery petitioners contesting the actions taken

on their respective petitions.  *See generally*, *Wynnewood Refin. Co. v. EPA*, No.

19-9589 (10th Cir. Oct. 22, 2019); *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-9562

(10th Cir. Aug. 22, 2019); *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-1196 (and

consol. cases) (D.C. Cir. Sept. 20, 2019).[3]

In January 2020, a few months after all these petitions were filed, the Tenth

Circuit issued *Renewable Fuels Association v. EPA*, 948 F.3d 1206 ("*RFA*"),

which vacated and remanded three of EPA's 2016 and 2017 exemption grants,

---

[3] On March 26, 2020, the Tenth Circuit granted EPA's unopposed motion to
transfer Wynnewood's challenge to this Court.  Order, *Wynnewood Refin. Co. v.
EPA*, No. 19-9589, Doc. 10728488 (10th Cir. Mar. 26, 2020).  The case was then
consolidated with other cases challenging the Initial 2018 Decision.

including Wynnewood's 2017 exemption petition that is now at issue in this

case.  The Tenth Circuit held that:  (1) to be eligible for an "extension" of the

exemption under 42 U.S.C. § 7545(*o*)(9)(B)(i), a small refinery needed to have

maintained a continuous, uninterrupted exemption, which the small refineries at

issue had not; (2) EPA's prior approach of finding "disproportionate economic

hardship" for reasons other than RFS compliance was "outside the scope of the

EPA's statutory authority" in § 7545(*o*)(9)(B); and (3) EPA "failed to consider an

important aspect of the problem" when it "did not address the applicability of the

[RIN cost] pass-through principle *at all*" when evaluating the exemption

petitions.  *RFA*, 948 F.3d at 1244–57 (emphasis in original).

Small refinery intervenors appealed just the "extension" holding to the

Supreme Court, which granted a writ of certiorari in January 2021.  *HollyFrontier*

*Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, No. 20-472.  Meanwhile, the

numerous petitions for review challenging the Initial 2018 Decision were held in

abeyance.  Order, *Wynnewood Refin. Co. v. EPA*, No. 20-1099, Doc. 1885774

(D.C. Cir. Feb. 17, 2021); Order, *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-9562

Doc. 010110276184, No. 19-9562 (10th Cir. Dec. 17, 2019); Order, *Sinclair Wyo.*

*Refin. Co. v. EPA*, No. 19-1196, Doc. 1885774 (and consol. cases) (D.C. Cir. Feb.

17, 2021).

## B.     Sinclair Briefly Held a Small Refinery Exemption in 2021

In January 2021, then-EPA Administrator Andrew Wheeler issued a decision that, in part, granted Sinclair's 2018 small refinery exemption petition, thereby reversing the Initial 2018 Decision only with respect to that petition.[4]  JA V1.R31 ("2021 Decision Memorandum").  The existence of the 2021 Decision Memorandum—which relied upon information that was considered confidential business information at the time—was made public when EPA updated its RFS exempted volume data on its website, revealing that new exemptions had been issued to undisclosed refineries.

This grant of small refinery exemptions to undisclosed small refineries was immediately challenged by the Renewable Fuels Association (RFA) in this Court. *Renewable Fuels Ass'n v. EPA*, No. 21-1032 (D.C. Cir.) (filed Jan. 19, 2021).  The Court granted a temporary administrative stay of the 2021 Decision Memorandum on January 21, 2021.  *Id.*, Doc. 1880862.

Sinclair intervened in the *RFA* D.C. Circuit case to defend its exemptions. *Id.*, Docs. 1881891, 1881922.  In response to the Renewable Fuels Association's motion for an emergency stay, EPA did not oppose the relief that RFA sought, but took no position on the merits of RFA's underlying arguments.  *Id.*, Doc. 1884716.

---

[4] The 2021 Decision Memorandum also granted two other Sinclair exemption petitions for refineries or compliance years that are not at issue here.

On February 20, 2021, this Court dissolved its temporary administrative stay of the 2021 Decision Memorandum and placed the Renewable Fuels Association's petition for review in abeyance. *Id.*, Doc. 1886353.

Upon learning that it was Sinclair's small refineries that had received the new exemptions, the Renewable Fuels Association filed a new petition in the Tenth Circuit in February 2021 along with an emergency motion for stay pending appeal and a request for that court to enter an administrative stay of the 2021 Decision Memorandum pending consideration of the emergency motion. *Renewable Fuels Ass'n v. EPA*, No. 21-9518 (10th Cir.), Doc. 10805953 (Petition for Review); Doc. 10806209 (Motion for Stay). Sinclair intervened in that case the next day to defend the grant of its three petitions, including the Sinclair Wyoming 2018 small refinery petition at issue here. *Id.*, Doc. 010110477085.

The Tenth Circuit entered a temporary stay of the 2021 Decision Memorandum on February 10, 2021. *Id.*, Doc. 010110478139. Again, in its brief responding to the emergency motion for stay pending appeal, EPA did not oppose the relief that the Renewable Fuels Association sought, but took no position on the merits of the petitioner's underlying arguments. *Id.*, Doc. 010110479132. On March 5, 2021, the Tenth Circuit vacated the temporary administrative stay and placed the petition in abeyance pending the disposition of *HollyFrontier* in the Supreme Court. *Id.*, Doc. 010110490133.

On March 15, 2021, while the *RFA* Tenth Circuit and D.C. Circuit cases were in abeyance, Sinclair filed its own petition for review of the 2021 Decision Memorandum in the Tenth Circuit. *Sinclair Wyo. Refin. Co. v. EPA*, No. 21-9528 (10th Cir. Mar. 15, 2021). Sinclair sought return of the RINs it had retired to comply with its 2018 RFS obligations. In response, on April 30, 2021, EPA moved for vacatur and voluntary remand of the 2021 Decision Memorandum, explaining that in issuing that decision, EPA had failed to meaningfully analyze and apply determinative aspects of the Tenth Circuit's *RFA* holding when EPA had decided the Sinclair refineries qualified to receive small refinery exemptions. *Id.*, Doc. 010110515928. In its Tenth Circuit motion, EPA further explained that "there is substantial uncertainty whether, if EPA [had] performed such an analysis, it could grant the petitions submitted by Sinclair." *Id.* at 2. On May 18, 2021, Sinclair filed a response not opposing EPA's motion for vacatur and voluntary remand. *Id.*, Doc. 010110524266.

The following day, the Tenth Circuit terminated Sinclair's case on its merits, granted EPA's unopposed motion to vacate and remand the 2021 Decision Memorandum, and remanded to EPA the three Sinclair petitions that were the subject of the 2021 Memorandum Decision, including the 2018 Sinclair Wyoming petition that is the focus of the instant litigation.

-15-

Therefore, as of May 19, 2021, Sinclair no longer held an exemption from the Sinclair Wyoming small refinery's 2018 RFS obligations, because its petition was denied by the Initial 2018 Decision that was once again in effect after the Tenth Circuit vacated the 2021 Memorandum Decision. *Id.*, Doc. 010110524643.

### C.    The Supreme Court's *HollyFrontier* Decision and EPA's Remand of Sinclair's and Wynnewood's 2018 Small Refinery Petitions

In June 2021, the Supreme Court reversed the single holding from the Tenth Circuit's *RFA* decision on which certiorari was granted. The Supreme Court held that there is no continuity requirement for small refineries to receive exemptions under the RFS program. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2182 (2021).

Following that decision, on August 25, 2021, EPA moved in this Court for voluntary remand without vacatur of the entire Initial 2018 Decision, seeking the opportunity to reconsider that action in light of the Supreme Court's *HollyFrontier* opinion and the unappealed Tenth Circuit *RFA* holdings. EPA's Motion for Voluntary Remand, *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-1196, Doc. 1911606. On December 8, 2021, the Court remanded the Initial 2018 Decision, returning all 36 small refinery exemption petitions for the 2018 RFS compliance year (31 grants and five denials) to the Agency with instructions to issue new decisions within 120 days. *See* Order, *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-1196, Doc. 1925942.

The remand order placed the Sinclair and Wynnewood 2018 petitions before EPA once again.

Another outcome of the Tenth Circuit's *RFA* decision and the Supreme Court's *HollyFrontier* decision was that the three exemptions that were challenged in that lawsuit for the 2016 and 2017 RFS compliance years were remanded to the Agency for reconsideration on July 29, 2021.  EPA's Motion for Clarification of the Court's July 29, 2021 Mandate, *RFA*, No. 18-9533, Doc. 010110564301 (Aug. 19, 2021); Order, *RFA*, No. 18-9533, Doc. 010110567206 (Aug. 26, 2021); *see also* June 2022 Compliance Action at 7.

### D.    EPA's New Approach to Evaluating Small Refinery Exemption Petitions and the Resulting April 2022 and June 2022 Small Refinery Exemption Denial Actions

In December 2021, EPA issued the *Proposed RFS Small Refinery Exemption Decision*, EPA-420-D-21-001; 86 Fed. Reg. 70999 (Dec. 14, 2021) ("Proposed SRE Denial") putting forth a revised interpretation of the CAA's small refinery exemption provisions.  Informed by the Supreme Court's *HollyFrontier* decision and the Tenth Circuit's *RFA* decision, EPA took a fresh look at the exemption provision in 42 U.S.C. § 7545(*o*)(9)(B) and proposed to interpret it, consistent with the Tenth Circuit's decision, to require a showing of disproportionate economic hardship caused by RFS compliance.  Proposed SRE Denial at 23–26.  In light of *RFA*, EPA analyzed how the principles of "RIN discount" and "RIN cost

passthrough" applied in the context of the pending petitions. *Id.* at 26–62. EPA found that the "market-based design of the RFS program and the RIN-based compliance system have equalized the cost of compliance among all market participants, such that no refinery would face disproportionate economic hardship from its RFS obligations" and that "the costs of RFS compliance (*i.e.*, RINs) are passed through in the prices of refined products." *Id.* at 62. Applying EPA's revised interpretation to the 65 then-pending small refinery exemption petitions, the Agency proposed to deny them all.

On January 3, 2022, EPA provided express notification to stakeholders, including Sinclair and Wynnewood, that it was considering including the recently remanded 36 petitions for the 2018 compliance year as part of the Proposed SRE Denial and soliciting comments on that issue. *See* Scope of Action and Notifications, Jan. 18, 2022, Docket No. EPA-HQ-OAR-2021-0566.

After receiving comments on the Proposed SRE Denial, EPA issued final actions in April and June 2022 that applied EPA's revised interpretation and new findings regarding the RIN market and disproportionate economic hardship to deny 105 pending exemption petitions for RFS compliance years 2016 through 2021: the April 2022 Denial Action and the June 2022 Denial Action. JA.V1__; JA.V1__. These Denial Actions have been challenged by many parties—including

-18-

Wynnewood and Sinclair—in three separate courts of appeals, including this Court. *See infra* Section II.G.

### E.    April 2022 Compliance Action

Concurrent with the April 2022 Denial Action, EPA developed an alternative compliance demonstration approach specifically tailored to address the compliance obligations of the 31 small refineries, including Wynnewood, whose petitions for exemption for the 2018 RFS compliance year were granted by the Initial 2018 Decision, but then denied by the April 2022 Denial Action.

EPA issued the April 2022 Compliance Action to ameliorate the negative effect the April 2022 Denial Action could have on the RFS program as a whole. As summarized by EPA:

> EPA has determined that there are extenuating circumstances that would present virtually insurmountable obstacles to these 31 small refineries and significant concerns relating to the RFS program as a whole were these small refineries required to meet their newly created 2018 obligations under the existing compliance scheme. Therefore, EPA is providing an alternative compliance demonstration approach that the 31 small refineries . . . may use to meet their 2018 obligations without retiring any additional RINs.

April 2022 Compliance Action at 1; JA.V1__.

In particular, EPA analyzed the state of the RIN market and recognized that the 31 small refineries, including Wynnewood, that had previously held small refinery exemptions for 2018 would have extreme challenges if they had to comply

with the 2018 RFS obligations that resulted for each of them following the April

2022 Denial Action.  EPA explained:

> Now, more than two years later, the small refineries no longer hold the RINs they previously used for compliance, having sold the returned RINs and/or used some portion of them to satisfy their 2019 obligations. Additionally, there is limited availability of 2018 RINs because non-small refinery obligated parties were required to comply with their 2019 obligations by March 31, 2020, and many used 2018 RINs to satisfy up to 20% of their 2019 obligations . . . [T]here are also insufficient 2019 RINs in the needed categories available to comply with the combined 2018 and 2019 obligations. Thus, if the 31 small refineries attempted to come into compliance through the retirement of 2018 and 2019 RINs, most if not all of them would be unable to achieve compliance under the existing compliance scheme. Requiring these small refineries to retire 1.4 billion RINs could also jeopardize compliance for all obligated parties through a significant drawdown of the carryover RIN bank.

*Id.* at 10–11.

In light of these concerns, EPA crafted an "alternative compliance

demonstration approach" that required the 31 small refineries, including

Wynnewood, to submit "annual compliance reports for 2018 and report their actual

gasoline and diesel fuel production, actual annual [renewable volume obligations],

and zero RIN deficit carryforward into the following compliance year," [5] *id.* at 17,

but also permitted those refineries to not retire any additional RINs to meet their

---

[5] Small refineries that receive exemptions for a given year are subject to the percentage enumerated by 40 C.F.R. § 80.1405, and are therefore not subject to the requirements of an obligated party to submit compliance reports for fuel produced at the refinery during that period under 40 C.F.R. § 80.1451.

-20-

reinstated 2018 RFS compliance obligations.  Requiring the submission of the annual compliance reports from these small refineries provided EPA with information it can now use to inform future RFS actions, as well as to provide aggregated information to other stakeholders and the general public.

In contrast, Petitioner Sinclair is among the "five other 2018 SRE petitions" whose small refinery exemption petitions "were originally denied" by the Initial 2018 Decision.  April 2022 Compliance Action at 1, n.5; JA.V1__.  Because the April 2022 Denial Action "does not reverse previous exemptions" and these five small refineries did not previously have any RINs returned, the April 2022 Compliance Action "does not apply" to them.  *Id.*

### F.    June 2022 Compliance Action

Similarly, concurrent with the June 2022 Denial Action, EPA issued the June 2022 Compliance Action to extend the prospective compliance relief offered to the 31 small refineries for the 2018 RFS compliance year in the April 2022 Compliance Action to the three small refineries whose 2016 and 2017 small refinery exemption petitions that had been previously granted were remanded to EPA for reconsideration following litigation, and then denied.[6]

---

[6] *See* Order, *RFA*, No. 18-9533, Doc. 010110567206 (Aug. 26, 2021) remanding to EPA small refinery exemption petitions from HollyFrontier Cheyenne Refining LLC for the 2016 RFS compliance year, HollyFrontier Woods Cross Refining LLC for the 2016 RFS compliance year, and Wynnewood Refining Company for the 2017 compliance year.

-21-

Several challenges to the April 2022 and June 2022 Compliance Actions are pending in this Court and the Fifth Circuit.[7]  *See* infra Section II.G.

### G. Ongoing Challenges to the Denial Actions and Compliance Actions

In the Fifth Circuit, Wynnewood challenged the April 2022 Denial Action on June 24, 2022, *Wynnewood Refin. Co. LLC v. EPA*, No. 22-60266, and challenged the June 2022 Denial Action on August 2, 2022, *Wynnewood Refin. Co. LLC v. EPA*, No. 22-60425 (5th Cir.).  Those cases were consolidated with each other and with another petitioner's challenge to the same actions, and that consolidated action is now styled *Calumet Shreveport Refin. Et al. v. EPA*, No. 22-606266 (5th Cir. June 24, 2022) (consol.).  Wynnewood also challenged the Denial Actions in the D.C. Circuit, where its petition was consolidated with other similar challenges.  *Sinclair Wyo. Refin. Co. v. EPA*, 22-1073 (D.C. Cir.).

In the Fifth Circuit, Wynnewood also challenged the April 2022 Compliance Action (No. 22-60357) and June 2022 Compliance Action (No. 22-60424), and

---

[7] Wynnewood's 2018 exemption petition was decided by the April 2022 Denial Action and covered by the April 2022 Compliance Action.  Wynnewood's 2017 exemption petition was decided by the June 2022 Denial Action and covered by the June 2022 Compliance Action.  However, because EPA granted Wynnewood's 2017 exemption prior to the 2017 compliance deadline, Wynnewood "never had to retire RINs to demonstrate compliance with its 2017 obligations."  June 2022 Compliance Action at 7.  Accordingly, Wynnewood only raises claims regarding the April 2022 Compliance Action in this litigation.

those challenges were consolidated on October 12, 2022. *Wynnewood Refin. Co. LLC v. EPA*, No. 22-60357 (5th Cir. Oct. 12, 2022). On July 29, 2022, EPA filed a motion in the Fifth Circuit to transfer Wynnewood's petitions for review of the Compliance Actions to this Court, or dismiss them, due to improper venue. *Wynnewood Refin. Co. v. EPA,* No. 22-60357, Doc. 00516412896. On October 12, 2022, the Fifth Circuit ordered that EPA's motion be "carried with the case." *Id.*, Doc. 00516505262. Wynnewood filed its opening brief on March 15, 2023. EPA filed its answering brief on May 15, 2023. Accordingly, the same issues being raised by Wynnewood before this Court are simultaneously being presented to the Fifth Circuit.

On September 12, 2022, Sinclair sought to sever and stay its challenges to the April 2022 Compliance Action in the D.C. Circuit, pending the resolution of its challenge in the Tenth Circuit to an email in which EPA stated that—in accordance with the April 2022 Denial Action and the April 2022 Compliance Action—it would not return the RINs Sinclair had retired to meet its 2018 RFS obligation. *Sinclair Wyo. v. EPA*, No. 22-1074 (and consol. cases), Doc. 1963135. Similarly, on October 17, 2022, Wynnewood sought to sever and stay its claims in the D.C. Circuit, pending the resolution of its claims in the Fifth Circuit. *Id.*, Doc. 1969350. On November 29, 2022, this Court denied both Sinclair's and Wynnewood's motions and set a briefing schedule. *Id.*, Doc. 1975457.

-23-

## STANDARD OF REVIEW

A final agency action under the Clean Air Act may be held unlawful only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9)(a).[8] Where EPA has considered the relevant factors and articulated a rational connection between the facts found and the choices made, its decision must be upheld. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins Co.*, 463 U.S. 29, 43 (1983). This scope of review is "narrow" and a court is not to "substitute its judgment for that of the agency." *Id*.

Thus, if the agency "has considered the relevant factors and articulated a rational connection between the facts found and choice made," a reviewing court must affirm. *Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 192 (D.C. Cir. 2023) (internal quotation omitted). Courts give EPA substantial deference on disputed factual issues that "implicate[] substantial agency expertise." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376–77 (1989). Further, EPA's "determinations based on highly complex and technical matters are entitled to great deference." *Midwest Ozone Grp.*, 61 F.4th at 192; *see also Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 150 (D.C. Cir. 2015).

---

[8] When determining if an action is arbitrary and capricious under the Clean Air Act, courts apply the "same standard of review" as applied under the Administrative Procedure Act. *See, e.g.*, *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000).

This Court reviews EPA's actions for reasonableness. *Motion Picture Ass'n of Am. Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002). It can set them aside only if they are arbitrary and capricious. 42 U.S.C. § 7607(d)(9)(A). Under that standard, the Court cannot substitute its policy judgment for EPA's. *Bluewater Network v. EPA*, 370 F.3d 1, 11 (D.C. Cir. 2004). Rather, the question for the Court is whether EPA examined the relevant factors, articulated a rational connection between the facts found and the choice made, and made any clear error of judgment. *Id.* The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Catawba Cnty.*, *v. EPA*, 571 F.3d 20, 50 (D.C. Cir. 2009) (internal quotation marks omitted).

In reviewing EPA's interpretation of the CAA, the first step is to decide whether Congress has directly spoken to the question at issue. *Chevron U.S.A. v. NRDC, Inc.*, 467 U.S. 837, 842 (1984).[9] If it has, the inquiry ends and the Court should give effect to Congress's clear intent. *Bluewater Network*, 370 F.3d at 11. If the statute is silent or ambiguous, the Court examines whether EPA reasonably construed the statute. *Chevron*, 467 U.S. at 843.

---

[9] On May 1, 2023, the Supreme Court granted certiorari in *Loper Bright Enters., et. al. v. Raimondo*, No. 22-451, to address the scope of agency deference under *Chevron*.

## SUMMARY OF ARGUMENT

These petitions should be denied because EPA acted reasonably and within its statutory authority in issuing the April and June 2022 Compliance Actions. The rationale behind the Compliance Actions is simple: Where EPA initially granted—but later denied—a small refinery an exemption, EPA provided an alternative compliance approach to that refinery to maintain the integrity of the RFS program by avoiding undue disruption. Where EPA had never granted a small refinery an exemption, EPA did not provide the same alternative compliance approach, which would not have been necessary to maintain the integrity of the RFS program.

Petitioners challenge the Compliance Actions from opposite directions. Growth Energy, a trade association that represents the biofuels production industry, claims that EPA exceeded its authority by issuing the Compliance Actions. The other two Petitioners, Wynnewood and Sinclair contend the Compliance Actions did not go far enough in providing them relief. Each petitioner is wrong.

First, contrary to Growth Energy's assertions, EPA acted reasonably and within its statutory authority by providing compliance relief for 31 small refineries facing unique and extenuating circumstances. EPA has authority to interpret and implement the Clean Air Act and its RFS regulations to create a credit-trading system usable by obligated parties to demonstrate compliance with their RFS

-26-

program obligations.  That includes the authority to proceed through case-by-case adjudications, as EPA reasonably did here.  Requiring the 31 subject small refineries—whose exemption petitions were granted years before they were denied—to comply with their 2016–2018 RFS compliance obligations would have been wholly impracticable for the refineries and would have threatened the stability of the RFS program as a whole, in turn negatively affecting not just the subject refineries, but all RFS obligated parties and stakeholders.

Growth Energy makes several arguments to the contrary but they all fail.  The Denial Actions were not retroactive. Therefore, the Compliance Actions do not withhold any retroactive effect of the Denial Actions.   Furthermore, even assuming that the Denial Actions had retroactive effects, EPA still acted properly here because it considered the equities of the situation and grounded its conclusions in "notions of equity and fairness," given the unique and extraordinary circumstances present.  *See Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998).  EPA also reasonably considered relevant RFS caselaw—even if that caselaw arose in the context of rulemakings, not adjudications—when deciding how best to carry out its mandate to implement the RFS program.

On the other side, the refineries Wynnewood and Sinclair are not entitled to further relief under the April 2022 Compliance Action because their small refinery exemption petitions were denied.  The April 2022 Compliance Action inured to

-27-

Wynnewood's benefit, as it was not required to retire additional RINs to meet the compliance obligation reinstated by EPA's April 2022 Denial Action.  Wynnewood's argument that it is entitled to *even more* relief is based on the flawed premise that Wynnewood is entitled to relief that would flow from holding a small refinery exemption, which Wynnewood does not.

As for Sinclair, EPA's 2019 initial denial of Sinclair's small refinery exemption petition is not before this Court, and because of that denial, EPA was reasonable in not including Sinclair among the refineries provided an alternative compliance option in the April 2022 Compliance Action.  Sinclair was not similarly situated to those refineries, as it did not hold an exemption at the time of the April 2022 Denial Action and as it had already retired RINs to satisfy its obligations.  Nor was providing the alternative compliance option to Sinclair necessary to preserve the future integrity of the RFS program.

Accordingly, this Court should deny these petitions for review.

## ARGUMENT

I.    **EPA has statutory authority to manage the RFS program, including by granting reasonable compliance relief as it did in the Compliance Actions.**

Contrary to Growth Energy's arguments, EPA has ample authority to implement and protect the overall integrity of the RFS program, which includes designing a suitable alternative compliance framework for 31 small refineries

facing unique and extenuating circumstances.  Following the Denial Actions, these 31 small refineries were in the unusual position of having had their exemption petitions for the 2016–2018 RFS compliance years denied in 2022, several years after EPA's initial actions granting those petitions.  The Denial Actions followed years of litigation contesting the validity of EPA's small refinery grants via the Initial 2018 Decision and other exemption decisions, significant intervening judicial decisions, and judicial remands of the small refinery exemption grants pending before the Agency in the spring of 2022.

EPA ultimately issued the Denial Actions to apply the correct legal standard, which resulted in denials for 31 small refineries.  EPA then issued the Compliance Actions because requiring these refineries to retire RINs pursuant to the ordinary compliance framework for the 2016–2018 RFS compliance years would not only place impossible obligations upon the small refineries, but also seriously undermine the operability of the RFS program going forward.  In doing so, EPA reasonably exercised its adjudicatory authority in a manner tailored to the specific circumstances before it to design a suitable alternative compliance framework for these refineries.[10]

---

[10] If this Court decides—in the companion cases challenging the Denial Actions—that the Denial Actions are invalid and remands those actions, EPA respectfully requests that the Court similarly remand the Compliance Actions as well to allow

*Cont.*

-29-

### A.    EPA must implement the RFS program and may do so through adjudication.

Congress gave EPA a mandate to carry out the RFS program including, as relevant here, directing EPA to promulgate and implement regulations creating a credit system that could be used by obligated parties to demonstrate compliance with their RFS program obligations.  42 U.S.C. § 7545(*o*)(2)(A) & (*o*)(5).  Congress gave EPA the authority to fashion regulations "as appropriate" to implement the program, *id.* at § (*o*)(2)(A)(iii)(I), and to generally "ensure" that the RFS volumes are met, *id.* at § (*o*)(2)(A)(i).  In addition to interpreting the RFS and small refinery exemption statutory provisions and promulgating regulations, EPA has the ability to implement the RFS program through adjudications.  *Shays v. FEC*, 528 F.3d 914, 930 (D.C. Cir. 2008).

EPA's regulations related to RINs and how they are to be used, including the importance of the availability of carryover RINs, are set forth in 40 C.F.R. part 80, subpart M.  As stated by the Compliance Actions:

> Section 211(*o*)(5) required only that EPA allow for the generation and trading of credits for obligated parties that refine, blend, or import excess renewable fuel.  The RIN system fulfills that statutory provision and also creates a fungible system of credit trading by not just obligated parties but also by renewable fuel producers and others, creating an

---

EPA the opportunity to evaluate the companion actions in light of the Court's decision.

> open, liquid market for RINs to allow obligated parties to comply with
> their RFS obligations.

April 2022 Compliance Action at 3; June 2022 Compliance Action at 4.  The

important role of carryover RINs is similarly featured in nearly all RFS annual

rules setting renewable volume standards.  *See, e.g.*, *Renewable Fuel Standard*

*(RFS) Program: RFS Annual Rules*, 87 Fed. Reg. 39600, 39613 (July 1, 2022)

("As noted in past RFS annual rules, carryover RINs are a foundational element of

the design and implementation of the RFS program.[]  A bank of carryover RINs is

extremely important in providing a liquid and well-functioning RIN market upon

which success of the entire program depends, and in providing obligated parties

compliance flexibility in the face of substantial uncertainties in the transportation

fuel marketplace.").

  While these regulations are detailed and encompass many typical

compliance scenarios, they do not fully anticipate every unique factual situation

that may arise involving the use of compliance credits and compliance with RFS

obligations.  *See*, *e.g.*, 40 C.F.R. § 80.1431 (treatment of invalid RINs); § 80.1434

(RIN retirement); § 80.1435 (RIN holding calculation).

  To the extent an unusual situation arises that is not directly addressed by an

agency's implementing regulations, it is well established that an agency has

authority to flesh out its regulations through case-by-case adjudication.  *Shays*, 528

F.3d at 930.  There is no requirement for an agency to anticipate every potential

-31-

factual scenario that may arise and "promulgate regulations" to "address every conceivable question." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995); *see also Council for Urological Interests v. Burwell*, 790 F.3d 212, 226 (D.C. Cir. 2015).

Thus, agencies can use adjudications to announce new principles, *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 497 (D.C. Cir. 2015), or to address legal issues "for the first time," *Conference Group, LLC v. FCC*, 720 F.3d 957, 966 (D.C. Cir. 2013); *see also Neustar Inc. v. FCC*, 857 F.3d 886, 892 (D.C. Cir. 2017). As the Supreme Court has explained, "[a]djudicated cases may and do . . . serve as vehicles for the formulation of agency policies, which are applied and announced therein." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (*citing NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765–66 (1969)). And, as this Circuit has held, the "breadth of agency discretion" is at its "zenith" when it comes to the "fashioning of policies [and] remedies." *See Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 159 (D.C. Cir. 1967).

This is precisely what EPA did here. While the CAA and EPA's implementing regulations establish the EPA's general authority to manage the compliance credit framework of the RFS program, they do not specifically address the unique situation being addressed by the Compliance Actions. As a result of the Denial Actions, 31 small refineries had RFS obligations come due for the 2016–

2018 RFS compliance years that were long closed for RIN transactions. June 2022 Compliance Action at 10. These refineries had previously been granted RFS exemptions for the 2016, 2017, and 2018 RFS compliance years, but intervening judicial decisions and two judicial remands required EPA to issue new decisions, leading to the Denial Actions that resolved these refineries' requests for exemption from their RFS obligations. Due to the passage of several years during which these refineries held exemptions, the implications of requiring compliance under the ordinary compliance framework would have put the obligated refineries in an impossible position and threatened the viability of the RIN market and RFS program as a whole.

### B.     EPA's alternative compliance demonstration approach reasonably preserves RFS program integrity.

With the Compliance Actions, EPA fashioned an appropriate alternative compliance demonstration approach for certain small refineries. After the April 2022 Denial Action was issued, the normal RFS compliance scheme would have required the 31 small refineries that received 2018 exemption denials to acquire and retire by the 2019 compliance year deadline[11] approximately 1.4 billion RINs

---

[11] In early 2022, because of the litigation discussed herein related to small refinery exemptions and to provide all small refineries (not just litigants) with additional compliance flexibility, EPA promulgated a rule that extended the 2019 RFS compliance year deadline to September 1, 2022, for small refineries. 87 Fed. Reg. 5696, 5698 (Feb. 2, 2022). Even this rule was itself challenged in this Court by

*Cont.*

to cover their 2018 RFS obligations (the refineries would have to treat their 2018 obligations as a RIN deficit to be fulfilled alongside their 2019 obligations).  April 2022 Compliance Action at 7, JA.V1__.[12]  And after the June 2022 Denial Action was issued, the three refineries with 200 million RINs owed as 2016 and 2017 obligations would have been obligated to *immediately* satisfy their RFS obligations for those years.  Complying with these collective obligations would have been virtually impossible, because the proper-vintage RINs to do so were not available because those compliance deadlines had already passed.

Because of the passage of time between when the 31 small refineries initially received their 34 small refinery exemptions for the 2016–2018 RFS compliance years and when they ultimately received denials for those same petitions in 2022, those small refineries either no longer held the RINs they had previously acquired to timely demonstrate compliance, or they did not hold RINs

---

certain small refineries led by Wynnewood for allegedly not providing them with enough relief.  *Wynnewood Refin. Co.*, *et al. v. EPA*, No. 22-1015 (consol.) (D.C. Cir.).  That case was argued before this Court on January 19, 2023, and a decision is pending.

[12] EPA's regulations provide that a prior-year deficit for a compliance year may get carried forward into the subsequent compliance year, but the regulations do not anticipate the unique situation presented here where an RFS obligation is newly imposed for a prior, closed compliance year.  *See* 40 C.F.R. § 80.1427(b) (addressing deficit carryovers).  The lack of an express regulation does not prevent EPA from achieving the same result through case-by-case adjudications.  *See*, *e.g.*, 40 C.F.R. § 80.1434(a)(11) (giving EPA the flexibility to require the retirement of RINS in any "instance identified by EPA.").

in sufficient amounts to meet their combined 2016–2018 *and* 2019 RIN obligations by the applicable compliance deadlines.  April 2022 Compliance Action at 7; JA.V1__; June 2022 Compliance Action at 9; JA.V1__.  While under EPA's regulations the 31 small refineries could have potentially procured and used "carryover" RINs (largely held by third parties) to satisfy their obligations,[13] EPA found that further, there were insufficient advanced biofuel carryover RINs available in the market to satisfy their obligations.  April 2022 Compliance Action at 9; JA.V1__; June 2022 Compliance Action at 11; JA.V1__.  Specifically, EPA determined that there were only approximately 55 million advanced biofuel carryover RINs available, but the 31 small refineries would require approximately 320 million advanced biofuel RINs to satisfy their combined obligations.  *Id.*

In light of these challenges, EPA reasonably determined that requiring these 31 small refineries to rely on carryover RINs to meet their prior-year obligations would broadly undermine the stability of the RFS program and its functionality going forward by dramatically drawing down the number of available carryover RINs.  EPA explained that "[c]onsideration of the carryover RIN bank has consistently been a foundational element of the design and implementation of the

---

[13] The importance of carryover RINs was heightened in this scenario because when the Denial Actions were issued in 2022, the 2019 RFS compliance deadline had already passed for all obligated parties except for small refineries, meaning that there were not enough 2019 vintage-RINs to satisfy the 31 refineries' past-year obligations *plus their 2019 obligations*.

RFS program," and that the "carryover RIN bank ensures 'a liquid and well-functioning RIN market upon which the success of the entire program depends.'" April 2022 Compliance Action at 14; June Compliance Action at 16.  EPA noted that the RIN bank "provides an inventory of RINs that 'provides obligated parties compliance flexibility in the face of substantial uncertainties in the transportation fuel marketplace.'"  *Id*.  Without that flexibility, EPA explained, "obligated parties would be forced into actions to produce and blend the renewable fuels themselves, severely disrupting the marketplace and likely increasing fuel costs to consumers." *Id.*  EPA concluded that requiring the 31 small refineries to comply with their 2016–2018 obligations using the existing compliance scheme "would likely not allow for all obligated parties to come into compliance," "would have detrimental effects on the operation and liquidity of the RIN market," and "would have negative effects on all obligated parties."  April 2022 Compliance Action at 15; June 2022 Compliance Action at 17.

Further, because insufficient RINs were available to the 31 small refineries to demonstrate compliance for the past years, EPA determined that requiring them to comply with the obligations created by the Denial Actions would "be impossible without EPA reopening the [2016–2019] compliance years for *all* obligated parties."  April 2022 Compliance Action at 11; June 2022 Compliance Action at 13.  This would potentially require a series of elaborate steps, including, for

-36-

example, returning all RINs used for compliance to their original owners, and allowing *all* obligated parties—not just small refineries—to revisit their compliance demonstrations and free up RINs for compliance. Moreover, "EPA would not be able to force the obligated parties that have already complied with their [2016–2019] obligations to revisit those compliance years to adjust their RIN retirements or sell RINs in the market," making "compliance with the 31 small refineries' [2016–2019] obligations, under the current compliance scheme[] virtually impossible in practice."[14] April 2022 Compliance Action at 12; June 2022 Compliance Action at 14.

If EPA had not issued the Compliance Actions and instead had reopened the 2016–2019 compliance years, the consequences likely would have been dire for the RFS program as a whole and for the affected small refineries. First, it would likely have created administrative chaos for all regulated parties, as EPA would be required to sort out parties' compliance obligations for the 2016–2019 years before it could require compliance for any future years. Second, any affected small refinery would be immediately subject to civil penalties for noncompliance, which

---

[14] EPA further concluded that reliance on carryover RINs to meet 2018 obligations would have undermined EPA's proposed volume standards for 2022, likely to the point of making them unachievable. April 2022 Compliance Action at 12; JA.V1__; June 2022 Compliance Action at 14; JA.V1__.

could have severe negative economic repercussions.  40 C.F.R. § 80.1163.  Such penalties would be caused by factors largely outside of any individual small refinery's control—including the extreme levels of uncertainty and instability created by the incessant litigation over the RFS and the small refinery exemption program as well as policy changes over the last several years—thereby working a manifest injustice to those small refineries.  And third, requiring compliance with 2018 obligations through the use of carryover RINs could negatively affect the demand for renewable fuel in future years and run counter to the Congressional mandate that EPA "ensure" attainment of the RFS volumes.  42 U.S.C. § 7545(*o*)(2)(A)(i).

For all these reasons, EPA appropriately exercised its adjudicatory authority to provide an alternative compliance approach to the subset of 31 small refineries that faced prior-year compliance obligations arising from the Denial Actions while facing unique and extenuating circumstances.

### C.    Growth Energy's arguments that EPA exceeded its authority do not survive scrutiny.

Growth Energy asserts that EPA is powerless to protect the integrity of the RFS program by providing suitable compliance relief to 31 small refineries that initially received exemptions for the 2016–2018 RFS compliance years that were later denied by the 2022 Denial Actions.  Growth Energy allows that agencies in some circumstances have authority to take action to avoid retroactive effects of

adjudications, but Growth Energy contends that EPA lacked that power in conjunction with the Denial Actions.  Growth Brief at 26–43.  This line of reasoning is misplaced on multiple levels.

> **1.    The Denial Actions are not retroactive, and the Compliance Actions are not intended to relieve retroactive effects.**

The Denial Actions have no retroactive effects, and EPA did not design the Compliance Actions to address such retroactive effects.  As EPA recently explained in its filing defending the Denial Actions in the related litigation in the Fifth Circuit, those actions have no retroactive effects because they merely confirm the status quo:  non-exempt small refineries have a duty to comply with preexisting RFS obligations, with no rights having vested in any of the small refineries' exemption petitions while they were again pending before EPA on remand.  *See* EPA's Response Brief*, Calumet Shreveport Refin., LLC v. EPA,* No. 22-60266 (consol.), Doc. 311 (5th Cir. May 11, 2023) at 29–32.

Unlike impermissibly retroactive regulations, the adjudications that comprise the Denial Actions did not take away or impair "vested rights acquired under existing laws," or create a "new obligation, impose[] a new duty, or attach[] a new disability, in respect to transactions or considerations already past," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (citation omitted); nor do they "impose[] new sanctions on past conduct," *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 159 (D.C. Cir. 2010) (citations omitted).  Instead, the

Denial Actions merely confirmed that the petitioning small refineries must comply with their *preexisting* 2016–2018 RFS obligations that spring straight from the RFS statute and regulations.  *See, e.g.*, 42 U.S.C. § 7545(*o*)(3)(B)(ii)(I); 40 C.F.R. § 80.1406; *see also Monroe Energy, LLC v. EPA*, 750 F.3d 909, 920 (D.C. Cir. 2014) ("[t]he statute set the renewable fuel obligation, and Monroe Energy had no legally settled expectation that EPA would exercise its waiver authority to reduce that obligation.").  Because the Denial Actions are not retroactive, by extension the Compliance Actions, which are designed to alleviate the impacts of the Denials, are not retroactive either.  Specifically, the Compliance Actions have the legal effect of mitigating the prospective adverse impacts of the Denials on small refineries and the RIN market.

Properly understood, the Compliance Actions do not embody an attempt by EPA to avoid retroactive effects, as alleged by Growth Energy.  The Compliance Actions are instead intended to address and avoid negative effects on the integrity of the RFS program as a whole, by avoiding the damage that would result from requiring the 31 subject small refineries to retire RINs for the compliance years in question under the standard compliance framework.

### 2. EPA reasonably considered relevant RFS caselaw when crafting the Compliance Actions.

Growth Energy's focus on retroactivity case law in its brief appears to be a response to a single passage in EPA's decision document, where EPA invoked

-40-

some of this Court's RFS case law as precedent supporting the reasonableness of the Compliance Actions. *See* April 2022 Compliance Action at 8; June 2022 Compliance Action at 10–11 (citing *Americans for Clean Energy v. EPA*, 864 F.3d 691 (D.C. Cir. 2017); *Monroe Energy, LLC v. EPA*, 750 F.3d 909 (D.C. Cir. 2014); *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 154-58 (D.C. Cir. 2010)). In those passages, EPA asserts that its "approach to the [2016–2018] obligations created by the Denial [Actions are] consistent with existing case law regarding retroactive RFS obligations, though we consider these obligations to be created by the SRE Denial[s] that relate back to the [2016–2018] compliance years."[15] April 2022 Compliance Action at 8; June 2022 Compliance Action at 10. EPA was not therein trying to suggest that the Denial Actions are themselves retroactive. Rather, EPA was focused on advancing a broader point, that this Court has "highlighted [that] the availability of RINs for compliance, as well as compliance flexibilities" are "key considerations" in situations where EPA is addressing requirements that newly come due and relate back to prior calendar

---

[15] Despite the inartful language here, the Denial Actions did not, by themselves, "create" the new obligations. Rather, the Denial Actions denied the subject small refineries' requests for exemption from their preexisting obligations under the CAA to comply with the RFS for 2016–2018, thereby reinstating the small refineries' RFS obligations for those years.

years.  *See* April 2022 Compliance Action at 8–9; June 2022 Compliance Action at 10.[16]

Growth Energy argues at length that the precedents cited in this passage are "inapplicable" because the Compliance Actions are adjudications, not rulemakings. Growth Energy Br. at 27.  EPA agrees that the Compliance Actions are adjudications.  EPA further agrees that the cited case law addresses retroactive rulemakings, and therefore the retroactivity analysis applied in those cases is not directly applicable here.  Nonetheless, the *reasoning* in those cases remains informative insofar as the cases address the implementation of the RFS program and recognize the validity of the same sort of programmatic integrity concerns that animated EPA here.  *See, e.g.*, *Ams. for Clean Energy*, 864 F.3d at 722 (approving of EPA's action to ensure that there would be an adequate quantity of RINs available to satisfy RFS volume requirements).  In any event, regardless of whether the Court deems the reasoning in the cited RFS cases informative or not, EPA put forth ample justification for the Compliance Actions beyond the cited precedent. Thus, the Court does not need to apply that precedent to uphold EPA's action as adequately explained.

---

[16] These cases also support the proposition that if there are any retroactive effects of the Denial Actions, they are permissible, a proposition that Growth Energy does not contest.

### 3. Even if the relief provided by the Compliance Actions applies retroactively, such relief is permissible because it is grounded in equitable considerations.

Even if the Court adopts the prism of retroactivity set forth by Growth Energy, the Compliance Actions should still be upheld applying that framework. In other words, even if the Court believes that the Denial Actions have some retroactive effects and construes the Compliance Actions as preventing such retroactive effects, the Compliance Actions are still permissible.[17]

In general, there is a presumption in administrative law that an adjudication will have retroactive effect. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216-17 (1988) (Scalia, J., concurring).  However, retrospective application can be "properly be withheld" under certain circumstances when to apply the adjudication to past conduct or prior events would work a "manifest injustice." *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987).  More specifically, when assessing the "retroactive application of rules announced in agency adjudications," courts apply a five-factor test that "boil[s] down [to] a question of concerns grounded in notions of equity and fairness."  *Id.* at 1081–82 and n.6; *see also Cassell v. FCC*, 154 F.3d at 486 (examining retroactivity on

---

[17] Growth Energy supports the Denial Actions and does not contend here that any retroactive effects of the Denial Actions were themselves impermissible.  But Growth Energy contends that EPA acted impermissibly by issuing the Compliance Actions to avoid the retroactive effects of its Denial Actions.

equitable grounds because "[t]here is no need to plow laboriously through the *Clark-Cowlitz* factors").

Here, the Compliance Actions' alternative compliance approach is grounded in notions of equity and fairness. As discussed above, EPA acted reasonably to relieve the affected small refineries from further 2016–2018 RFS compliance obligations given the unique and extraordinary circumstances presented. These 31 small refineries received exemptions from their 2018 RFS obligations in 2019 and had those same exemptions denied in 2022. That meant that the 31 small refineries had a cumulative compliance obligation of approximately 1.4 billion RINs come due by September 1, 2022. *See* April 2022 Compliance Action at 6, 10; JA.V1__. And once added to the three exemption petitions that were separately remanded to EPA and denied by the June 2022 Denial Action, three of those same 31 small refineries had a reinstated combined RIN obligation of 200 million RINs come due immediately. June 2022 Compliance Action at 7, 12; JA.V1__. This brought to 1.6 billion the number of RINs required for the 31 small refineries to demonstrate compliance for the 2016–2018 RFS compliance years.

In light of these facts, and due to the passage of time, EPA reasonably determined that it would be impracticable for the 31 small refineries to comply with their 2016–2018 RFS obligations, and that the Compliance Actions were necessary to preserve RFS program integrity. In reaching these conclusions, EPA

paid particular attention to the effects that requiring those 31 small refineries to fulfill their combined 1.6 billion RIN 2016–2018 RFS obligations under the existing compliance scheme would have on RFS program viability as a whole, and the impacts to all regulated entities under the RFS program.[18]  At the time of the Denial and Compliance Actions, the entirety of the available carryover RINs for compliance was approximately 1.8 billion RINs.  April 2022 Compliance Action at 12; JA.V1__; June 2022 Compliance Action at 14; JA.V1__.  Thus, requiring these small refineries to meet their 2016–2018 compliance obligations by retiring RINs of applicable vintages would "jeopardize compliance for *all* obligated parties," not just the 31 small refineries.[19]  April 2022 Compliance Action at 11; JA.V1__; June 2022 Compliance Action at 13; JA.V1__.  This determination was reasonable, and the Compliance Actions were well within EPA's authority under the CAA.

Growth Energy's assertion that EPA has given itself the power to "defy the statute at will." Growth Energy Br. at 22, also falls flat.  Instead, the Compliance Actions *promote* statutory objectives by ensuring the RFS program remains

---

[18] A majority of obligated parties are not involved in the myriad legal challenges to the Denial and Compliance Actions.

[19] This is particularly true given the shortfall of advanced biofuel carryover RINs. To satisfy their obligations, these small refineries would have required 320 million advanced biofuel carryover RINs.  At the time of the Denial Actions, there were only approximately 55 million such RINs.  April 2022 Compliance Action at 12; JA.V1__; June 2022 Compliance Action at 14; JA.V1__.

functional.  Further, the Compliance Actions are limited to the unique

circumstances presented here.  They are not the hypothetical unfettered power to

ignore the RFS statute that Growth Energy posits.

### 4.    The Compliance Actions do not allow EPA to "avoid correcting legal errors."

Growth Energy also asserts that EPA "cannot invoke 'retroactivity' to avoid

correcting errors on remand from judicial review."  Growth Energy Br. at 23.

However, in the Compliance Actions, EPA is not "invoking retroactivity," nor is it

avoiding correcting legal errors.  In taking the Denial Actions, EPA considered the

*RFA* and *HollyFrontier* decisions and applied them to the remanded small refinery

exemption petitions at issue here.  The Compliance Actions then addressed the

realities affecting the RIN market in light of the unique circumstances created by

the Denial Actions.  EPA considered the implications those Denial Actions would

have on the RIN markets and took reasonable action to ensure a functioning RFS

program for *all* obligated parties.

Accordingly, EPA's underlying purpose for taking the Compliance Actions,

amply demonstrated by the record here, was to maintain the integrity of the RFS

program going forward, not to "avoid" correcting legal errors or to "arrogate[] to

itself [EPA] the power to practically immunize its RFS actions from judicial

review."  Growth Energy Br. at 24.

-46-

### 5.    The Compliance Actions are limited to unique circumstances that are unlikely to recur.

Growth Energy claims—without support—that the circumstances present in this case "could easily recur" and claims the Compliance Actions are part of a "troubling pattern" of EPA using "non-retroactivity" in an effort "to undermine the RFS."  Growth Energy Br. at 24.  In support of this assertion, Growth Energy points to EPA's decision to reduce the volume requirements for 2020 and 2021 "to the level of actual use."  Growth Energy Br. at 25 (citing *Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, 87 Fed. Reg. at 39603, 39609).  However, Growth Energy ignores that these decisions were based on "unanticipated and exceptional events," namely, the COVID-19 pandemic.  *Id.* at 39610, 39619.  This example does not support the conclusion that EPA is turning retroactivity into the "power to negate the RFS program" whenever EPA "disagrees with Congress's policy choices."  Growth Energy Br. at 25–26.

In the Compliance Actions, EPA addresses a unique situation that is highly unlikely to recur.  There are 31 small refineries that had previously retired RINs to demonstrate RFS compliance for 2016–2018, then had their pending petitions granted by EPA, had any previously retired RINs returned to them, then subsequently had their small refinery exemption grants litigated and remanded to EPA for reconsideration.   Intervening court decisions in *RFA* and *HollyFrontier* examined EPA's implementation of the small refinery exemption statutory

-47-

provisions, and the resulting decisions prompted EPA to revise its approach to small refinery exemptions by requiring a petitioning small refinery to demonstrate disproportionate economic hardship caused by RFS compliance. Meaning that on remand, EPA reconsidered its position on the 34 previously granted petitions for 2016–2018 and instead denied them in the April and June 2022 Denial Actions.

EPA determined that suddenly requiring those small refineries in 2022 to meet their combined compliance obligations for long-closed past compliance years would have placed significant stress on the RFS program as a whole. This is not an instance of EPA seeking to "broadly undermine the RFS" as Growth Energy asserts, but rather a targeted action *to preserve RFS program viability* based on EPA's reasonable assessment of the damage to the RIN market that would result if EPA were to require those 31 small refineries to comply with their reinstated 2016–2018 RFS obligations totaling approximately 1.6 billion RINs.

Moreover, absent changes in market dynamics or other unpredictable future events these circumstances are highly unlikely to recur because EPA's revised interpretation of its authority to issue small refinery exemptions means that far fewer exemptions will be issued in the future. As EPA stated in the Denial Action, EPA "evaluated the information and data available to us," and concluded that the "data confirm that the market-based design of the RFS program with the RIN system for compliance has equalized the cost of compliance among all market

-48-

participants, making it highly unlikely any one refinery would face a disproportionate cost of compliance." April 2022 Denial Action at 19; JA.V1 __; June 2022 Denial Action at 19; JA.V1__ (internal citations omitted).

>**6.    The Compliance Actions protect the integrity of the RFS program and are reasonable.**

Growth Energy makes a number of allegations regarding the reasonableness of the bases for the Compliance Actions. As a threshold matter, it is clear that the consideration of the factors raised by Growth Energy and the conclusions reached by EPA in taking the Compliance Actions are matters squarely within EPA's technical expertise and therefore "entitled to great deference." *Midwest Ozone Grp.*, 61 F.4th at 192. In any event, Growth Energy does not identify any material deficiencies in EPA's analysis.

First, Growth Energy asserts that the Compliance Actions would "impair … statutory interests" by decreasing demand for renewable fuels. Growth Energy Br. at 35. But EPA considered demand for renewable fuels in taking the Compliance Actions and adequately explained the reasonableness of its approach. EPA acknowledged that requiring the small refineries to retire RINs and drawing down the number of available carryover RINs might have increased demand for renewable fuels in future years. However, as EPA explained, such reliance on carryover RINs to meet the refineries' 2016–2018 obligations would at the same time have "undermine[d] the proposed standards for 2022" that EPA ultimately

-49-

finalized.  April 2022 Compliance Action at 12; JA.V1__; June 2022 Compliance

Action at 14; JA.V1__.  EPA's holistic approach properly balanced the need to

maintain a functioning program while meeting the Congressional goal of

increasing renewable fuel use.

Second, Growth Energy alleges that EPA's "concerns regarding the RIN

bank are meritless."  Growth Energy Br. at 36.  But Growth Energy admits that

there would have been insufficient advanced biofuel RINs available in 2022 for the

31 small refineries to come into compliance with their 2016–2018 RFS obligations,

and instead points to the inadequate alternatives discussed below.  Growth Energy

Br. at 42.  Growth Energy further suggests that the 2022 standards can be met

without use of carryover RINs, Growth Energy Br. at 37, but even a standard set at

volumes that can be met through new market production does not guarantee

compliance, as unforeseen circumstances can require significant reductions in the

available carryover RINs, as happened in 2019.  *See Renewable Fuel Standard*

*Program: RFS Annual Rules*, 87 Fed. Reg. at 39614.  And the reason for the

reduced number of available carryover RINs is irrelevant.  Growth Energy again

ignores that the market-forcing objectives of the RFS program cannot be achieved

without a fungible and liquid RIN market, something a severe drawdown of

carryover RINs would jeopardize.

Finally, Growth Energy alleges that there are "viable and obvious" alternatives to the Compliance Action. But EPA reasonably considered alternatives similar to those now proposed by Growth Energy and reasonably rejected them.

In particular, EPA considered both adding the 2018 obligations to future years' standards (*i.e.*, the 2022 or later standards) and allowing the 31 small refineries additional time to acquire and retire RINs to satisfy their 2018 obligations. April 2022 Compliance Action at 10; JA.V1__; June 2022 Compliance Action at 12; JA.V1__. However, EPA rejected these options, concluding "they would not resolve the obstacles to compliance," because the applicable compliance deadlines had already passed, there was a shortfall in available advanced biofuel RINs, and the potential drawdown of the carryover RIN bank would threaten the integrity of the current and forthcoming standards. *Id.* Further, EPA noted that these options "would create additional challenges" because they would require a new rulemaking, during which time the 31 small refineries would be out of compliance because they would have unmet RIN obligations for 2016–2018 reinstated by the Denial Actions. *Id.* In addition, 1.6 billion RINs was such a large combined RFS obligation that it would have to be spread over many subsequent compliance years, and the applicable annual

standards would likely need to be adjusted downward to accommodate the additional 2018 obligations, among others.  *Id.*

In short, none of the alternatives posited by Growth Energy would guarantee the continued proper functioning of the RFS program on the timelines necessitated by the Denial Actions.  But for the companion Compliance Actions issued on the same days, the 31 small refineries covered by the Compliance Actions would have had immediately unmet RFS obligations.  Under the April 2022 Denial Action issued on April 7, 2022, the 31 small refineries would have had until only September 1, 2022, to demonstrate compliance with their combined 1.4-billion-RIN 2018 RFS obligations, and when the June 2022 Denial Action was issued on June 3, 2022, three of those small refineries would have been immediately out of compliance for the 2016 and 2017 compliance years, with the 2016 and 2017 compliance dates long passed.

And since EPA promulgated the final rule extending the 2020 compliance deadline for small refineries referenced by Growth Energy,[20] EPA has modified compliance deadlines only through rulemakings, not through adjudications.  As Growth Energy acknowledges, EPA has required some RIN retirements by the 31 affected small refineries, Growth Energy Br. at 31-32, so they have not all been

---

[20] *Renewable Fuel Standard (RFS) Program: Extension of Compliance and Attest Engagement Reporting Deadlines*, 87 Fed. Reg. 5696 (Feb. 2, 2022).

completely relieved of their RFS obligations related to the 2016–2018 compliance years; any 2017 RINs retired by the 31 small refineries to demonstrate compliance with the 2018 standards remain retired, because those RINs were already expired when EPA initially granted those small refinery exemptions by the Initial 2018 Decision issued in August 2019.[21]

## II.    Wynnewood and Sinclair are not entitled to further relief under the April 2022 Compliance Action.

Neither Wynnewood nor Sinclair identifies a flaw with the April 2022 Compliance Action, nor is either entitled to the additional "RIN replacement" relief that they seek. Refineries' Br. at 39. While the two Petitioner small refineries are situated differently in certain respects, both are contending that they are entitled to receive compensation for past costs they incurred related to the 2018 RFS compliance year, notwithstanding that neither holds an exemption from its RFS requirements for that year.

The arguments made by both small refineries flow from the premise that they should be treated as if they received—and still hold—exemptions from their 2018 RFS requirements. But the question presented is whether EPA's April 2022 Compliance Action was reasonable in view of the preceding April 2022 Denial

---

[21] The same is true for carryover RINs used to comply with the 2017 and 2016 obligations.

Action, not whether EPA hypothetically might have taken some other action if EPA instead had *granted* these small refineries' exemption petitions.

Fundamentally, Sinclair and Wynnewood fail to grapple with the actual objective of the April 2022 Compliance Action.[22]  As discussed above, the April 2022 Compliance Action was taken to preserve the integrity of the RFS program going forward by avoiding depletion of the carryover RIN bank and to avoid putting the 31 small refineries that had previous grants that were reversed in 2022—thereby instituting outstanding 2016–2018 RIN-retirement obligations for each of them—in an impossible compliance position.  The April 2022 Compliance Action was *not* an action taken to relieve obligated parties such as Sinclair and Wynnewood of compliance costs they had incurred in the past related to EPA's prior petition decisions.

---

[22] EPA acknowledges that Sinclair has argued here and in its related Tenth Circuit petition for review that EPA did not adequately consider whether Sinclair *should* have received a 2018 exemption (under the standards EPA was applying in 2018 prior to the Tenth Circuit's decision in *RFA*) based on the Agency's failure to consider certain additional data.  Refiners Br. at 26-28.  In this case, EPA did not reach those issues because it reasonably based its decision on the more general and indisputable fact that Sinclair, unlike the 31 other small refiners, simply had no effective grant for 2018 at the time of the Denial Action. As explained herein, this approach was reasonable and should be upheld. But should the court agree with Sinclair that EPA should have further evaluated Sinclair's claims with respect to the factual basis for the Initial 2018 Denial as part of this action, the proper remedy would be a remand to EPA for further consideration of the specific facts of Sinclair's 2018 small refinery exemption petition.

A.    **The April 2022 Compliance Action's targeted relief was reasonable in view of the ramifications of the April 2022 Denial Action.**

The April 2022 Compliance Action alleviated the burden that 31 small refineries including Wynnewood—whose exemption petitions previously had been granted—would have faced in trying to meet their 2018 RFS compliance obligations.  The action obviated the need for them to retire RINs to meet those obligations.  This aspect of EPA's action is, understandably, not challenged by the two small refinery Petitioners here; neither argues that EPA exceeded its authority in providing the alternative compliance option to certain small refineries.  Instead, Sinclair and Wynnewood argue that EPA should have gone further and provided each of them with more individualized relief.

EPA reasonably issued the Compliance Actions to preserve the integrity of the RFS program going forward and incidentally provided some relief to certain small refineries in so doing.  However, EPA had no broader obligation to provide recompense to *any* small refineries from compliance costs they incurred in the past based on individual business decisions made related to their RFS compliance. Thus, while EPA reasonably provided limited prospective relief to address the extraordinary circumstances faced by these 31 small refineries, it is in no way obliged to provide additional monetary benefits—in the form of reimbursement for

-55-

past expenditures—to small refineries such as Sinclair and Wynnewood that ultimately do not hold an exemption from their 2018 RFS requirements.

At bottom, Wynnewood's claims rest on the belief that EPA should have granted its exemption petitions rather than denying them in the April 2022 Denial Action. But that action is not before the Court in this matter; it is the subject of judicial review in separate litigation filed by Wynnewood in the D.C. Circuit and the Fifth Circuit. *See Wynnewood Refin. Co. v. EPA,* No. 22-60425 (5th Cir.); *Wynnewood Refin., Co. v. EPA*, No. 22-1124 (D.C. Cir.). The April 2022 Compliance Action is "separate and independent from" the April 2022 Denial Action. April 2022 Compliance Action at 1; JA.V1__. Agencies enjoy "broad discretion in determining how best to handle related, yet discrete, issues" and "need not solve every problem before it in the same proceeding." *Taylor v. FAA*, 895 F.3d 56, 68 (D.C. Cir. 2018) (*quoting Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230–31 (1991)).

Accordingly, this Court must evaluate the reasonableness of EPA's April 2022 Compliance Action on its own terms; was it reasonable in view of the concurrent and independent April 2022 Denial Action? That question is easily answered. The scope of the relief provided was eminently reasonable in view of the ramifications of the April 2022 Denial Action on RFS program integrity going forward.

Indeed, once EPA's April 2022 Denial Action is properly understood as the condition precedent to the April 2022 Compliance Action, the small refinery Petitioners' claims before this Court quickly collapse.  Following the April 2022 Denial Action, the 2018 RFS compliance obligations for Wynnewood and the other 30 similarly situated small refineries that had previously held exemption grants came due.[23]  However, after considering the extenuating circumstances created by the timing of the April 2022 Denial Action, EPA reasonably exercised its discretion to issue the April 2022 Compliance Action to require those small refineries to submit 2018 compliance reports but excuse them from having to retire any additional RINs to demonstrate compliance for the 2018 RFS compliance year.

### B.    Wynnewood is not entitled to additional compliance relief.

Wynnewood does not dispute that the April 2022 Compliance Action inured to its benefit, but it contends that EPA should have gone further.  Specifically, Wynnewood alleges EPA should have provided Wynnewood even more relief related to the alleged diminution in value of Wynnewood's RINs in the four-month period between when Wynnewood initially retired RINs to comply with its 2018

---

[23] While Sinclair had briefly received an exemption grant in 2020, that grant was vacated by the Tenth Circuit.  Order, *Sinclair Wyo. Refin. Co. v. EPA*, No. 21-9528 (10th Cir.), Doc. 010110524643 (10th Cir. May 19, 2021).  Sinclair therefore was not similarly situated to the 31 small refineries that had outstanding compliance obligations arising from the fact that they held exemptions up until the time of the Denial Action.

obligations and August 2019, when EPA issued the Initial 2018 Decision granting Wynnewood's exemption petition and returned unexpired RINs to Wynnewood. *See* Declaration of C. Douglas Johnson in Support of Wynnewood Refining Co.'s Opening Brief ("Johnson Decl.") at ¶¶ 7–8; Refineries' Br. at 27.  While Wynnewood's RINs may have declined in value during that four-month period, Wynnewood's argument ignores the dispositive fact that EPA ultimately *denied* Wynnewood's exemption petition for 2018 with the April 2022 Denial Action, meaning that Wynnewood is not "entitled" to *any* relief from its 2018 RFS obligations.  Refineries' Br. at 31.

Absent the April 2022 Compliance Action, Wynnewood and the other 30 small refineries in a similar position would have had an immediate combined reinstated obligation to retire approximately 1.4 billion RINs to meet their 2018 RFS obligations.  The April 2022 Compliance Action excused these refineries, including Wynnewood, from any further obligations to obtain and retire RINs to demonstrate compliance for the 2018 RFS compliance year.  And following the April 2022 Compliance Action, these refineries were not required to expend effort or money to obtain new RINs to satisfy their reinstated 2018 RFS obligations. Thus, the April 2022 Compliance Action overall inured to Wynnewood's benefit.

Notably, Wynnewood points to no legal authority requiring the relief it requests.  Instead, Wynnewood's unsupported request for additional relief would

place it in a substantially better position than any other obligated party. Such relief is unfounded and is certainly not an entitlement. EPA reasonably decided not to provide such a unique and unfair benefit to Wynnewood.

### C.    Sinclair is not entitled to any compliance relief.

Sinclair asserts that it was "similarly situated" to the 31 small refineries that received grants via the Initial 2018 Decision, and that the Compliance Action ran afoul of the norm to treat like cases alike. Refineries' Br. at 25. But Sinclair was not, in fact, similarly situated to the 31 small refineries provided relief in the April 2022 Compliance Action. Unlike those refineries, Sinclair *did not* hold an exemption at the time of the April 2022 Denial Action. And, unlike those refineries, Sinclair had already retired RINs to meet its compliance obligation at the time of the Compliance Action, and those RINs had not been returned by EPA. Thus, unlike the situation faced by the 31 small refineries afforded compliance relief, Sinclair was not in an impossible compliance position. Nor would providing compliance relief to Sinclair have helped preserve the future integrity of the RFS program.

Sinclair's argument rests on two pillars, neither of which is structurally sound. First, Sinclair assumes that it would have received a grant in 2019 when EPA issued the Initial 2018 Decision granting the other 31 refineries' 2018 exemption petitions, under the standards that EPA was applying at the time.

Refineries' Br. at 13-15. The record is not clear on this point[24] but this assertion is, ultimately, not relevant to the instant action. Regardless of how things might have speculatively played out under different facts, the salient point for purposes of the present case is that, at the time EPA issued the April 2022 Compliance Action, Sinclair was neither entitled to an exemption nor did it have any outstanding compliance obligations for 2018.

Second, Sinclair ignores that its short-lived grant was immediately challenged, stayed, and then vacated without opposition. Order, *Sinclair Wyo. Refin. Co.* v. EPA, No. 21-9528, Doc. 010110524643 (10th Cir. May 19, 2021).[25]

---

[24] EPA does not dispute that EPA failed to forward to DOE information that Sinclair provided in May 2019 to correct an error in the information it had previously submitted in support of its 2018 petition. However, in January 2020, Sinclair sent a more "detailed letter" to DOE requesting a new score for its 2018 petition. JA.V1___. This submission contained additional information not provided by Sinclair in May 2019. *See* Motion for Vacatur and Voluntary Remand, Goffman Decll., Attachment B, at 2, *Sinclair Wyo. Refin. Co. v. EPA*, No. 21-9528, Doc. 010110515928 (10th Cir. Apr. 30, 2021) (stating that Sinclair provided data to EPA in October of 2019 and "even more information" to DOE in January 2020). The record thus does not demonstrate that, had DOE earlier received the information provided in May 2019 earlier, DOE would have recommended or EPA would have granted Sinclair's petition under the standards that EPA was then applying.

[25] After Sinclair's January 2021 grant was vacated, the Initial 2018 Decision that denied Sinclair's petition was put back in place. That decision had been remanded to the Agency without vacatur by this Court. EPA then, in the April 2022 Denial Action, denied all 36 small refinery exemption petitions for 2018, reversing course for Wynnewood and the other 31 small refineries that had held grants, and reaffirming the five denials, including Sinclair's.

-60-

Further, that grant was issued contrary to controlling law in the Tenth Circuit and was vacated without opposition from Sinclair only a few months after it issued. *See* Motion for Vacatur and Voluntary Remand and appended declaration of Joseph Goffman, *Sinclair Wyoming Refin. Co. v. EPA*, No. 21-9528, Doc. 010110515928 (10th Cir. Apr. 30, 2021). Thus, at the pertinent point in time when EPA issued the April 2022 Compliance Action, Sinclair's short-lived grant had no material relevance to the problem at hand. Sinclair did not hold an exemption grant at the time of the April 2022 Denial Action and did not have any outstanding compliance obligations for the 2018 year that needed to be relieved to preserve RFS program integrity.

Accordingly, when EPA took the April 2022 Compliance Action it, reasonably considered the negative ramifications that requiring the small 31 refineries that had previously received exemptions to attempt to purchase and retire 1.6 billion RINs would have on the RFS program as a whole. In making this decision, it was not necessary for EPA to evaluate whether Sinclair would have received an exemption under criteria no longer in place. Instead, when taking the April Compliance Action, EPA was properly concerned with preserving the integrity of the RFS program going forward and avoiding placing the 31 small refineries that had outstanding 2018 RFS obligations in an impossible compliance situation.

-61-

### D.    EPA considered all important aspects of the problem when issuing the April 2022 Compliance Action.

Sinclair alleges that EPA failed to acknowledge Sinclair's unique circumstances when issuing the April 2022 Compliance Action and thus failed to "consider an important aspect of the problem."  Refineries' Br. at 32–33.  But the procedural history related to Sinclair's exemption history was not "an important aspect of the problem" that EPA was concerned with at the time: to avoid systemic problems that requiring the 31 small refineries to comply with their reinstated 2018 RFS obligations would cause to the RFS program as a whole.

As EPA explained, the RFS regulations "do not adequately address the unique situation presented here where a new RFS obligation is imposed for a prior, closed compliance year."  April 2022 Compliance Action at 8.  Given this unique factual situation, EPA carefully evaluated possible alternative actions and reasonably concluded that Wynnewood and the other 30 small refineries with remaining obligations should be excused from retiring RINs to meet their 2018 RFS obligations created by the April 2022 Denial Action.

In doing so, EPA considered "the need to avoid harming the operability of the RFS program going forward," as well as "the unique circumstances" of this situation, including, "prior exemptions provided to these 31 small refineries and the judicial challenges to those exemptions" and the "inability for these small refineries to comply with their 2018 obligations under the existing compliance

-62-

scheme."  April 2022 Compliance Action at 8; JA.V1___; *see also id.* at 1

JA.V1___ (allowing the 31 small refineries to resubmit their 2018 RFS annual

compliance reports with zero deficit carryforward and no additional RIN

retirements).

      In reaching its conclusion, EPA paid particular attention to the likely effects

on RFS program viability not just for the affected small refineries, but for *all*

obligated parties, if EPA required those 31 small refineries to retire 1.4 billion

RINs.  *Id.* at 8–9.  At the time of the April 2022 Compliance Action, the total

available RINs for compliance was approximately 1.8 billion RINs.  *Id.* at 12.

Thus, requiring the 31 small refineries to meet their 2018 RFS compliance

obligations by retiring RINs would "jeopardize compliance for *all* obligated

parties."[26]  *Id.* at 11.  EPA recognized that requiring compliance for these small

refineries would so drastically deplete the number of RINs available for

compliance that it would disrupt the functioning of the RFS program as a whole.

As EPA expressly stated in the Compliance Action, EPA "fashioned" the

Compliance Action because "EPA finds that there are not sufficient RINs

available—in particular an insufficient number of advanced biofuel RINs to satisfy

---

[26] This is particularly true given the shortfall of advanced biofuel carryover RINs.
To satisfy their obligations, these small refineries would require 320 million
advanced biofuel carryover RINs.  At the time of the action, there were only
approximately 55 million such RINs.  April 2022 Compliance Action at 12;
JA.V1__.

the [31 small refineries'] 2018 advanced biofuel obligations—and the impacts a significant drawdown of the carryover RIN bank would have on the RFS program as a whole." *Id.* at 9.[27]

EPA was not required to consider the individual factors of each refinery when making the equitable decision to preserve a functioning RIN market and ensuring the continued viability of the RFS program as a whole. Accordingly, exclusion of Sinclair from the Compliance Action was reasonable.

### E. Wynnewood and Sinclair's reliance on *PRUITT* and *Kern Oil* is misplaced.

To support their assertions that they are being treated unfairly, Wynnewood and Sinclair point to other small refineries affected by two different and unrelated exemption cases: *PRUITT* and *Kern Oil*. However, Wynnewood and Sinclair's reliance on these cases is misplaced because in both of those instances, EPA

---

[27] At the same time it issued the Proposed SRE Denial in December 2021, EPA also proposed the RFS annual volume requirements for 2020, 2021, and 2022. In that proposal, EPA similarly reacted to a RIN market shortfall, concluding that it would "not be appropriate" to "intentionally reduce the size of the carryover RIN bank," *Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, 86 Fed. Reg. 72436, 72454 (Dec. 21, 2021), and proposed to revise the 2020 standards because of a 1.2-billion-gallon shortfall, *id.* at 72449. Accordingly, EPA took the April 2022 Compliance Action because "reliance on carryover RINs to meet the 2016–2018 obligations would undermine the proposed standards for 2022, likely to the point of making them unachievable," April 2022 Compliance Action at 12, causing further upheaval in the RFS program.

appropriately provided RIN-replacement relief to parties in the exact *opposite* posture of Wynnewood and Sinclair.

In *PRUITT*, EPA initially denied exemption petitions for certain small refineries for the 2014 and 2015 compliance years. *Producers of Renewables United for Integrity Truth & Transparency v. EPA (PRUITT)*, No. 19-9532, 2022 WL 538185, at *2 (10th Cir. Feb. 23, 2022). These denials were challenged and the Tenth Circuit vacated EPA's denials and remanded the decisions to EPA. *See, e.g.*, *Sinclair Wyo. Refin. Co. v. EPA*, 887 F.3d 986 (10th Cir. 2017). On remand, EPA ultimately granted the small refinery exemption petitions. *PRUITT*, 2022 WL 538185, at *3.

After EPA granted the *PRUITT* petitions, those small refineries no longer had compliance obligations for 2014 and 2015. However, due to the passage of time, EPA could not simply return the RINs, because they had expired. *Id.* Accordingly, EPA decided to unretire the small refineries' RINs by exchanging the 2014 and 2015 RINs "on a one-for-one basis" with 2018 RINs. *Id.*

Here, in stark contrast to the small refineries in *PRUITT*, Wynnewood's and Sinclair's exemption petitions were both ultimately *denied*. Thus, EPA is not unreasonably treating Wynnewood and Sinclair differently than the small refineries in *PRUITT*. Minting new RINs for Wynnewood and Sinclair here, after their

petitions were denied, would not be the same as providing replacement RINs to the *PRUITT* small refineries that had their petitions *granted* on remand.

Separately, Wynnewood and Sinclair ask this Court to order EPA to "follow the Ninth Circuit's approach in *Kern Oil*" and provide Wynnewood and Sinclair with replacement RINs.  Refineries' Br. at 36–37.  Again, Wynnewood and Sinclair ignore the fact that their exemption petitions here were denied, thus rendering the comparison with *Kern Oil* inapposite.  In *Kern Oil*, EPA granted an exemption to Kern Oil, albeit after the CAA's 90-day statutory deadline.  *Kern Oil & Ref. Co. v. EPA*, No. 21-71246, 2022 WL 3369528 at *3 (9th Cir. Aug. 16, 2022).  In that case, EPA returned Kern Oil's unexpired RINs, applying EPA's "default remedy" in such situations.  *Id.* at *2.  The Ninth Circuit found that EPA's "default post-compliance remedy—refunding all of the unexpired RINs that the exemption recipient previously used to show RFS compliance—is persuasive."  *Id.* However, in those limited circumstances, the Ninth Circuit concluded that EPA was also required to compensate Kern Oil for the loss in value to its RINs that resulted from EPA's delay in deciding to grant the petition.  *Id.* at *3.

Here, Wynnewood's and Sinclair's exemption petitions were ultimately denied, unlike Kern Oil's petition which was granted.  *Id.*  This distinction is key. Because Kern Oil was entitled to an exemption, the Ninth Circuit concluded that it was entitled both to the return of its RINs (the "default remedy") as well as

compensation for the loss in value to those RINs due to EPA's delay (the "delay remedy"). *Id.* at *3. Here, in contrast, on remand EPA concluded that Wynnewood and Sinclair are not entitled to exemptions, and therefore both have 2018 RFS compliance obligations.

Nonetheless, EPA used its discretion to allow Wynnewood and the other 30 small refineries whose 2018 exemptions were ultimately reversed by the April 2022 Denial Action to keep the proceeds of the "default remedy" they were given when their 2018 exemptions were initially granted in 2019 and their unexpired RINs were unretired and returned immediately thereafter. Because Sinclair had already retired RINs to comply with its 2018 obligation, it was not in the same unique position as the other 31 small refineries that had initially received grants, had some or all of their RINs returned, but now had reinstated 2018 compliance obligations. It was these circumstances that warranted eligibility for relief for the 31 small refineries in the April 2022 Compliance Action and nothing else.

For these reasons, Wynnewood's and Sinclair's claims that they are now additionally entitled to the "delay remedy" relief received by the refiner in *Kern Oil* are unwarranted where neither petitioner ultimately received an exemption and are, therefore, in a very different posture than *Kern Oil* was.

Accordingly, the cases cited by Wynnewood and Sinclair here are inapposite, and their petitions should be denied.

-67-

**III.    If this Court finds the Compliance Actions are arbitrary and capricious, the proper remedy is an ordinary remand.**

Growth Energy asserts that EPA exceeded its statutory authority in issuing the Compliance Actions, or that that Compliance Actions are arbitrary or capricious.  For their part, Sinclair and Wynnewood argue that this Court should "order EPA on remand to provide replacement RINs," as the Ninth Circuit did in *Kern Oil.*  Refineries' Br. at 36.  As discussed above, Petitioners' arguments fail because the April 2022 Compliance Action was reasonable and Sinclair and Wynnewood are not entitled to further relief.  However, if the Court believes that the April 2022 and June 2022 Compliance Actions violate the Administrative Procedure Act, the proper remedy is remand.  *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002).

## CONCLUSION

For the foregoing reasons, the petitions for review should be denied.

Respectfully submitted,

Todd Kim
Assistant Attorney General

*Of counsel*
   *Meredith G. Miller*
   *U.S. EPA*
   *Office of General Counsel*
   *Washington, D.C.*

June 9, 2023
DJ#: 90-5-2-3-22150

Benjamin Grillot
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
202.305.0303
benjamin.grillot@usdoj.gov

-68-

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this brief complies with Fed. R. App. P. 32(a)(5) and (6) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this brief complies with the type-volume limit of this Court's order of November 29, 2022, because according to Microsoft Word's count, it has 15,723 words, excluding the parts of the brief exempted under Rule 32(f).

Finally, I certify that on June 9, 2023, I electronically filed this brief with the Court's CM/ECF system, which will serve each party.

June 9, 2023                                   */s/ Benjamin Grillot*
                                              Benjamin Grillot